## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-[xxx]

SHARKNINJA OPERATING LLC, and SHARKNINJA SALES COMPANY,

*Plaintiffs*,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,

*Defendants*.

## COMPLAINT

Plaintiffs SharkNinja Operating LLC and SharkNinja Sales Company (collectively, "SharkNinja" or "Plaintiffs"), by and through undersigned counsel, hereby sue Defendants, the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A[1] (collectively, "Defendants"). Defendants are promoting, selling, offering for sale, and importing goods into the United States that infringe SharkNinja's Patents (defined below), within this Judicial District, through various Internet based e-commerce stores using the seller identities set forth on Schedule A (the "Seller IDs").  SharkNinja alleges as follows:

---

[1] Plaintiffs intend to file a motion to file Schedule A under seal.

## NATURE OF THE ACTION

1.      This is an action for patent infringement to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use, unauthorized and unlicensed products that infringe Plaintiffs' utility and design patents.  Plaintiffs' utility patent includes U.S. Patent No. 12,285,028 (the "'028 Patent" or the "Utility Patent"); Plaintiffs' design patent includes U.S. D1,091,236 (the "'236 Design Patent" or the "Design Patent").  Collectively, the '028 Patent and the '236 Design Patent are referred to as the "SharkNinja Patents."

2.      The SharkNinja Patents are valid, subsisting, and in full force and effect.  Plaintiffs are the owners and licensees and lawful assignees of all right, title, and interest in and to the SharkNinja Patents, which were duly and legally issued by the United States Patent and Trademark Office.  True and correct copies of the SharkNinja Patents are attached hereto as Exhibits 1 and 2.

3.      The Defendants directly and/or indirectly import, develop, design, manufacture, distribute, market, offer to sell, and/or sell products infringing the SharkNinja Patents as listed in Schedule A to this Complaint (the "Infringing Products") in the United States, including in this Judicial District, and otherwise purposefully direct infringing activities to this District in connection with the Infringing Products.  Specifically, each Infringing Product infringes the '236 Design Patent, and 81 of the 110 Infringing Products also infringe the '028 Patent.  *See* Schedule A.  Defendants conduct their infringing marketing and sales activities under their Seller IDs through numerous fully interactive commercial Internet e-commerce stores operating under online marketplace accounts (collectively, the "Internet Stores").

4.      Plaintiffs' Ninja SLUSHi Professional Frozen Drink Maker (the "SLUSHi") relies

on and incorporates the advancements claimed in the SharkNinja Patents.  The Infringing Products sold on the Internet Stores also incorporate and rely on those claimed advancements while selling inferior imitations of the SLUSHi.

5.      The Internet Stores share unique identifiers, such as design elements and similarities among their Infringing Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

6.      Defendants' attempts to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation.  Plaintiffs are forced to file this action to combat Defendants' infringement of the SharkNinja Patents, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet.

7.      As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing products embodying the designs and inventions protected by the SharkNinja Patents, and, therefore, seek injunctive and monetary relief.

8.      The harm and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful use, advertisement, promotion, offers to sell, and sale of the Infringing Products.

9.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

10.     In addition, each Defendant has offered to sell and ship Infringing Products into

this Judicial District.

## JURISDICTION AND VENUE

11.     This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, §§ 271, 275, 283, 284, 285, 289, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

12.     Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers through the United States, including within the State of Florida and this Judicial District, through at least the Internet based e-commerce stores and fully interactive commercial internet websites accessible in Florida and operating under the Internet Stores and Seller IDs.

13.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Florida, in this Judicial District, through accounts with Internet based e-commerce stores (*i.e.*, the Internet Stores) using the Seller IDs identified in Schedule A, as well as any and all, as yet undiscovered accounts with additional Internet based e-commerce stores held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them.  The Internet Stores maintained by Defendants permit consumers in the U.S., including Florida (and more particularly, in this Judicial District), to view the Infringing Products, as well as communicate (in some cases) with Defendants regarding their listings for the Infringing Products, and to place orders for, receive invoices for, and purchase Infringing Products for delivery in the U.S., including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including Florida (and more particularly, in this Judicial District).

14.     Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Florida (and more particularly, in this Judicial District), for the sale and shipment of Infringing Products.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of patent infringement in this Judicial District, do substantial business in the Judicial District, have registered agents in this Judicial District, and reside or may be found in this district.

## THE PLAINTIFFS

16.     SharkNinja Operating LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, MA 02494.  SharkNinja Operating LLC is the registered applicant and assignee of the SharkNinja Patents.

17.     SharkNinja Sales Company is a Delaware Corporation organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, MA 02494.  SharkNinja Sales Company is a wholly owned subsidiary of SharkNinja Operating LLC.  SharkNinja Sales Company is an implied licensee of the SharkNinja Patents.

18.     SharkNinja began three decades ago with the mission of providing more efficient, user-friendly, and affordable household appliances.  From its start as a one-person company, SharkNinja has grown into a market leader.  SharkNinja is now a global brand with more than 20 categories of home appliance products, including floorcare products, environmental products (such as fans and purifiers), kitchen appliances, and, relevant to this case, frozen drink makers and systems.  SharkNinja has eight offices and thousands of employees in the United States.

19.     SharkNinja has a particular history as a pioneer and innovator.  SharkNinja devotes

significant resources to research and development, including a team of more than 800 design engineers who focus on developing new products and features to improve and revolutionize household appliances.  This approach has been overwhelmingly successful:  SharkNinja has been awarded more than 4,500 patents on its home appliance innovations.  The SharkNinja Patents at issue in this action are a testament to SharkNinja's history of innovation.

20.    Together, SharkNinja Operating LLC and SharkNinja Sales Company are involved in the sale and distribution of the SLUSHi product, and are collectively harmed by the infringing actions of the Defendants.

## THE NINJA SLUSHi

21.    This action concerns SharkNinja's intellectual property rights related to its hugely successful "i" class of home appliances, and specifically, the SLUSHi, which focuses on bringing innovative solutions to home kitchens. SharkNinja began the "i" class with the Ninja "FOODi" line of multi-cookers.  SharkNinja's innovation continued with the Ninja "CREAMi," an ice cream maker launched in August 2021, that attracted significant consumer and press attention by allowing users to make ice cream-style desserts out of almost anything.  SharkNinja later expanded to the Ninja "SPEEDi," a 10-in-1 rapid cooker launched in March 2023, and then to the "THIRSTi," a carbonated beverage maker released in July 2023.  SharkNinja's most recent offering in this lineup is the SLUSHi, a countertop professional-grade slush machine for home-use.

22.    Launched on July 11, 2024, the SLUSHi created a new frozen appliance category for home consumers.  Unlike prior frozen beverage appliances targeted to home consumers, such as Margaritaville frozen drink machines (Fig. 1, which are essentially blenders and need ice), or Nostalgia frozen drink machines (Fig. 2, which use a chilled ice and salt chamber similar to

conventional at-home ice cream machines), the SLUSHi (Fig. 3) reimagines the classic slush machine entirely, permitting consumers to make frozen slush drinks safely and quickly at home without ice.  Previously, such devices were available predominately in retail environments due to their large size, high-price point, and complicated operation.





Figure 1: Margaritaville
Frozen Concoction Maker

Figure 2: Nostalgia
Slush Drink Maker

Figure 3: SharkNinja
SLUSHi

23.     The SLUSHi is designed with at-home users in mind.  At the press of a button, it can turn almost any liquid into slush quickly—in as little as 15 minutes—with no ice needed. Following its launch, the SLUSHi gained a passionate following, including numerous positive reviews.  The SLUSHi's smash success was the result of over 18 months of significant consumer research, engineering, and development work by SharkNinja.  SharkNinja has significant intellectual property rights and interests relating to the innovations in the SLUSHi, including the SharkNinja Patents.

24.     SharkNinja is the official source of the SLUSHi in the United States.

25.     SharkNinja Operating LLC is the owner and lawful assignee of all right, title, and interest in and to the SharkNinja Patents (attached as Exhibits 1 and 2).

26.     The SLUSHi utilizes the technologies and inventions claimed in the Utility Patent

and likewise embodies the design depicted in the Design Patent.

## THE SHARKNINJA ASSERTED PATENTS

27.    SharkNinja has filed for and obtained patent protection for its technological developments and designs in the field of slush machines. The developments claimed in the below patents were the product of the research and design efforts of SharkNinja's engineers.

28.    The '028 Patent relates to frozen drink makers.  *E.g.*, Ex. 1 (the '028 Patent) at Abstract.  In particular, the '028 Patent relates to the mixing vessel for, inter alia, frozen drink makers. An embodiment of a frozen drink maker is shown below:



FIG. 1

'028 Patent at Figure 1 (showing mixing vessel at 104).

29.    Frozen drink makers typically are used for the making, processing, and/or cooling frozen or semi-frozen products.  '028 Patent at 1:22-53.  The '028 Patent describes examples of such products, such as a granita, slush drink, smoothie, or ice cream.  *Id.; see also id.* at 3:28-49.

30.    The '028 Patent describes typical components that may be included in a frozen drink maker, such as a mixing vessel or tank (element 104 in the below figures) that contains the product being mixed, a compressor (element 214), a motor (element 208), a rotating dasher or auger (element 204), and a dispenser (element 108).



'028 Patent at Figs. 1 and 2.

31.     The claims of the '028 Patent address deficiencies of existing frozen drink makers associated with controlling the slush flow within the mixing vessel.  *Id.* at 4:51-53.  For example, there is a tendency of the mixing slush to travel up the side walls of the mixing vessel and stick to the top of the chamber.  *Id.* at 4:53-60.  Existing frozen drink makers are often made with a very tall mixing vessel so that the slush does not contact the upper sidewalls of the vessel and the top of the chamber.  *Id.*  There is a need for controlling slush flow without relying on a tall chamber, especially for household frozen drink makers.  *Id.* at 4:57-63.

32.     The '028 Patent addresses slush flow problems within the mixing vessel by using an asymmetric design for the vessel, which includes the placement and configuration of internal baffles to optimize slush processing and flow within the vessel.  *Id.* at 4:64-67.  The positioning of the internal baffles directs the slush flow for thorough mixing and to prevent blockage within the mixing vessel.  *Id.* at 1:57-63.  The baffles can also reduce waste, such as the waste created by slush sticking to the vessel rather than being dispensed.  *Id.* at 1:63-67.

33.     The '028 Patent discloses numerous examples of internal baffles to improve slush

flow in the mixing vessel.  For example, the below figure of a vessel chamber (element 104) shows a side baffle (element 105), front baffle (element 107), and corner baffle (element 109).



FIG. 6A

'028 Patent at Figure 6A, 13:10-14:51.  As described in the specification:

> In other words, the mixing vessel 104 may include the side baffle 105, the front baffle 107, and/or the corner baffle 109.  The side baffle 105, front baffle 107, and/or corner baffle 109 can reduce slush buildup on the sidewalls and top of the vessel chamber, which is important for commercial frozen drink makers as well as household frozen drink makers with significantly less headspace than commercial units

'028 Patent at 14:45-51.

34.     Additionally, SharkNinja has sought to protect the ornamental design of the SLUSHi and its components.  To that end, SharkNinja has filed for and obtained the '236 Design Patent.  In particular, the '236 Design Patent claims the ornamental design of the collection tray for a drink maker, as shown in exemplary Fig. 1 of the '236 Design Patent below:



FIG. 1

35.     The '236 Design Patent contributes to the sales of SLUSHi as the collection tray as claimed aids a user in cleaning and maintaining the SLUSHi unit, which contributes to the SLUSHi's innovative user-friendly and home-use applications.

36.     SharkNinja recognized the importance and market value of the '028 Patent and '236 Design Patent and has used the inventions claimed in these patents in the SLUSHi.

37.     SharkNinja markets the use of the inventions in selling the SLUSHi.  For example, SharkNinja emphasizes that the compact size of the "Ninja SLUSHi™ 88 oz. Professional Frozen Drink Maker" as "an easy way to make frozen drinks at home" and emphasizes its compact size:[2]

---

[2] *See* https://www.sharkninja.com/ninja-slushi-professional-frozen-drink-maker/FS301.html?dwvar_FS301_color=323232 (last retrieved October 10, 2025).



Compact size
Easy to store with drip tray storage on the side
of the unit.

38.     As explained above, the compact size is facilitated by the inventions claimed in the '028 Patent.

39.     SharkNinja has marked its Ninja® SLUSHi Drink Makers with the '028 and '236 Design Patent numbers, stating on the product box that "[t]his product may be covered by one or more U.S. Patents.  *See* sharkninja.com/patents for more information."  That URL leads to the following marking:[3]

### Ninja Slush Machines

**Ninja™ SLUSHi™ Professional Frozen Drink Maker (FS series)**

- 12,279,629
- 12,285,028
- D1,076,580
- D1,081,231
- D1,081,232
- D1,081,233
- D1,081,234
- D1,091,236
- 12,446,594

### THE DEFENDANTS

40.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China.  Defendants conduct business throughout the United States including within Florida and in this Judicial District, through the Internet Stores

---

[3] https://www.sharkninja.com/patents (last retrieved November 13, 2025).

using the Seller IDs.  Each Defendant targets the United States, including Florida, and has offered to sell and, on information and belief, has sold and continues to sell, products that infringe SharkNinja's intellectual property to consumers within the United States, including Florida and in this Judicial District.

41.     On information and belief, Defendants are the past and present controlling forces behind the sale and offer for sale of the Infringing Products.

42.     Defendants directly compete with SharkNinja by advertising, making, using, offering for sale, selling, and importing the Infringing Products to consumers within the United States and this District through the Internet Stores on Internet based e-commerce stores using the Seller IDs, as well as additional names or seller identification aliases not yet known to SharkNinja. Defendants have purposefully directed at least a portion of their illegal activities towards consumers in the State of Florida (and this Judicial District) through advertisement, offers to sell, sales, and/or shipment of the Infringing Products into the State.

43.     On information and belief, Defendants have anonymously registered and maintained some of the Seller IDs for the sole purpose of engaging in infringing activities.

44.     On information and belief, Defendants will continue to register or acquire new seller identification aliases, such as new Seller IDs, for the purpose of selling and offering for sale goods that infringe the SharkNinja Patents unless preliminarily and permanently enjoined.

### THE DEFENDANTS' UNLAWFUL CONDUCT

45.     The success of the SLUSHi has resulted in a significant number of products that infringe SharkNinja's Patents and other of SharkNinja's intellectual property rights.

46.     Plaintiffs have identified numerous Seller IDs of the Defendants linked to fully interactive websites and marketplace listings, such as the Internet Stores, on e-commerce

platforms as demonstrated in Schedule A, which were and/or are offering for sale, selling, and importing products that infringe the SharkNinja Patents to consumers in this Judicial District and throughout the United States.

47.     Defendants have persisted in creating such online marketplaces, such as the Internet Stores.  In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion.

48.     Plaintiffs have not licensed or authorized Defendants to use the SharkNinja Patents, and none of the Defendants are authorized retailers of the SLUSHi.

49.     On personal knowledge and belief, Defendants facilitate sales by designing the Internet Stores so that they appear to unknowing consumers to be selling products that are authorized to include the technical advancements developed by SharkNinja.

50.     On personal knowledge and belief, Defendants deceive unknowing consumers by using the technology of the SharkNinja Patents in the product descriptions and images of their Internet Stores to attract customers.

51.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Internet Stores.

52.     For example, it is common practice for persons selling infringing products to register their online marketplace accounts with incomplete information, randomly typed letters, or omitted cities or states.

53.     The Internet Stores provide the ability for Defendants to provide contact information, such as an e-mail address and phone number, but in many instances, Defendants do not provide that information.  In doing so, Defendants have concealed their identity and made it difficult for consumers to contact them.  On personal knowledge and belief, Defendants regularly create new online marketplace accounts (such as Internet Stores), Seller IDs, and websites on various platforms using the Seller IDs listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses.

54.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names and Seller IDs, there are numerous similarities among the Infringing Products and Internet Stores.  For example, some of the Infringing Products have virtually identical designs, even though different aliases and/or Seller IDs were used with the Internet Stores.  The following table identifies exemplary similarities among the Infringing Products identified on Schedule A:

| Category | Exemplary Image[4] |
|----------|--------------------|
| 1 |  |
|   |  |

---

[4] Each of these images hereto represent Infringing Products identified in Schedule A to the Complaint.

| | | |
|---|---|---|
| |  | |
| 2 | | |



55.   The similarities between the Infringing Products for sale in the Internet Stores suggest that they are related to one another, including that the Infringing Products were manufactured by and come from a common source.   Therefore, upon information and belief, Defendants are interrelated.

56.   The Internet Stores also include other notable common features, including product descriptions, lack of contact information, identically or similarly priced items and volume sales

discounts, and the use of the same text and images.

57.     In addition, Defendants in this case and defendants in other similar cases involving online sellers of infringing products use a variety of other common tactics to evade enforcement efforts.  For example, infringers like Defendants will often register new online marketplace accounts, such as Seller IDs and Internet Stores, once they receive notice of a lawsuit.

58.     Sellers of infringing products also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.  A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of infringing and counterfeit goods shipped through the mail and express carriers.

59.     Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the SharkNinja Patents in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products into the United States and Florida over the Internet.

60.     The Internet Stores offer shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell products infringing SharkNinja's Patents into the United States, including Florida (including in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming SharkNinja.

61.     As described below, Defendants are promoting, offering for sale, selling and importing into the United States Infringing Products that directly infringe the SharkNinja Patents through at least the Internet e-commerce stores operating under the Internet Stores and Seller IDs.

62.     Defendants' infringing activities are done without Plaintiffs' consent or

authorization.

63.     Defendants' infringing activities described herein have caused and continue to cause significant harm to Plaintiffs including lost sales, price erosion, lost market share and a significant negative impact on Plaintiffs' goodwill.

64.     Plaintiffs have no adequate remedy at law.

65.     Plaintiffs are suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the SharkNinja Patents.  If Defendants' infringement is not preliminarily and permanently enjoined by this Court, Plaintiffs will continue to be harmed.

66.     All conditions precedent to the bringing of this action have been satisfied, performed, excused, or would be futile.

**FIRST CAUSE OF ACTION**
**UTILITY PATENT INFRINGEMENT (35 U.S.C. § 271)**

67.     Plaintiffs repeat and incorporate by reference herein its allegations contained in paragraphs 1–66 of this Complaint.

68.     Defendants are manufacturing, distributing, offering for sale, selling, and/or importing into the United States, products which infringe directly or indirectly on at least one or more of the Utility Patents both literally and under the doctrine of equivalents.

69.     For instance, examples of Defendant's infringement of SharkNinja's Utility Patent are described below:

| U.S. Patent No. 12,285,028<br>Claim 1 | Exemplary Defendant Internet Store<br>Offerings |
| --- | --- |

1. A mixing vessel for a frozen drink maker, the mixing vessel comprising:

a vessel chamber configured to receive a drink product to be processed, the vessel chamber comprising a front, a rear, a right side, a left side, a top, and a bottom,

the vessel chamber comprising at least one asymmetric wall portion proximate to at least one of the front or the top of the vessel chamber, and the at least one asymmetric wall portion configured to promote slush flow within the vessel chamber,

wherein the at least one asymmetric wall portion comprises a side baffle configured to extend laterally along the left side or the right side of the vessel chamber, the side baffle further configured to promote slush flow away from the left side or the right side of the vessel chamber and back toward a center of the vessel chamber.



Side Baffle

Side Baffle



70.     Defendants have infringed the Utility Patent through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from manufacturing, distributing, selling, using, offering for sale, and/or importing the patented inventions as well as the loss of sales stemming from the infringing acts. Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283.  Unless a preliminary and permanent injunction is issued enjoining Defendants and all others acting in concert therewith from infringing the Utility Patents, Plaintiffs will continue to be irreparably harmed.

71.     Defendants' infringement of the Utility Patent in connection with the Infringing Products has been and continues to be willful.

72.     Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Patent Act, including recovering damages adequate to compensate for the infringement, as well as Defendants' profits pursuant to 35 U.S.C. § 289, and any other damages as appropriate pursuant to 35 U.S.C. § 284.

## SECOND CAUSE OF ACTION
## <u>DESIGN PATENT INFRINGEMENT (35 U.S.C. § 271)</u>

73.     Plaintiffs repeat and incorporate by reference herein its allegations contained in

paragraphs 1–66 of this Complaint.

74.     Defendants are and have been making, using, selling, offering for sale, and/or

importing into the United States for subsequent sale or use, without authority, Infringing Products

that infringe directly and/or indirectly the Design Patent.

75.     For example, below is a comparison of figures from SharkNinja's Design Patent to

exemplary images of the Defendants' Infringing Products sold on the Internet Stores.



| U.S. Patent No. D1,091,236 | Exemplary Defendant Internet Store Offerings |
|---|---|



FIG. 2



FIG. 3



76.     Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

77.     Defendants have infringed the '236 Design Patent through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

78.     Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283.

79.     Plaintiffs are entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. § 284 289, including Defendants' profits.

## FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

a)      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      i.    making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiffs and that utilize the invention or technology as claimed in any of the claims of the Utility Patent;

      ii.    making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiffs and that include any reproduction, embodiment, copy or colorable imitation of the designs claimed in the Design Patent;

      iii.    committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

      iv.    further infringing the SharkNinja Patents and damaging Plaintiffs' goodwill;

      v.    aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the SharkNinja Patents;

      vi.    shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which infringe any of the SharkNinja Patents;

      vii.    using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Infringing Products; and

      viii.    operating and/or hosting online marketplace accounts at the Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product infringing any of the SharkNinja Patents.

b)      Entry of an Order that any other online marketplace account provider:

i.      disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products, including any accounts associated with the Defendants listed on Schedule A;

ii.     disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products; and

iii.    take all steps necessary to prevent links to the Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Internet Stores from any search index;

c)      That Plaintiffs be awarded such damages as they shall prove at trial against Defendants that are adequate to compensate Plaintiffs for Defendants' infringement of the SharkNinja Patents, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

d)      That the amount of damages awarded to Plaintiffs to compensate Plaintiffs for infringement of Plaintiffs' SharkNinja Patents be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

e)      In the alternative, that Plaintiffs be awarded all profits realized by Defendants from Defendants' infringement of Plaintiffs' SharkNinja Patents, pursuant to 35 U.S.C. § 289;

f)      That Plaintiffs be awarded its reasonable attorneys' fees and costs; and

g)      Award any and all other relief that this Court deems just and proper.

Dated: November 14, 2025

Respectfully submitted,

**COFFEY BURLINGTON, P.L.**

By:_____*/s/ Kevin C. Kaplan*_____
**Kevin C. Kaplan, Esq.**
Florida Bar No. 933848
kkaplan@coffeyburlington.com
lperez@coffeyburlington.com
**Christopher E. Cheek, Esq.**
Florida Bar No. 91363
ccheek@coffeyburlington.com
lmaltz@coffeyburlington.com
service@coffeyburlington.com
2601 South Bayshore Drive
Penthouse One
Miami, FL 33133
(305) 858-2900

OF COUNSEL:

Brian Rosenthal (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue,
New York NY 10166-0193
(212) 351-4000
brosenthal@gibsondunn.com

Brian Buroker (*pro hac vice forthcoming*)
Shuo Josh Zhang (*pro hac vice forthcoming*)
David Brzozowski (*pro hac vice forthcoming*)
Ramona Lin (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.,
Washington, D.C. 20036-4504
(202) 955-8500
bburoker@gibsondunn.com
dbrzozowski@gibsondunn.com
rlin@gibsondunn.com

David Glandorf (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
1900 Lawrence St.
Suite 3000
Denver, CO 80202-2211
(303) 298-5700

dglandorf@gibsondunn.com

*Attorneys for Plaintiffs SharkNinja Operating
LLC and SharkNinja Sales Company.*