**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO. 25-cv-25323-RAR**

SHARKNINJA OPERATING LLC, and
SHARKNINJA SALES COMPANY,

       Plaintiffs,

                                            **EXPEDITED MOTION**

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

       Defendants.

_____/

**PLAINTIFFS' EXPEDITED MOTION AND *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, INCLUDING AN INJUNCTION, A TEMPORARY TRANSFER OF THE DEFENDANT INTERNET STORES, TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiffs SharkNinja Operating LLC and SharkNinja Sales Company ("SharkNinja") respectfully move on an *ex parte* basis for entry of a temporary restraining order, including an order temporarily enjoining the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A (collectively, "Defendants") from future infringement, taking down Defendants' internet storefronts, freezing Defendants' assets, and permitting expedited discovery against Defendants pursuant to 35 U.S.C. § 283, Fed. R. Civ. P. 65, and the All Writs Act, 28 U.S.C. § 1651(a). Pursuant to Local Rule 7.1(d) and CM/ECF Administrative Procedures Section 10, SharkNinja respectfully requests that the Court expedite ruling to halt Defendants' infringement **as soon as possible, but in any event before November 24, 2025**. As set forth in detail, *infra.* §§ I, II, and IV.B., the holiday season beginning Thanksgiving week is critical to SharkNinja's brand identity as a consumer-trusted, category-defining innovator and SharkNinja's realization of the economic returns necessary to sustain—and reward—such groundbreaking innovation in a market that SharkNinja itself created. As a corollary, Defendants' infringement during this time presents an acute risk of direct harm to consumers who are vulnerable to confusing genuine SharkNinja products with poor quality imitators. In support, Plaintiffs respectfully refer the Court to the following Memorandum of Law.

## MEMORANDUM OF LAW

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs bring this action to stop a growing number of e-commerce operators from exploiting Plaintiffs' reputation and intellectual property rights by making, using, offering to sell, selling, and importing infringing products that infringe Plaintiffs' patents. After months of cross-functional R&D, SharkNinja developed the first compact, at-home slush machine that delivers consistent texture without pre-frozen ice to serve an unmet need in the market—the

1

SLUSHi. Unlike prior home appliances that required ice (Fig. 1) or relied on ice-and-salt chambers (Fig. 2), the SLUSHi (Fig. 3) reimagines the category and brings commercial-grade performance to consumers' countertops.



Figure 1: Margaritaville Frozen Concoction Maker



Figure 2: Nostalgia Slush Drink Maker



Figure 3: SharkNinja SLUSHi

The SLUSHi's compressor-based system, specialized vessel geometry, and refined controls solved the category's bulk, noise, mess, and inconsistency—innovations protected by SharkNinja's utility and design patents. Plaintiffs own U.S. Patent No. 12,285,028 (the "'028 Patent" or the "Utility Patent") and U.S. Design Patent No. D1,091,236 (the "'236 Design Patent" or the "Design Patent") (collectively, the "SharkNinja Patents"). The SharkNinja Patents are valid, subsisting, and in full force and effect, and Plaintiffs hold all rights, title, and interest in them[1]. True and correct copies are attached as Exhibits 1 and 2.

The SLUSHi was an instant and widespread success. Since its July 2024 launch, the SLUSHi has become synonymous with at-home slush makers and drove a standout 2024 holiday season. In response to the SLUSHi's commercial success, Defendants have begun flooding online marketplaces with knockoffs that appropriate SharkNinja's patented features and distinctive

---

[1] Each SLUSHi box is marked with a patent notice statement citing to https://sharkninja.com/patents/, which lists the '028 and '236 Design Patents, among other patents.

design, targeting U.S. consumers, including those in this District, through transient on-line listings. Now, on the eve of the 2025 holiday season, those products threaten to displace the SLUSHi during this critical peak sales period in which SharkNinja expects to realize a substantial share of its annual sales. The holiday season, especially the two weeks following Thanksgiving, is the high point of SharkNinja's sales. Allowing Defendants to continue their unlawful activity during the holiday season would mean diverted sales, loss of market share and price premium, and erosion of brand equity in the very market SharkNinja created. The risk is immediate and compounding, and the threatened harm is irreparable.

As detailed on Schedule A, Defendants operate fully interactive commercial internet storefronts (the "Internet Stores") through various online marketplace accounts to make, use, sell, offer for sale, or import products that infringe the SharkNinja Patents (the "Infringing Products") throughout the United States, including in this District. Each Infringing Product infringes the patented design protected by the '236 Patent, and 74 of the Infringing Products also infringe the utility '028 Patent. Defendants purposefully direct these activities into this District and transact business with Florida consumers through their Internet Stores, establishing personal jurisdiction and venue.

Defendants' ongoing unlawful activities should be restrained, and Plaintiffs respectfully request that this Court issue an *ex parte* Temporary Restraining Order (1) temporarily restraining Defendants' continued making, using, selling, offering for sale, or importation of Infringing Products; (2) temporarily taking down Defendants' Internet Stores; (3) temporarily restraining Defendants' assets to preserve Plaintiffs' right to an equitable accounting; and (4) authorizing expedited discovery allowing Plaintiffs to inspect and copy Defendants' records relating to Defendants' infringement and financial accounts. Plaintiffs are concurrently filing a motion to

3

authorize service by electronic publication.

## II.    STATEMENT OF FACTS

### A.    Plaintiffs' Intellectual Property and Products

SharkNinja is a global product design and technology leader recognized for consistently redefining consumer experiences through disruptive innovation and bold design.  Declaration of Danielle Lessing (SVP, Chief Roadmap & Innovation Officer at SharkNinja Operating LLC) filed concurrently herewith ("Lessing Decl."[2]), ¶ 5.   SharkNinja is the exclusive supplier and manufacturer of Shark and Ninja brand products in the United States.  *Id.*

SharkNinja set out to solve an unmet need in the home appliance market for an at-home slush machine that is compact, countertop-worthy, user-friendly, and category-defining.  Lessing Decl. ¶ 6.  Over an 18-month span, a cross-functional team of industrial designers, engineers, food scientists, and market researchers at SharkNinja iterated over multiple proof-of-concept builds and engineering iterations.  *Id.* ¶¶ 8, 11.   SharkNinja's engineers devised and patented novel arrangements of the compressor, condenser, and airflow; a removable, ergonomically designed tray to simplify cleanup and preserve the unit's sleek, pill-shaped design; and packaging of electronics to maintain under-cabinet placement and a cohesive aesthetic.  *Id.* ¶ 9.  SharkNinja is the owner of all rights, title, and interest in and to the '028 Utility Patent and the '236 Design Patent.  *Id.* ¶ 4.

SharkNinja created not only the product but also the market for it.  SharkNinja launched the Ninja SLUSHi with a proven, high-velocity strategy designed to generate viral momentum: an

---

[2] The Declaration of Danielle Lessing had been executed before the Court issued its order denying Plaintiffs' motion to seal.  Plaintiffs no longer request to seal Exhibit 3 to the Declaration and have promptly provided the Court with information essential to the Court's review and adjudication of SharkNinja's Complaint [ECF No. 1] and *Ex Parte* Application for Entry of Temporary Restraining Order.

original, demonstrable product story that invites organic social sharing, amplified by significant paid social investment to build a reinforcing flywheel of awareness, engagement, and conversion. *Id.* ¶ 25. This approach positioned the Ninja SLUSHi as the original in a new category, concentrated consumer attention during a finite, time-sensitive window, and established durable brand equity to support follow-on sales. *Id.*

**B.    Defendants' Unlawful Activities**

SharkNinja fiercely defends intellectual property rights. Following the successful launch of the Ninja SLUSHi, SharkNinja's proactive intellectual property protection sweeps uncovered a proliferation of online sellers offering knockoff frozen drink makers that infringe SharkNinja's patented advancements. *Id.* ¶ 12. Through investigations across multiple online marketplace platforms, SharkNinja identified numerous Internet Stores, listed on Schedule A, offering products that infringe at least one of the SharkNinja Patents for sale. ¶¶ 12–13. The investigations confirm that those products appropriate the very innovations that SharkNinja has developed and patented while attempting to pass as legitimate alternatives to the SLUSHi. *Id.* ¶ 18. Below are exemplary images of the products identified on Schedule A, annotated with features claimed in the '028 Patent such as the (1) side baffles and (2) asymmetric wall portions of the mixing vessels of the identified slush machines, and in the '236 Patent such as the collection tray design:

| '028 Patent | SLUSHi Side Baffle | Exemplary Defendant Side Baffle |
|---|---|---|
|  *See* Fig. 6C; 12:64-67. |  |  |

| '236 Design Patent | SLUSHi Collection Tray | Exemplary Defendant Collection Tray |
|---|---|---|
|  |  |  |

These images also demonstrate that the side baffle components of the asymmetric wall portions in each of the example Infringing Products are "configured [to] promote slush flow away from the left side or the right side of the vessel chamber and back toward a center of the vessel chamber" as claimed. *See* '028 Patent at Cl. 1. Specifically, the side baffles promote the slush flow away from the left side of the mixing vessel back towards the center as the dasher churns the slush mixture in a clockwise toward the side baffle.

Defendants are neither authorized resellers nor licensees of SharkNinja patents. Lessing Decl. ¶ 21. To mask their identities and the scope of their operations, Defendants use transient online storefronts and provide minimal disclosures while taking advantage of publicly anonymous marketplace and payment-processor infrastructures to receive funds and coordinate sales. *Id.* ¶ 22. For example, seller names identified on Schedule A are not associated with any registered business, and most storefronts omit accurate or complete contact information. *Id.* ¶ 20. Investigations further show that Defendants target U.S. consumers, including within this Judicial District: Each Internet Store accepts payment in U.S. dollars and permits shipment into the Southern District of Florida. *Id.* ¶ 18. Screenshots evidencing offers for sale and shipment into Florida are compiled in Exhibit 3. *Id.* ¶ 19. And this behavior is accelerating—Defendants are launching and relaunching Internet Stores at a volume and pace that far exceeds ordinary market

activity. *Id.* ¶ 15.

In short, Defendants have been selling Infringing Products, leveraging SharkNinja's time and capital-intensive innovations to field knockoffs that trade on the brand equity and consumer demand generated by the SLUSHi's viral success. *Id.* ¶ 23.

## III.   <u>LEGAL STANDARD</u>

This Court has personal jurisdiction over Defendants who accept orders for Infringing Products from and offer shipping to Florida addresses located in this Judicial District.  Fla. Stat. §§ 48.193(1)(a)(1)–(2) and 48.193(1)(a)(6)(a), and/or Fed. R. Civ. P. 4(k).  The Southern District of Florida regularly exercises personal jurisdiction over websites offering for sale and selling infringing merchandise that is offered for sale or sold without authorization to Florida residents over the internet. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013).

To obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets).

Furthermore, this Court has the power to issue a temporary restraining order without notice to the adverse party or its attorney if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

*Ex parte* temporary restraining orders "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

## IV.   <u>ARGUMENT</u>

First, this Court has personal jurisdiction over each Defendant.  As detailed in the Complaint and the Lessing Declaration, Plaintiffs' investigation establishes that each Defendant's Internet Store offers for sale and enables shipment of the Infringing Products to addresses within this Judicial District.  Lessing Decl. ¶¶ 16–18.  In fact, Exhibit 3 to the Lessing Declaration provides vendor-by-vendor screenshots and order records from each Internet Store demonstrating the ability to purchase and ship the Infringing Products into the District.  *Id.* ¶ 19 & Ex. 3.  This Court additionally has original subject matter jurisdiction over the patent claims pursuant to 35 U.S.C. § 1 *et seq.*, 28 U.S.C. §§ 1338(a)–(b) and 28 U.S.C. § 1331.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

Second, the Court can—and should—grant SharkNinja's requested relief as to each Defendant.  Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause irreparable harm, erode consumer confidence, deplete SharkNinja's hard-earned brand equity, and undermine SharkNinja's status as the original, category-defining home-use slush machine and sole authorized party under the SharkNinja patents.  Without the relief requested herein, Defendants' infringing activities will continue unabated.

Finally, this Court can—and should—issue an *ex parte* temporary restraining order.  *See Dell Inc. v. BelgiumDomains, LLC*, No. 07-cv-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants").  The Defendants here

fraudulently make, use, sell, offer for sale, or import goods that infringe at least one of the SharkNinja Patents via the Defendant Internet Stores. A temporary restraining order would immediately stop the Defendants from benefiting from their wrongful infringement of the SharkNinja Patents and preserve the status quo until a hearing is held. Furthermore, absent a temporary restraining order without notice, the Defendants can and likely will move any assets from U.S.-based bank accounts and take other steps to evade enforcement, such as redirecting traffic to other online storefronts they control.

### A.       Plaintiffs Will Likely Succeed on Their Patent Infringement Claims

SharkNinja will likely succeed on its patent infringement claims. A plaintiff must show that an asserted patent would "more likely than not" withstand a validity challenge and that the patent is infringed to obtain preliminary relief. *Doubleday Acquisitions LLC v. Envirotainer AB*, No. 1:21-CV-03749-SCJ, 2022 WL 2784800, at *3 (N.D. Ga. May 31, 2022); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376–80 (Fed. Cir. 2009). "Each issued patent carries with it a presumption of validity under 35 U.S.C. § 282" sufficient to establish a likelihood of success on the validity issue. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017); *Doubleday Acquisitions*, 2022 WL 2784800, at *3.

SharkNinja conceived of the first compact, countertop-worthy, and user-friendly slush machine and patented the innovations that allowed this category-defining device to come to life. Lessing Decl. ¶¶ 6–11. Those patents—the '028 Utility Patent and '236 Design Patent—are valid, enforceable, and in force. Compl. ¶¶ 2, 25–26, 27–39. Thus, Defendants face the statutory presumption of validity, and nothing before the Court undermines that presumption at this stage. *Tinnus*, 846 F.3d at 1205. Plaintiffs have not licensed or authorized Defendants to practice the SharkNinja Patents, and none of the Defendants is an authorized retailer of genuine Shark and

Ninja brand products.  Compl. ¶ 48; Lessing Decl. ¶ 21.

For design patent infringement, courts consider whether an "ordinary observer," familiar with the prior art, would view the overall appearance of the accused design as "substantially similar" to the patented design and that "the accused device contains substantially the same points of novelty that distinguished the patented design from the prior art."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 668 (Fed. Cir. 2008) (internal citation omitted).  An infringing product need not be an exact copy of the patented design, and Defendants cannot escape infringement by introducing minor variations.  *Egyptian Goddess*, 543 F.3d at 669–70.

Here, side-by-side comparisons in Exhibit 3 to the Lessing Declaration show that each Infringing Product identified on Schedule A includes trays and front-face geometries that replicate the patented features and is, to an ordinary observer, substantially the same in overall visual impression as the design claimed by the '236 Patent.  Compl. ¶¶ 3, 73–76 & figs.; Lessing Decl. ¶¶ 18–19 & Ex. 3.  Under *Egyptian Goddess*, this satisfies the ordinary-observer test.  543 F.3d at 668.

For utility patent infringement, courts first construe the patent claim and compare it to the accused product or method.  *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1376 n. 7 (Fed. Cir. 2023), *cert. denied*, 144 S. Ct. 2563, 219 L. Ed. 2d 1228 (2024).  Patent claims can be "literally" infringed, such that every claim element is present in the accused device, or infringed under the "doctrine of equivalents," where "the accused product is insubstantially different from the claimed element, that is, where it performs substantially the same function in substantially the same way to obtain substantially the same result."  *Bristol-Myers Squibb Co. v. Andrx Pharms., Inc.*, 343 F. Supp. 2d 1124, 1133–34 (S.D. Fla. 2004).

Seventy-four of the products that Defendants are making, using, offering for sale, selling,

and/or importing also infringe at least Claim 1 of the '028 Utility Patent, both literally and under the doctrine of equivalents. These Infringing Products each include the claimed asymmetric wall portion and side baffle. Compl. ¶¶ 3, 69.

**B.      SharkNinja Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

Defendants' ongoing sale of Infringing Products is causing SharkNinja brand equity depletion, loss of market share, and loss of exclusivity in the very market it created. Compl. ¶¶ 3, 45–46, 60–61, 63–65; Lessing Decl. ¶¶ 24–30. A patent confers "the right to exclude others from using his property." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (citing *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932)) (internal citation omitted). Violation of a patent owner's "right to exclude" renders monetary remedies inadequate in circumstances where exclusivity, market position, and brand equity are actively depleted. *Id.*; Compl. ¶ 63–65; Lessing Decl. ¶¶ 24–30. Indeed, courts have held that a "loss in market share" constitutes irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Co.*, 659 F.3d 1142, 1149–51 (Fed. Cir. 2011) (holding that it is a "clear error of judgment" to deny irreparable harm when the accused product causes a direct competitor patentee to lose market share and access to prospective customers). The harm Defendants' activity is causing SharkNinja is therefore irreparable and warrants immediate injunctive relief.

Defendants are making, using, offering for sale, selling, and importing unauthorized products that infringe SharkNinja's '236 Design Patent and, for 74 of the 101 products, the '028 Utility Patent. Compl. ¶¶ 3, 45–46, 61. Defendants have willfully directed infringing activity to this District by targeting Florida consumers with products designed to directly compete with SharkNinja's SLUSHi and sold through Internet Stores that accept U.S. dollars and ship into this District. *Id.* ¶¶ 12–15, 49–50, 60–61. SharkNinja has not licensed or authorized Defendants to

use the SharkNinja Patents, and none of the Defendants is an authorized SLUSHi retailer.  *Id.* ¶ 48.

Since the Defendants have begun selling their infringing products this year, SharkNinja has suffered from decreased consumer confidence, brand equity depletion, and market status dilution—ongoing harm that cannot be adequately remedied by money damages.  *Id.* ¶¶ 63–65. Defendants' infringement erodes SharkNinja's brand equity, undermining consumer confidence and diminishing the premium associated with SharkNinja's innovation.   Lessing Decl. ¶ 23. Defendants are free-riding on SharkNinja's time- and capital-intensive inventions, capturing sales that would otherwise accrue to SharkNinja, diluting market share, eroding price premium, and increasing the risk of poor product quality.  *Id.*; *Robert Bosch*, 659 F.3d at 1151.  The SLUSHi has become synonymous with being the innovator of the slush maker, and the proliferation of infringers leveraging SharkNinja's patented features without its quality controls further injures SharkNinja's reputation and consumer trust in the brand, particularly given SharkNinja's social media-driven emphasis on groundbreaking design and ease of use and cleaning.  Lessing Decl. ¶¶ 26–27.  Indeed, early indicators for 2025 sales show the SLUSHi is at risk of underperforming relative to prior category-defining launches of SharkNinja products.  *Id.* ¶ 27.  This market data suggests ongoing diversion and brand dilution.  *Id.* ¶ 28.

Furthermore, Rule 20(a)(2)(A) permits defendants to be "joined in one action . . . if any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences."  While each individual Defendant's actions, alone, cause Plaintiffs irreparable harm, the sheer number of Internet Stores is a force multiplier of those individual harms that creates a massive single reputation harm to Plaintiffs.  SharkNinja faces significant economic and logistical challenges in enforcing its intellectual property rights against each Internet Store individually.   Single defendant enforcement in the face of the

overwhelming infringement points of sale made possible by the unregulated and anonymous nature of the Internet is impractical, ineffective, and does not remedy the actual harm to SharkNinja caused by the combined effect of all of Defendants' simultaneous infringing operations. The anonymity and mass-reach the Internet provides makes identifying the full extent and scope of the Defendants' infringing operations nearly impossible. Defendants, each of whom is likely aware of the existence of the illegal marketplace and the activities of the others to perpetuate the same, are combining the force of their actions to cause individual, concurrent, and indivisible harm to Plaintiff and consumers. In other words, Defendants' activities are all logically part of the same occurrence and each is therefore properly joined in this action under Fed. R. Civ. P. 20. *See Bose Corp. v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A,"* 334 F.R.D. 511 (N.D. Ill. Feb. 19, 2020) (holding that the combined effect of the individual harm suffered by a plaintiff from defendants operating online marketplaces selling infringing the plaintiff's intellectual property rights creates injuries to the plaintiff in the aggregate constituting an occurrence under Rule 20.)

Immediate injunctive relief is essential to prevent further loss of market share and brand equity during a critical commercial period. Continued infringement will irreversibly erode network effects and first-mover recognition that cannot be restored after trial. Lessing Decl. ¶¶ 24–30.

**C.      The Balancing of Equities Tips in Plaintiffs' Favor**

The balance of equities strongly favors immediate injunctive relief because the concrete, ongoing harm to SharkNinja from direct copying and loss of control over its patented product and brand vastly outweighs any claimed burden on Defendants, who have no lawful entitlement to profits from their continued infringement. *See Schiavo*, 403 F.3d at 1225–26.

SharkNinja is suffering present hardship "from loss of sales and its inability to control its reputation" because of Defendants' infringement.  *See Daka Rsch., Inc. v. Individuals*, No. 22-cv-60246, 2023 WL 5310240, at *4 (S.D. Fla. July 14, 2023), *aff'd and adopted*, 2023 WL 5289258, at *1 (S.D. Fla. Aug. 17, 2023).   SharkNinja's brand and reputation are harmed when the innovations protected by the SharkNinja Patents are incorporated in goods not authorized, produced, or manufactured by SharkNinja.  Lessing Decl. ¶ 26.  Defendants' infringing conduct strips SharkNinja of control over the quality of products embodying its patented design and technology and over its reputation that is not measurable or compensable with money damages. *Id.* ¶ 29.  This is particularly damaging because SharkNinja's social media strategy depends on consumer trust in authentic products, their ease of use and cleaning, and clear source identification. Defendants' infringing conduct undermines consumer confidence in SharkNinja's brand—early 2025 market data shows that the SLUSHi may be underperforming relative to SharkNinja's previous category-defining product launches and risks losing its status as *the* at-home slush maker. *Id.* ¶ 27.  Furthermore, Defendants' Internet Stores target U.S. consumers, accept U.S. dollars, and ship into the District.   Compl. ¶¶ 12–15, 60–61.   Absent the requested injunctive relief, Defendants' actions will continue to divert demand from SharkNinja.

By contrast, being ordered to stop infringing patents they have no right to practice in the first place poses no cognizable hardship on Defendants.  *See Daka Rsch.*, 2023 WL 5310240, at *4.  Any harm Defendants claim is self-inflicted because they chose to build and sell products infringing the SharkNinja Patents.  *C.B. Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) ("[A] company cannot build a business on infringements and then argue that enforcing the law will cripple that business.").  The equities therefore weigh decisively in favor of granting the requested injunctive relief.

14

D.      **Issuance of the Injunction Is in the Public Interest**

An injunction here squarely serves the public interest by protecting consumers and safeguarding the patent system from ongoing harm.  Courts consider whether an injunction serves the public interest, including protecting consumers and patent rights that incentivize innovation. *See Daka Rsch.*, 2023 WL 5310240, at *4; *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 647 (Fed. Cir. 2015) ("[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention.").

Enjoining the ongoing online sale of infringing slush maker products protects consumers from being misled by Infringing Products that trade on SharkNinja Patents.  Compl. ¶¶ 49–50, 60–61; *Daka Rsch.*, 2023 WL 5310240, at *4.  An injunction will ensure that consumers have a smooth and reliable experience with their slush maker as designed by SharkNinja, and will prevent consumers from associating inferior products with SharkNinja.   Compl. ¶¶ 48–50, 60–61. Injunctive relief would also advance the public's interest in technological progress and innovation by rewarding genuine breakthroughs and strengthening the incentives for technological pioneers to invest in new technologies and design. *Apple*, 809 F.3d at 647; Compl. ¶¶ 26, 28–33.  Allowing Defendants to continue profiting from infringement would serve only to undermine these consumer-protection and innovation interests and chill future product development, while halting infringement aligns with the public's interest in the patent system's core purpose. *Daka Rsch.*, 2023 WL 5310240, at *4; Compl. ¶¶ 63–65.

V.      **THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE**

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283.  Furthermore, Rule 65(b) of the Federal Rules of Civil

Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition.  This Court additionally has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order.  Fed. R. Civ. P. 65.  The facts in this case warrant such relief.

A.      **A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiffs' Intellectual Property Is Appropriate**

A temporary restraining order—including on an *ex parte* basis—is appropriate where immediate action is necessary to prevent irreparable harm and preserve the status quo.  Courts have recognized that actions against infringers—particularly those operating online like here—present special challenges warranting *ex parte* relief.  Numerous courts have found *ex parte* measures appropriate where defendants' operations are electronic and subject to rapid, untraceable destruction of evidence.  *See Dell Inc.*, 2007 WL 6862341, at *2 (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants").  Federal courts likewise have frequently granted *ex parte* temporary restraining orders and asset restraints in patent infringement cases.  *See, e.g.*, *Louis Vuitton Malletier v. Beltteen*, No. 18-cv-62871, 2018 WL 7144485, at *3 (S.D. Fla. Dec. 11, 2018) (order granting *ex parte* application for temporary restraining order and order restraining transfer of defendants' assets).

SharkNinja is experiencing ongoing irreparable harm to its brand and its consumers due to Defendants' ongoing infringement.  Furthermore, Defendants' Internet-based operations in a global marketplace allow them to rapidly disseminate Infringing Products, conceal their identities and locations, and swiftly destroy or obfuscate any electronic evidence.  Plaintiffs are presently

16

unaware of Defendants' true identities, physical locations, or the full network of Internet Stores used to distribute the Infringing Products—notice is therefore presently impossible. There is also a very real risk that adversarial notice would trigger asset flight, evidentiary spoliation, and continued unlawful sales (under a new, different online storefront). These circumstances mirror those in which courts have deemed *ex parte* relief necessary to prevent further harm and to preserve the court's ability to afford effective final relief. *See Dell Inc.*, 2007 WL 6862341, at *2; *Louis Vuitton*, 2018 WL 7144485, at *3.

**B.      Removal of Defendants' Internet Store Listing Is Appropriate**

This Court should issue an *ex parte* temporary restraining order directing online marketplaces to disable Defendants' listings, images, and services (including all accounts and ASIN-linked "parent" and "child" listings) related to the Infringing Products to ensure immediate cessation of infringing activity and prevent further irreparable harm pending further proceedings. Courts have consistently authorized marketplace-focused injunctive relief on an *ex parte* basis where necessary to halt ongoing infringement and prevent the evasion of enforcement. *See, e.g.*, *Pranash (Tianjin) Tech. Dev. Co. v. Individuals*, No. 25-cv-13023, Dkt. 18 (N.D. Ill. Nov. 14, 2025) (granting temporary restraining order). Such orders commonly require online marketplace operators and social media platforms to cease facilitating access to listings, advertisements, and associated images for infringing products, thereby preventing further sales, diversion of proceeds, and dissipation of evidence. *Id.*

The relief SharkNinja seeks fits squarely within this established practice. SharkNinja requests an *ex parte* temporary restraining order directing Internet Stores to disable, remove, and refrain from displaying or facilitating access to any listings, advertisements, or associated images—or otherwise providing any service or payment—to any of the Defendants and those acting in concert with the Defendants in relation to Infringing Products. This request encompasses

17

all accounts operating under Defendants' seller identifications, all listings and images identified by the Internet Stores' identification numbers, and any listings or images associated with any "parent" or "child" identification numbers linked to any Defendant or any alias used or controlled to offer products infringing the SharkNinja Patents.  An *ex parte* temporary restraining order is necessary to preserve the status quo and prevent irreparable harm pending a preliminary injunction hearing.

### C.     Preventing the Fraudulent Transfer of Assets Is Appropriate

The Court should enter an *ex parte* prejudgment order restraining asset transfers to preserve Plaintiffs' ability to obtain monetary relief—including reasonable royalties and lost profits for sales of Infringing Products—given the substantial risk that Defendants, who appear to hold most of their assets overseas, will conceal or transfer funds and render any final judgment useless.

Courts possess inherent equitable authority to impose a prejudgment asset freeze where a plaintiff seeks equitable relief, including an accounting and disgorgement of ill-gotten gains.  *See, e.g.*, *SheFit Operating Co., LLC v. Individuals*, No. 0:24-CV-61310, 2024 WL 4880617, at *2 (S.D. Fla. Nov. 22, 2024).  Such restraints are meant to ensure the efficacy of the eventual judgment.  *See, e.g.*, *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 708–09 (5th Cir. 2007).  When a complaint seeks relief authorized by statute, including monetary relief under the Patent Act (35 U.S.C. § 284), courts may exercise their equitable powers to restrain the transfer of assets pending adjudication, especially where the illicit nature of the enterprise and the use of online commerce allow for the rapid dissipation, concealment, and offshore transfer of funds.  *SEC v. ETS Payphones*, 408 F.3d 727, 735–36 (11th Cir. 2005) (upholding freeze of defendants' assets).

Here, without a prejudgment restraint, Defendants are likely to move funds to foreign accounts or otherwise conceal assets, thwarting any final judgment and rendering Plaintiffs' remedies meaningless.  An *ex parte* asset freeze will preserve the efficacy of the Court's powers,

protect Plaintiffs' ability to obtain reasonable royalties and lost profits, and prevent irreparable dissipation pending a preliminary injunction hearing.

### D.    <u>Expedited Discovery Is Appropriate</u>

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982).  Courts have wide latitude in determining whether to grant a party's request for discovery.  *Id.*  Plaintiffs respectfully request expedited discovery into the bank and payment service accounts Defendants use for their unlawful operations.  The expedited discovery requested in the proposed order is limited to include only what is essential to prevent further irreparable harm.  Discovery of these financial accounts so that they can be frozen is necessary to ensure these activities can be contained.  Without discovery of Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiffs would not know which entities to serve.  Courts commonly permit discovery to aid in the identification of unknown defendants.  *See* Fed. R. Civ. P. 26(b)(2); *adMarketplace, Inc. v. Tee Support Inc.*, No. 13-cv-5635-LGS, 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases).

Plaintiffs' undersigned counsel is aware that the third-party marketplaces and payment services contemplated in the proposed order have cooperated with intellectual property owners in prior cases and under similar circumstances and are accustomed to doing so as part of their business operations.  These third parties can comply with these expedited discovery requests without undue burden.

### VI.    <u>A BOND SHOULD SECURE THE INJUNCTIVE RELIEF</u>

Because of the strong and unequivocal nature of Plaintiffs' evidence of infringement,

Plaintiffs respectfully request this Court require Plaintiffs to post a bond of no more than five thousand dollars ($5,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice.  The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion.  Fed. R. Civ. P. 65(c).

## VII.   <u>CONCLUSION</u>

Plaintiffs are suffering ongoing and irreparable harm—including diverted sales, loss of market share and price premium, and erosion of goodwill and brand equity—as a direct result of Defendants' infringing conduct.   Monetary relief alone cannot remediate this marketplace disruption or restore Plaintiffs' competitive position and reputation.   Accordingly, Plaintiffs respectfully request that the Court grant the Motion for Temporary Restraining Order and the specific relief set forth therein.

Dated:  November 20, 2025.

Respectfully submitted,

**Kevin C. Kaplan, Esq.**
Florida Bar No. 933848
kkaplan@coffeyburlington.com
lperez@coffeyburlington.com
**Christopher E. Cheek, Esq.**
Florida Bar No. 91363
ccheek@coffeyburlington.com
lmaltz@coffeyburlington.com
service@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, PH-1
Miami, Florida 33133
Tel:  (305) 858-2900

OF COUNSEL:

**Brian Rosenthal** *(admitted pro hac vice)*
brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York NY 10166-0193
Tel:  (212) 351-4000

**Brian Buroker** *(admitted pro hac vice)*
bburoker@gibsondunn.com
**Shuo Josh Zhang** *(admitted pro hac vice)*
szhang@gibsondunn.com
**David Brzozowski** *(pro hac vice to be refiled)*
dbrzozowski@gibsondunn.com
**Yun Lin** *(admitted pro hac vice)*
rlin@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036-4504
Tel:  (202) 955-8500

**David Glandorf** *(admitted pro hac vice)*
dglandorf@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1900 Lawrence Street
Suite 3000
Denver, CO 80202-2211
Tel:  (303) 298-5700

*Counsel for Plaintiffs SharkNinja Operating LLC and SharkNinja Sales Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 20, 2025, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system, which will provide notice by email to all counsel of record.

*/s/ Kevin C. Kaplan*
Kevin C. Kaplan