## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

### CASE NO. 25-cv-25323-RAR

SHARKNINJA OPERATING LLC, and
SHARKNINJA SALES COMPANY,

      Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

      Defendants.

_____/

### PLAINTIFFS' MOTION FOR ENTRY OF PRELIMINARY INJUNCTION
### AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiffs SharkNinja Operating LLC and SharkNinja Sales Company (collectively, "SharkNinja" or "Plaintiffs") respectfully move the Court to convert the temporary restraining order issued in this matter into a preliminary injunction against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A [ECF No. 21-1] (collectively, "Defendants") pursuant to 35 U.S.C. § 283, Fed. R. Civ. P. 65, the All Writs Act, 28 U.S.C. § 1651(a), and the Court's inherent authority. SharkNinja further requests a hearing on the requested injunctive relief pursuant to Local Rule 7.1(b)(2) and Federal Rule of Civil Procedure 65(b)(3).  In support thereof, SharkNinja submits the following memorandum of law.

## MEMORANDUM OF LAW

## I.        INTRODUCTION

The same findings that led the Court to enter the Temporary Restraining Order ("TRO") [ECF No. 26] against the Defendants on November 21, 2025 warrant the entry of a preliminary injunction that continues to prohibit Defendants' further use of U.S. Patent Nos. 12,285,028 (the "'028 Patent" or the "Utility Patent") and D1,091,236 (the "'236 Design Patent" or the "Design Patent") (collectively, the "SharkNinja Patents"), pending a final determination on the merits.  The Court entered the TRO against Defendants based upon SharkNinja's evidence showing that each Defendant has made, used, sold, offered for sale, or imported products that are likely to be found to infringe at least one (1) SharkNinja Patent (the "Infringing Products"), within this District and throughout the United States by operating fully interactive e-commerce stores (the "Internet Stores") under their seller names identified on Schedule A hereto through various online marketplace accounts.  In connection therewith, the Court entered a TRO that prohibited Defendants' use of the SharkNinja Patents.

## II.       STATEMENT OF FACTS

### A.        SharkNinja's Intellectual Property and Products

SharkNinja is a global product design and technology leader recognized for consistently redefining consumer experiences through disruptive innovation and bold design.  Declaration of Danielle Lessing (SVP, Chief Roadmap & Innovation Officer at SharkNinja Operating LLC) filed in Support of SharkNinja's Application for TRO (ECF No. 22-1)[1] ("Lessing Decl."), ¶ 5.

---

[1] On November 20, 2025, SharkNinja filed its *Ex Parte* Application for Entry of Temporary Restraining Order and Order Restraining Transfer of Assets (the "Application for TRO"), together with supporting declaration and exhibits, which are incorporated herein by reference.  *See* [ECF No. 22-1].

SharkNinja is the exclusive supplier and manufacturer of Shark and Ninja brand products in the United States. *Id.*

SharkNinja set out to solve an unmet need in the home appliance market for an at-home slush machine that is compact, countertop-worthy, user-friendly, and category-defining. *Id.* ¶ 6. Previous slush machines required a tall format to avoid, among other problems, ice build-up and flow issues. Over an 18-month span, a cross-functional team of industrial designers, engineers, food scientists, and market researchers at SharkNinja iterated over multiple proof-of-concept builds and engineering iterations to devise a product that could produce consistent slush and allow for easy operation and cleaning, yet still fit under a standard cabinet. *Id.* ¶¶ 8, 11. SharkNinja's engineers devised and patented novel arrangements for: 1) the compressor, condenser, and airflow; 2) a removable and ergonomically designed tray to simplify cleanup and preserve the unit's sleek, pill-shaped design; and 3) packaging of electronics to maintain under-cabinet placement and a cohesive aesthetic. *Id.* ¶ 9. SharkNinja is the owner of all rights, title, and interest in and to the '028 Utility Patent and the '236 Design Patent. *Id.* ¶ 4. Unlike prior at-home slush making appliances that required ice (Fig. 1) or relied on ice-and-salt chambers (Fig. 2), the SLUSHi (Fig. 3) reimagines the category and brings commercial-grade performance to consumers' countertops.[2] *Id.* ¶ 8.

---

[2] Each SLUSHi box is marked with a patent notice statement citing to https://sharkninja.com/patents/, which lists the '028 and '236 Design Patents, among other patents.



Figure 1: Margaritaville
Frozen Concoction Maker



Figure 2: Nostalgia
Slush Drink Maker



Figure 3: SharkNinja
SLUSHi

SharkNinja created not only the product but also the market for it.  SharkNinja launched the Ninja SLUSHi with a proven, high-velocity strategy designed to generate viral momentum: an original, demonstrable product story that invites organic social sharing, amplified by significant paid social investment to build a reinforcing flywheel of awareness, engagement, and conversion. *Id.* ¶ 25.  This approach positioned the Ninja SLUSHi as the original in a new category, concentrated consumer attention during a finite and time-sensitive window, and established durable brand equity to support follow-on sales.  *Id.*

**B.   Defendants' Unlawful Activities**

SharkNinja fiercely defends intellectual property rights.  Following the successful launch of the Ninja SLUSHi, SharkNinja's proactive intellectual property protection sweeps uncovered a proliferation of online sellers offering knockoff slush machines that infringe SharkNinja's patented advancements.  *Id.* ¶ 12.  Through investigations across multiple online marketplace platforms, SharkNinja identified numerous Internet Stores, listed on Schedule A, offering products that infringe at least one of the SharkNinja Patents for sale.  *Id.* ¶¶ 12–13.  The investigations confirm that those products appropriate the very innovations that SharkNinja has developed and patented

4

while attempting to pass as legitimate alternatives to the SLUSHi. *Id.* ¶ 18. Below are exemplary images of the products identified on Schedule A, annotated with features claimed in the '028 Patent such as the side baffles and asymmetric wall portions of the mixing vessels of the identified slush machines, and in the '236 Design Patent such as the collection tray design:



| '028 Patent | SLUSHi Side Baffle | Exemplary Defendant Side Baffle |
|---|---|---|
| *See* Fig. 6C; 12:64-67. | | |

| '236 Design Patent | SLUSHi Collection Tray | Exemplary Defendant Collection Tray |
|---|---|---|

Schedule A shows that, for each product accused of infringing the '028 Patent, each accused machine has an asymmetric wall portion of its mixing vessel that incorporates a side baffle. It is not a coincidence that each side baffle shown is on the left side (when facing the machine) of the mixing vessel. Just like SharkNinja's SLUSHi machine, the side baffle is placed in that position so that the slush flow, which is being circulated by a dasher turning in a clockwise direction, encounters the side baffle as it is being circulated up the left side of the vessel. The side baffle then promotes the slush flow away from the side of the vessel and back toward the center of

the mixing vessel.  These images thus demonstrate that the side baffle component of the asymmetric wall portion in each of the exemplary Infringing Products are "configured [to] promote slush flow away from the left side or the right side of the vessel chamber and back toward a center of the vessel chamber" as claimed.  *See* '028 Patent at Cl. 1.  Similarly, every Infringing Product includes a collection tray that infringes the design claimed in the '236 Design Patent.

Defendants are neither authorized resellers nor licensees of any SharkNinja intellectual property, including the SharkNinja Patents.  Lessing Decl. ¶ 21.  To mask their identities and the scope of their operations, Defendants use transient online storefronts and provide minimal disclosures while taking advantage of publicly anonymous marketplace and payment-processor infrastructures to receive funds and coordinate sales.  *Id.* ¶ 22.  For example, the seller names identified on Schedule A are not associated with any registered business, and most storefronts omit accurate or complete contact information.  *Id.* ¶ 20.  Investigations further show that Defendants target U.S. consumers, including within this Judicial District: each Internet Store accepts payment in U.S. dollars and permits shipment into the Southern District of Florida.  *Id.* ¶ 18.  Screenshots evidencing offers for sale and shipment into Florida are compiled in Exhibit 3 [ECF No. 22-4].  *Id.* ¶ 19.  This behavior is accelerating—Defendants are launching and relaunching Internet Stores at a volume and pace that far exceeds ordinary market activity.  *Id.* ¶ 15.

In short, Defendants have been selling Infringing Products and leveraging SharkNinja's time- and capital-intensive innovations to field knockoffs that trade on the brand equity and consumer demand generated by SLUSHi's viral success.  *Id.* ¶ 23.

## III.    PROCEDURAL BACKGROUND

On November 14, 2025, Plaintiffs filed their Complaint [ECF No. 1] against Defendants for patent infringement pursuant to 35 U.S.C. § 271.  On November 20, 2025, Plaintiffs filed their

Expedited Motion and *Ex Parte* Application for Entry of Temporary Restraining Order [ECF No. 22]. On November 21, this Court issued the TRO temporarily restraining Defendants from infringing the SharkNinja Patents and directing marketplace platforms to identify and restrain funds in payment accounts associated with Defendants to avoid fund diversion. *See* ECF No. 26.[3]

Pursuant to the Court's TRO on November 21, Plaintiffs notified the marketplace platforms identified on Schedule A on the same day and posted its required bond. *See* [ECF No. 35]. On November 24, the Court issued summons to all Defendants identified on Schedule A. [ECF No. 33]. Between November 21 and 26, Defendants were notified by the marketplace platforms and/or the Plaintiffs of the TRO and related information. Thereafter, Plaintiffs filed a Certificate of Service confirming service on each Defendant, [ECF No. 36]. Plaintiffs now respectfully move the Court to convert the TRO into a preliminary injunction against the Defendants and request a hearing on the requested injunctive relief pursuant to Local Rule 7.1(b)(2).

## IV.   <u>ARGUMENT</u>

### C.   **A Preliminary Injunction is Essential to Prevent Irreparable Injury**

Rule 65(a)(1) of the Federal Rules of Civil Procedure provides that a Court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). Plaintiffs have served Defendants with a copy of the TRO, together with all other documents filed in this matter, thereby providing notice to Defendants, by email, messaging through the platform, and/or by website posting. *See* Certificate of Service on File with the Court, [ECF No. 36]. Further, Plaintiffs

---

[3] Pursuant to the terms of the TRO, the TRO is to remain in effect for fourteen (14) days from the date of its entry unless extended for good cause. As such, the TRO is set to expire on December 5, 2025. *See* TRO ¶ 14.

will be providing Defendants with notice of the instant Motion upon filing by serving Defendants with a copy of the same.

This Court has personal jurisdiction over each Defendant. *Louis Vuitton* Malletier*, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) (holding that the Southern District of Florida regularly exercises personal jurisdiction over websites offering for sale and selling infringing merchandise that is offered for sale or sold without authorization to Florida residents over the internet). Plaintiffs' investigations show that each Defendant's Internet Store offers for sale and enables shipment of the Infringing Products to addresses within this Judicial District. Lessing Decl. ¶¶ 16–18. In fact, Exhibit 3 to the Lessing Declaration provides vendor-by-vendor screenshots and order records from each Internet Store demonstrating the ability to purchase and ship the Infringing Products into the District. *Id.* ¶ 19 & Ex. 3 thereto [ECF No. 22-4]. This Court also has original subject matter jurisdiction over patent claims pursuant to 35 U.S.C. § 1 *et seq.*, 28 U.S.C. §§ 1331, 1338(a)–(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

Defendants' ongoing infringement inflicts immediate, irreparable, and indivisible harm to Plaintiffs that warrants continuation of the Court's existing relief through a preliminary injunction to preserve the status quo. Each Defendant here unlawfully makes, uses, sells, offers for sale, or imports goods that infringe at least one (1) of the SharkNinja Patents via the Defendant Internet Stores. By their actions, Defendants are eroding consumer confidence, depleting SharkNinja's hard-earned brand equity, and diluting SharkNinja's market share. The sheer number of Defendants in conjunction with their anonymity renders individual enforcement efforts impractical and ineffective. Furthermore, the similarity in Defendants' conduct and product offerings indicate

a single, interconnected scheme that inflicts individual, concurrent, and indivisible injury on SharkNinja.

The Court has already recognized this ongoing harm and the need for immediate equitable relief by granting SharkNinja's expedited motion for TRO.  Those same circumstances persist during the ongoing holiday season, which is a critical commercial window for SharkNinja's products.  Lessing Decl. ¶ 25.  SharkNinja's launches rely on short, non-repeatable viral windows when consumer attention, brand equity, and first-mover recognition peak.  *Id.*  Allowing Defendants' infringement to continue through this period would siphon network effects, erode price integrity, and permanently dilute the goodwill and market position SharkNinja has built.  *Id.*

The entry of a preliminary injunction will stop Defendants from benefiting from their unlawful infringement of SharkNinja Patents and will preserve the status quo until the case is decided on the merits.  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 445–46 (1974).  Without the relief requested herein, Defendants' infringing activities will continue unabated, nullifying the protection afforded by the TRO and inflicting harm that cannot be compensated by monetary damage alone.

Defendants' unlawful sales of infringing products have generated proceeds that are likely held overseas and are easily dissipated or concealed through online commerce.  Continuing the asset freeze is necessary to prevent Defendants from transferring or hiding funds, to maintain the Court's ability to grant full relief (including reasonable royalties and lost profits), and to ensure that any judgment entered in SharkNinja's favor remains meaningful and enforceable.  *See, e.g.*, *Louis Vuitton Malletier v. Beltteen*, No. 18-cv-62871, 2018 WL 7144485, at *3 (S.D. Fla. Dec. 11, 2018) (order granting *ex parte* application for temporary restraining order and order restraining transfer of defendants' assets).

**D.    The Four Factors That Warranted Entry of a TRO Continue to Favor Entry of a Preliminary Injunction**

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005).  To obtain a temporary restraining order or a preliminary injunction, a party must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest."  *Id.* at 1225–26; *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets).

**1.    Probability of Success on the Merits of SharkNinja's Claims**

SharkNinja will likely succeed on its patent infringement claims.  A plaintiff must show that an asserted patent would "more likely than not" withstand a validity challenge and that the patent is infringed to obtain preliminary relief. *Doubleday Acquisitions LLC v. Envirotainer AB*, No. 1:21-CV-03749-SCJ, 2022 WL 2784800, at *3 (N.D. Ga. May 31, 2022); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376–80 (Fed. Cir. 2009).  "Each issued patent carries with it a presumption of validity under 35 U.S.C. § 282" sufficient to establish a likelihood of success on the validity issue. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017); *Doubleday Acquisitions*, 2022 WL 2784800, at *3.

SharkNinja conceived of the first compact, countertop-worthy, and user-friendly slush machine and patented the innovations that allowed this category-defining device to come to life. Lessing Decl. ¶¶ 6–11.  Those patents—the '028 Utility Patent and '236 Design Patent—are valid, enforceable, and in force.  Compl. ¶¶ 2, 25–26, 27–39.  Thus, Defendants face the statutory presumption of validity, and nothing before the Court undermines that presumption at this stage.

10

*Tinnus*, 846 F.3d at 1205.  Plaintiffs have not licensed or authorized Defendants to practice the SharkNinja Patents, and none of the Defendants is an authorized retailer of genuine Shark and Ninja brand products.  Compl. ¶ 48; Lessing Decl. ¶ 21.

For design patent infringement, courts consider whether an "ordinary observer," familiar with the prior art, would view the overall appearance of the accused design as "substantially similar" to the patented design and that "the accused device contains substantially the same points of novelty that distinguished the patented design from the prior art."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 668 (Fed. Cir. 2008) (internal citation omitted).  An infringing product need not be an exact copy of the patented design, and Defendants cannot escape infringement by introducing minor variations.  *Egyptian Goddess*, 543 F.3d at 669–70.

Here, side-by-side comparisons in Exhibit 3 to the Lessing Declaration show that each Infringing Product identified on Schedule A include a tray,  having front-face geometries and curved bottom portions that replicate the patented features and are, to an ordinary observer, substantially the same in overall visual impression as the design claimed by the '236 Design Patent.  *See* Compl. ¶¶ 3, 73–76 & figs.; Lessing Decl. ¶¶ 18–19 & Ex. 3 thereto [ECF No. 22-4].  Under *Egyptian Goddess*, this satisfies the ordinary-observer test.  543 F.3d at 668.

For utility patent infringement, courts first construe the patent claim and compare it to the accused product or method.  *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1376 n. 7 (Fed. Cir. 2023), *cert. denied*, 144 S. Ct. 2563, 219 L. Ed. 2d 1228 (2024).  Patent claims can be "literally" infringed, such that every claim element is present in the accused device, or infringed under the "doctrine of equivalents," where "the accused product is insubstantially different from the claimed element, that is, where it performs substantially the same

function in substantially the same way to obtain substantially the same result." *Bristol-Myers Squibb Co. v. Andrx Pharms., Inc.*, 343 F. Supp. 2d 1124, 1133–34 (S.D. Fla. 2004).

Seventy-four of the products that Defendants are making, using, offering for sale, selling, and/or importing also infringe at least Claim 1 of the '028 Utility Patent, both literally and under the doctrine of equivalents. These Infringing Products each include the claimed asymmetric wall portion and side baffle. *See* Compl. ¶¶ 3, 69, 75, ECF No. 21-1.

## 2. SharkNinja Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Defendants' ongoing sale of Infringing Products is causing SharkNinja brand equity depletion, loss of market share, and loss of exclusivity in the very market it created. Compl. ¶¶ 3, 45–46, 60–61, 63–65; Lessing Decl. ¶¶ 24–30. A patent confers "the right to exclude others from using his property." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (citing *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932)) (internal citation omitted). Violation of a patent owner's "right to exclude" renders monetary remedies inadequate in circumstances where exclusivity, market position, and brand equity are actively depleted. *Id.*; Compl. ¶¶ 63–65; Lessing Decl. ¶¶ 24–30. Indeed, courts have held that a "loss in market share" constitutes irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Co.*, 659 F.3d 1142, 1149–51 (Fed. Cir. 2011) (holding that it is a "clear error of judgment" to deny irreparable harm when the accused product causes a direct competitor patentee to lose market share and access to prospective customers). The harm Defendants' activity is causing SharkNinja is therefore irreparable and warrants immediate injunctive relief.

Defendants are making, using, offering for sale, selling, and importing unauthorized products that infringe SharkNinja's '236 Design Patent and, for 74 of the 101 products, the '028 Utility Patent. Compl. ¶¶ 3, 45–46, 61. Defendants have willfully directed infringing activity to

this District by targeting Florida consumers with products designed to directly compete with SharkNinja's SLUSHi and sold through Internet Stores that accept U.S. dollars and ship into this District. *Id.* ¶¶ 12–15, 49–50, 60–61; ECF No. 22-4. SharkNinja has not licensed or authorized Defendants to use the SharkNinja Patents, and none of the Defendants is an authorized SLUSHi retailer. *Id.* ¶ 48.

Since the Defendants have begun selling their infringing products this year, SharkNinja has suffered from decreased consumer confidence, brand equity depletion, and market status dilution—ongoing harm that cannot be adequately remedied by money damages. *Id.* ¶¶ 63–65. Defendants' infringement erodes SharkNinja's brand equity, undermining consumer confidence and diminishing the premium associated with SharkNinja's innovation. Lessing Decl. ¶ 23. Defendants are free-riding on SharkNinja's time- and capital-intensive inventions, capturing sales that would otherwise accrue to SharkNinja, diluting market share, eroding price premium, and increasing the risk of poor product quality. *Id.*; *Robert Bosch*, 659 F.3d at 1151. SharkNinja, through its SLUSHi, has become synonymous with being the innovator in the counter-top, at-home slush machine market, and the proliferation of infringers leveraging SharkNinja's patented features without its quality controls further injures SharkNinja's reputation and consumer trust in the brand, particularly given SharkNinja's social media-driven emphasis on groundbreaking design, ease of use, and cleaning. Lessing Decl. ¶¶ 26–27. Indeed, early indicators for 2025 sales show the SLUSHi is at risk of underperforming relative to prior category-defining launches of SharkNinja products. *Id.* ¶ 27. This market data suggests ongoing diversion and brand dilution. *Id.* ¶ 28.

Furthermore, Rule 20(a)(2)(A) permits defendants to be "joined in one action . . . if any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." While each individual Defendant's actions,

alone, cause Plaintiffs irreparable harm, the sheer number of Internet Stores is a force multiplier of those individual harms that creates a massive single reputational harm to Plaintiffs. SharkNinja faces significant economic and logistical challenges in enforcing its intellectual property rights against each Internet Store individually. Single defendant enforcement in the face of the overwhelming infringement points of sale made possible by the unregulated and anonymous nature of the internet is impractical, ineffective, and does not remedy the actual harm to SharkNinja caused by the combined effect of all of Defendants' simultaneous infringing operations. The anonymity and mass-reach the internet provides makes identifying the full extent and scope of the Defendants' infringing operations nearly impossible. Defendants, each of whom is likely aware of the existence of the illegal marketplace and the activities of the others to perpetuate the same, are combining the force of their actions to cause individual, concurrent, and indivisible harm to Plaintiffs and consumers. In other words, Defendants' activities are all logically part of the same occurrence and each is therefore properly joined in this action under Fed. R. Civ. P. 20. *See Bose Corp. v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A,"* 334 F.R.D. 511 (N.D. Ill. Feb. 19, 2020) (holding that the combined effect of the individual harm suffered by a plaintiff from defendants operating online marketplaces infringing the plaintiff's intellectual property rights creates injuries to the plaintiff in the aggregate constituting an occurrence under Rule 20).

Immediate injunctive relief is essential to prevent further loss of market share and brand equity during a critical commercial period. Continued infringement will irreversibly erode network effects and first-mover recognition that cannot be restored after trial. Lessing Decl. ¶¶ 24–30.

### 3.    The Balance of Hardship Tips Sharply in SharkNinja's Favor

The balance of equities strongly favors immediate injunctive relief because the concrete, ongoing harm to SharkNinja from direct copying and loss of control over its patented product and brand vastly outweighs any claimed burden on Defendants, who have no lawful entitlement to profits from their continued infringement. *See Schiavo*, 403 F.3d at 1225–26.

SharkNinja is suffering present hardship "from loss of sales and its inability to control its reputation" because of Defendants' infringement. *See Daka Rsch., Inc. v. Individuals*, No. 22-cv-60246, 2023 WL 5310240, at *4 (S.D. Fla. July 14, 2023), *aff'd and adopted*, 2023 WL 5289258, at *1 (S.D. Fla. Aug. 17, 2023).   SharkNinja's brand and reputation are harmed when the innovations protected by the SharkNinja Patents are incorporated into goods not authorized, produced, or manufactured by SharkNinja.  Lessing Decl. ¶ 26.  Defendants' infringing conduct strips SharkNinja of control over the quality of products embodying its patented design and technology and over its reputation that is not measurable or compensable with money damages. *Id.* ¶ 29.  This is particularly damaging because SharkNinja's social media strategy depends on consumer trust in authentic products, their ease of use and cleaning, and clear source identification. Defendants' infringing conduct undermines consumer confidence in SharkNinja's brand—early 2025 market data shows that the SLUSHi may be underperforming relative to SharkNinja's previous category-defining product launches and risks losing its status as the at-home slush maker. *Id.* ¶ 27.  Furthermore, Defendants' Internet Stores target U.S. consumers, accept U.S. dollars, and ship into the District.  Compl. ¶¶ 12–15, 60–61; ECF No. 22-4.  Absent the requested injunctive relief, Defendants' actions will continue to divert demand from SharkNinja.

By contrast, being ordered to stop infringing patents they have no right to practice in the first place poses no cognizable hardship on Defendants. *See Daka Rsch.*, 2023 WL 5310240, at *4.

Any harm Defendants claim is self-inflicted because they chose to build and sell products infringing the SharkNinja Patents. *C.B. Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) ("[A] company cannot build a business on infringements and then argue that enforcing the law will cripple that business."). The equities therefore weigh decisively in favor of granting the requested injunctive relief.

### 4.   Issuance of the Injunction is in the Public Interest

An injunction here squarely serves the public interest by protecting consumers and safeguarding the patent system from ongoing harm. Courts consider whether an injunction serves the public interest, including protecting consumers and patent rights that incentivize innovation. *See Daka Rsch.*, 2023 WL 5310240, at *4; *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 647 (Fed. Cir. 2015) ("[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention.").

Enjoining the ongoing online sale of infringing slush machines protects consumers from being misled by Infringing Products that trade on the SharkNinja Patents. Compl. ¶¶ 49–50, 60–61; *Daka Rsch.*, 2023 WL 5310240, at *4. An injunction will ensure that consumers have a smooth and reliable experience with their slush machine as designed by SharkNinja and will prevent consumers from associating inferior products with SharkNinja. Compl. ¶¶ 48–50, 60–61. Injunctive relief would also advance the public's interest in technological progress and innovation by rewarding genuine breakthroughs and strengthening the incentives for technological pioneers to invest in new technologies and design. *Apple*, 809 F.3d at 647; Compl. ¶¶ 26, 28–33. Allowing Defendants to continue profiting from infringement would serve only to undermine these consumer-protection and innovation interests and chill future product development, while halting

infringement aligns with the public's interest in the patent system's core purpose. *Daka Rsch.*, 2023 WL 5310240, at *4; Compl. ¶¶ 63–65.

### E.      The Equitable Relief Sought is Appropriate

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a preliminary injunction upon notice. The facts in this case warrant such relief.

### 1.      The Preliminary Injunction Should Continue to Enjoin Defendants' Unauthorized and Unlawful Use of the SharkNinja Patents

Plaintiffs request that the Court to convert the TRO to a preliminary injunction that continues to require Defendants to cease manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products infringing the SharkNinja Patents, including the products identified on Schedule A. SharkNinja is experiencing ongoing irreparable harm—including reduced consumer trust, brand equity depletion, and market status dilution— because of Defendants' ongoing infringement. This relief is essential to continue to prevent erosion of market share and brand equity, and to stop Defendants from continuing to benefit from their unlawful infringement of the SharkNinja Patents while this case is pending for final adjudication. Many courts, including this Court, have authorized injunctive relief in similar cases involving the unauthorized and unlawful infringement of patents. *See, e.g.*, *SHEFIT Operating Co., LLC v. Individuals*, No. 0:24-CV-61310, 2024 WL 4880617, at *3 (S.D. Fla. Nov. 22, 2024).

**2.      The Preliminary Injunction Should Continue the Restraint of Defendants' Assets**

In addition to converting the temporary restraining order into a preliminary injunction that continues to enjoin the Defendants' unlawful practices, the Court's preliminary injunction should continue to limit the transfer of Defendants' unlawfully gained assets.  This restriction will preserve Plaintiffs' ability to obtain monetary relief—including reasonable royalties and lost profits for sales of Infringing Products—given the substantial risk that Defendants, who appear to hold most of their assets overseas, will conceal or transfer funds and render any final judgment useless.

Courts possess inherent equitable authority to impose a prejudgment asset freeze where a plaintiff seeks equitable relief, including an accounting and disgorgement of ill-gotten gains.  *See, e.g.*, *SHEFIT*, 2024 WL 4880617, at *3.  Such restraints are meant to ensure the efficacy of the eventual judgment.  *See, e.g.*, *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 708–709 (5th Cir. 2007).  When a complaint seeks relief authorized by statute, including monetary relief under the Patent Act (35 U.S.C. § 284), courts may exercise their equitable powers to restrain the transfer of assets pending adjudication, especially where the illicit nature of the enterprise and the use of online commerce allows for the rapid dissipation, concealment, and offshore transfer of funds.  *SEC v. ETS Payphones*, 408 F.3d 727, 735–36 (11th Cir. 2005) (upholding freeze of defendants' assets).

Here, without a prejudgment restraint, Defendants are likely to move funds to foreign accounts or otherwise conceal assets, thwarting any final judgment and rendering Plaintiffs' remedies meaningless.  The requested asset freeze will preserve the efficacy of the Court's powers, protect Plaintiffs' ability to obtain reasonable royalties and lost profits, and prevent irreparable dissipation pending a preliminary injunction hearing.

**F.  The Posted Bond is Sufficient to Secure the Injunction**

The posting of security upon issuance of a preliminary injunction is vested in the Court's sound discretion.  Fed. R. Civ. P. 65(c).  Because of the strong and unequivocal nature of SharkNinja's counterfeiting evidence against each of the Defendants at issue, SharkNinja respectfully requests this Court to require it to maintain its previously posted bond in the amount of five thousand dollars ($5,000.00) [ECF No. 26], subject to increase at the Court's discretion should an application be made in the interest of justice.

**G.  Request for Hearing**

In accordance with Local Rule 7.1(b)(2) and pursuant to Federal Rule of Civil Procedure 65(b)(3), SharkNinja respectfully requests the Court schedule a hearing on the instant Motion to allow Defendants and/or any other affected persons to challenge the appropriateness of the Motion and move to dissolve the same.  The preliminary injunction SharkNinja is seeking would maintain the relief granted in the TRO during the pendency of the matter.  SharkNinja estimates the time required for argument will be approximately 30 minutes.

**V.  <u>CONCLUSION</u>**

In view of the foregoing, SharkNinja respectfully requests that this Court schedule a hearing on SharkNinja's Motion for Preliminary Injunction pursuant to Local Rule 7.1(b)(2) and Federal Rule of Civil Procedure 65(b)(3) to convert the TRO into a preliminary injunction as to Defendants in the form SharkNinja will submit to the Court prior to the scheduled hearing date.

Dated:  November 28, 2025.

Respectfully submitted,

**Kevin C. Kaplan, Esq.**
Florida Bar No. 933848
kkaplan@coffeyburlington.com
lperez@coffeyburlington.com
**Christopher E. Cheek, Esq.**
Florida Bar No. 91363
ccheek@coffeyburlington.com
lmaltz@coffeyburlington.com
service@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, PH-1
Miami, Florida 33133
Tel:  (305) 858-2900

OF COUNSEL:

**Brian Rosenthal** *(admitted pro hac vice)*
brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York NY 10166-0193
Tel:  (212) 351-4000

**Brian Buroker** *(admitted pro hac vice)*
bburoker@gibsondunn.com
**Shuo Josh Zhang** *(admitted pro hac vice)*
szhang@gibsondunn.com
**David Brzozowski** *(pro hac vice refiled)*
dbrzozowski@gibsondunn.com
**Yun Lin** *(admitted pro hac vice)*
rlin@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036-4504
Tel:  (202) 955-8500

**David Glandorf** *(admitted pro hac vice)*
dglandorf@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1900 Lawrence Street
Suite 3000
Denver, CO 80202-2211
Tel:  (303) 298-5700

*Counsel for Plaintiffs SharkNinja Operating
LLC and SharkNinja Sales Company*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on November 28, 2025, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system, which will provide notice by email to all counsel of record.

*/s/ Kevin C. Kaplan*
Kevin C. Kaplan
