**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

SHARKNINJA OPERATING LLC, and
SHARKNINJA SALES COMPANY

    Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.
_____/

Case No. 1:25-cv-25323

**DEFENDANTS AND THIRD-PARTY RESPONDENTS' EXPEDITED MOTION
TO DISSOLVE TEMPORARY RESTRAINING ORDER**

Defendants, Ningbo Shangyou E-Commerce Co., Ltd., d/b/a Wizaura, Hubei Zhihuigu Technology Co., Ltd., d/b/a Wizaura, Ningbo Linglingqi Cross-Border E-Commerce Co., Ltd., d/b/a Wizaura, Dongdong Century (Hangzhou) Technology Co., Ltd.,d/b/a Syintao, Ningbo Qichui Machinery Co., Ltd., d/b/a Roaaee, Changsha Shuohang E-Commerce Co., Ltd., d/b/a Chivalz, Anqing Xi'a Trading Co., Ltd., d/b/a Chivalz, Zhongshan Jiameng Office Supplies Co., Ltd., ., d/b/a Chivalz, Yantai Renqian E-Commerce Co., Ltd., d/b/a Roromall, Yantai Haiga Trading Co., Ltd., d/b/a Towallmark and Yantai Kongqueju E-Commerce Co., Ltd., d/b/a ExploreHorizon (collectively, the "Defendants"), and Third-Party Respondents,[1] Hangzhou Shuzhi Interactive Technology Co., Ltd., d/b/a WALKLINK, Yantai Zhirun E-Commerce Co., Ltd., d/b/a, Garvee,

---

[1] "Third-Party Respondents" refers to entities whose companies and listings were not specifically identified in Schedule A (which merely identified "brands" and ASINs) but whose operations have been shut down due to the TRO.

1

and Fuzhou Mijia Electric Appliance Co., Ltd., d/b/a REVOTIO (collectively, the "Third-Party Respondents") respectfully submit this Motion to Dissolve the Temporary Restraining Order ("TRO"). Pursuant to Local Rule 7.1(d), Defendants respectfully request an expedited ruling as soon as possible, but in any event before December 5, 2025. The TRO was issued *ex parte* without compliance with the mandatory safeguards of Federal Rule of Civil Procedure 65(b), and it has resulted in freezing the Defendants' and Third-Party Respondents' accounts and storefronts at the height of the holiday shopping season—the single most important sales period of the year for their businesses. Every additional day that this procedurally defective TRO remains in place inflicts escalating and irreparable harm to Defendants and Third-Party Respondents. In support of this motion, Defendants and the Third-Party Respondents state as follows:

## I.   INTRODUCTION

On November 14, 2025, Plaintiffs, Sharkninja Operating LLC, and Sharkninja Sales Company (collectively as "Plaintiffs") initiated this litigation against multiple defendants, including the Defendants for patent infringement of the U.S. Patent No. 12,285,028 (the "'028 Patent") and U.S. Patent No. D1,091,236 (the "'236 Design Patent," collectively with the '028 Patent as "Asserted Patents"). Dkt. 1. On November 21, 2025, the Court granted Plaintiffs' Expedited Motion for TRO. Dkt. 26. The TRO freezes the Defendants' and Third-Party Respondents' online storefronts and revenues and effectively shuts down their businesses—without notice and without affording them any opportunity to be heard.

In addition, several non-party sellers (the "Third-Party Respondents") join in this Motion. The Third-Party Respondents are not named as defendants in this action (actually Plaintiffs did not list any business name of the defendants in the Schedule A), they do not appear on Schedule A, and none of their brands or ASINs is identified in Plaintiffs' pleadings or TRO papers. Nevertheless,

online marketplaces have invoked the TRO to freeze their storefronts and funds because of this litigation. The Third-Party Respondents thus seek the same relief as the Defendants: dissolution of the TRO, or at a minimum an order clarifying that the TRO does not apply to them and directing that any restraints imposed on their accounts be lifted.

Such extraordinary *ex parte* relief is permissible, if at all, only when a plaintiff strictly complies with the procedural safeguards set forth in Rule 65(b). Here, Plaintiffs did not. Plaintiffs' counsel never filed the written certification required by Rule 65(b)(1)(B) describing "any efforts made to give notice and the reasons why it should not be required," yet they obtained sweeping *ex parte* relief as though such relief were routine in Schedule A cases. It is not. Rule 65(b)'s requirements are not "mere technicalities" but codify basic due-process protections, and they were disregarded here.

Plaintiffs' failures, moreover, are not limited to procedure. Substantively, Plaintiffs offer no competent evidence of irreparable harm, no causal nexus linking any alleged harm to any allegedly infringing feature of the Asserted Patents, and no defendant-specific showing of likely infringement as to Defendants. In direct contravention of this Court's Omnibus Order Regarding Schedule "A" Causes of Action, Plaintiffs do not "establish entitlement to relief with regard to EACH Defendant," but instead rely on a skeletal Complaint, a generic employee declaration, and blurred screenshots that do not map any Asserted Patent to any specific product sold by these Defendants. Yet on this thin, undifferentiated record, Plaintiffs have obtained not only a business-shutting TRO, but also an asset freeze purportedly justified by a statute—35 U.S.C. § 284—that provides only legal damages and no equitable interest in any funds.

Allowing the TRO to remain in place despite these defects would effectively nullify Rule 65(b), undermine this Court's Omnibus Order, and endorse *ex parte* restraints that depart from

fundamental due-process principles. Because Plaintiffs failed to satisfy the mandatory procedural preconditions for an *ex parte* TRO and have not carried their substantive burden to justify injunctive or asset-freezing relief against these particular Defendants, the TRO should now be dissolved as to Defendants.

## II.     LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Woodard-CM, LLC v. Sunlord Leisure Prods., Inc.*, No. 20-23104-CIV, 2020 WL 5547917, at *1 (S.D. Fla. July 29, 2020) (citing *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005)). Under Rule 65(b), the Court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
>
> Fed. R. Civ. P. 65(b)(1).

""[T]he requirements of Rule 65(b)(1) are not mere technicalities but establish minimum due process. Thus, [t]o obtain *ex parte* relief, a party must strictly comply with these requirements." *Dragados USA, Inc. v. Oldcastle Infrastructure, Inc.*, No. 20-CV-20601, 2020 WL 733037, at *2 (S.D. Fla. Feb. 13, 2020).

4

### III.     ARGUMENTS

**A.  The TRO Should Be Dissolved for Non-compliance of the Rule 65 (b)(1)(B).**

Before addressing whether the four injunctive relief factors have been established, however, the Court must first determine whether Plaintiffs have sufficiently justified their failure to give notice to the Defendants. *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, No. 21-CV-20862, 2021 WL 3618227, at *6 (S.D. Fla. Aug. 16, 2021) (citing *Dragados USA, Inc. v. Oldcastle Infrastructure, Inc*., No. 20-cv-20601, 2020 WL 733037, at *2 (S.D. Fla. Feb. 13, 2020)). In seeking *ex parte* injunctive relief, Plaintiffs must satisfy the requirements of Rule 65(b)(1) regarding the requirement that Plaintiffs' counsel "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." *Id* (citing Fed. R. Civ. P. 65(b)(1)). It is well established in this District that "the requirements of Rule 65(b)(1) are not mere technicalities but establish minimum due process." *Woodard-CM, LLC v. Sunlord Leisure Products, Inc*., No. 20-23104-CIV, 2020 WL 5547917, at *1 (S.D. Fla. July 29, 2020). As such, courts routinely deny requests for TROs based on the failure to comply with the requirements of this rule. *See id*. (denying TRO and preliminary injunction without prejudice because Plaintiff's attorney failed to comply with subsection (b)(1)(B)); *Frumar Agri Foods (P) Ltd. v. RRK Foods Inc*., No. 0:25-CV-61105, 2025 WL 1704777, at *2 (S.D. Fla. June 18, 2025).

In this case, Plaintiffs' Motion for TRO [Dkt. 22] lacked any sort of attorney certification to show "efforts made to give notice and the reasons why it should not be required" as set forth in Rule 65(b)(1)(B). Plaintiff's "failure to provide the information required under Rule 65(b)(1)(B) is fatal to its request for [a temporary restraining order] without notice." Dragados USA, Inc. v. Oldcastle Infrastructure, Inc., No. 20-CV-20601, 2020 WL 733037, at *3 (S.D. Fla. Feb. 13, 2020) (citing *Living v. Merscorp Inc*., No. 1:10-CV-3410-JEC-JFK, 2010 WL 11552958, at *3 (N.D. Ga.

Oct. 26, 2010), report and recommendation adopted, No. 1:10-CV-3410-JEC, 2010 WL 11553003 (N.D. Ga. Dec. 17, 2010))

Further, Plaintiffs' attorney's arguments in the motion are insufficient, as Rule 65(b)(1)(B) requires an express certification in compliance with the rule. *Fokiss, Inc. v. TLM Glob., LLC*, No. 24-CV-14096, 2024 WL 1825214, at *2 (S.D. Fla. Apr. 23, 2024), report and recommendation adopted in part, No. 24-CV-14096-KMM, 2024 WL 1833912 (S.D. Fla. Apr. 26, 2024); *iCore Midco Inc. v. PIGI Sols., LLC*, No. 6:25-CV-600-JSS-LHP, 2025 WL 1069306, at *1 (M.D. Fla. Apr. 9, 2025); *Kazal v. Price*, No. 8:17–cv–2945–T–23AAS, 2017 WL 6270086, at *4 (M.D. Fla. Dec. 8, 2017) (denying the plaintiffs' motion for an *ex parte* temporary restraining order when the "plaintiffs' attorneys fail[ed] to submit an affidavit certifying an effort to notify [the defendant] about the motion and fail[ed] to explain the necessity for an *ex parte* order"); *see also Glob. HTM Promotional Grp., Inc. v. Angel Music Grp., LLC*, No. 06-20441-CIV-COOKE/Brown, 2006 WL 8432722, at *1 (S.D. Fla. Mar. 1, 2006) (explaining that "[t]he normal reason for proceeding without notice is that the opposing side is unable to be found[,] or the identity of the opposing side is unknown"); *Garcia v. Truist Bank*, No. 8:23-CV-2666-VMC-AEP, 2023 WL 9062995, at *2 (M.D. Fla. Nov. 25, 2023) (denying the motion for TRO because Plaintiffs' counsel has not filed a separate certification as required under Rule 65(b)(1)(B)).

Indeed, an *ex parte* TRO is viewed as an extreme remedy "to be used only with the utmost caution," *Levine v. Camcoa Ltd.*, 70 F.3d 1191, 1194 (11th Cir. 1995) (Hill, C.J., concurring), and "very few circumstances" justify granting such relief, *Emerging Vision, Inc. v. Glachman*, No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010), report and recommendation adopted, 2010 WL 3293351 (S.D. Fla. Aug. 11, 2010). "This stringent scrutiny 'is particularly warranted ... where the Defendants are unaware that judicial proceedings have been commenced and the relief

6

[Plaintiffs] request is drastic.'" *Glachman*, 2010 WL 3293346, at *4. As the United States Supreme Court has explained, the circumstances justifying the issuance of an *ex parte* TRO are extremely limited. *Granny Goose Foods. Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438-39 (1974).

Therefore, in light of Plaintiffs' failure to comply with the statutory requirements of the Rule 65(b)(1)(B), the TRO should be dissolved.

### B. Plaintiffs Have Not Established the Irreparable Harm.

"A showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 465 (M.D. Fla. 2022) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)); *Fink v. Acra-Local 725 Pension Plan*, No. No. 06-61908, 2006 WL 3792090, at *2 (S.D. Fla. Dec. 21, 2006) (denying TRO). A movant's failure to show "a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id*. A showing of irreparable injury must be "neither remote nor speculative, but actual and imminent." *Id*. (citing *Northeast Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quotation omitted)). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Id*. The Supreme Court also held that injunction does not automatically follow the determination of infringement, and that courts should continue to employ equitable principles rather than categorical rules when considering whether an injunction should issue and whether irreparable harm will be suffered in the absence of an injunction. *eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 390 (2006).

### 1. Plaintiffs Failed to Prove the Irreparable Harm

"As its name implies, the irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (citing *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1010 (Fed.

Cir. 2009)). The moving party "must demonstrate the threat of irreparable harm by independent proof, or no injunction may issue." *Nivel Parts & Mfg. Co., LLC v. Textron, Inc.*, 2017 WL 1552034, at *1 (M.D. Fla. 2017) (citation omitted). "'Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.'" *Id*. (citation omitted). Ultimately, to obtain injunctive relief the moving party must show that irreparable harm is likely. *Id*.

Here, Plaintiffs fail to present a single piece of evidence to substantiate these claims beyond its own self-serving declaration. It is well-established that "[t]hough true that 'price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm,' the patentee must provide more than mere speculation from which the Court may make such a finding." *InVue Sec. Prods. Inc. v. Vanguard Prods. Grp., Inc.*, 2019 WL 4671143, at *5 (M.D. Fla. 2019) (citing *Nivel Parts & Mfg. Co.*, 2017 WL 1552034 at *2). "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Id*. A moving party must provide independent proof of irreparable harm. *Id*.

Similar to the evidence presented in *InVue Sec. Prods. Inc*, the only evidence submitted by Plaintiffs is the declaration of their employee, which consists of conclusory statements and lacks evidentiary support. *Id*. Many courts have declined to grant preliminary injunctions with similarly sparse evidentiary support in the record. *Id*; *Automated Merch. Sys. v. Crane Co*., 357 F. App'x 297, 301 (Fed. Cir. 2009) (vacating preliminary injunction due in part to "lack of evidence supporting any type of harm that would not be compensable through monetary damages"); *Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, 2015 WL 9876952, at *6 (E.D. Tex. 2015) ("This Court has nothing more than Mr. Williams and Mr. Millet's statements that, but for Pruvit's KETO//OS, Defendants would be enjoying market exclusivity; neither of which substantiates that Defendants have actually lost ketosis supplement market share due to Pruvit's KETO//OS and/or what

percentage of share has been lost."); *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 533 (D. Md. 2010) ("Here, the lone affidavit of MTH's founder and owner, Michael Wolf, which asserts imprecise and exaggerated potential losses, does not establish irreparable harm.") Since Plaintiffs have not presented any competent evidence, they fail to show the alleged irreparable harm of lost sales or market share; at most, they have demonstrated a claim for compensable money damages, which is the opposite of irreparable harm. *Automated Merch. Sys.*, 357 F. App'x at 301 ("[L]ost market share must be proven (or at least substantiated with some evidence)").

### 2. Plaintiffs Failed to Establish the Causal Nexus.

A plaintiff must "show that the infringing feature drives consumer demand for the accused product." *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1375 (Fed. Cir. 2012). Here, Plaintiffs "point[ ] to no customer surveys, market evidence, or admissions from [Defendants] regarding the relationship of [features covered by the Asserted Patent] to customer demand." *Finjan, Inc. v. Blue Coat Sys., LLC*, No. 15-CV-03295-BLF, 2016 WL 6873541, at *8 (N.D. Cal. Nov. 22, 2016). Plaintiffs do not offer a single piece of evidence—much less a developed argument—showing any causal nexus between the alleged harm and the alleged infringement. Accordingly, Plaintiffs have failed to satisfy the causal nexus requirement, and their allegations of irreparable harm necessarily fail. *Id.* This failure is compounded by the fact that Plaintiffs have sued numerous defendants for the same purported harm without identifying which defendant is responsible for which alleged injury.

### C. The TRO Should Be Dissolved for Failure to Establish Entitlement to Relief with Regard to EACH Defendant.

A preliminary injunction is a drastic and extraordinary remedy which should not be granted unless the movant can clearly establish each of the four elements. *America's Health Ins. Plans v.*

9

*Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014). Mandatory preliminary injunctions—those "requiring an affirmative act by the defendant"—are "ordinarily cautiously viewed and sparingly issued." *Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). If the accused infringer "raises a substantial question concerning either infringement or validity," then the patentee has not established that it is likely to succeed on the merits. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1381-85, (Fed. Cir. 2009).

In its Omnibus Order Regarding Schedule "A" Causes of Action, this Court could not have been clearer: any motion for a temporary restraining order or preliminary injunction "must … establish entitlement to relief with regard to **<u>EACH</u>** Defendant." Dkt. 8, p. 2 (citing *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)) (emphasis in original). Plaintiffs simply did not do that. They never even attempt to show, with defendant-specific facts, that Defendants' particular products meet every limitation of any asserted claim. Instead, they treat more than a hundred products as an undifferentiated mass and ask the Court to assume infringement across the board. That is precisely what the Omnibus Order forbids.

Without providing a detailed claims chart in support of their Motion for TRO, Plaintiffs simply sit on the Complaint and their employees' declaration to show the likelihood of success. Dkt. 22, pp. 9-11. The Complaint itself underscores how thin Plaintiffs' infringement showing is. For the utility patent, Plaintiffs offer only a token "example" of alleged infringement. Paragraph 69 of the Complaint contains a barebones chart with three small images and a single label, "side baffle." Dkt. 1, ¶69. Plaintiffs say nothing at all about the other limitations of claim 1, and they never explain which structures in the accused product supposedly satisfy those limitations. A chart that points to a "side baffle" and then goes silent on every other element of the claim is not an

infringement analysis; it is a placeholder. It does not come close to demonstrating that any Defendants' product meets every limitation of claim 1, as Plaintiffs must. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915 (2014) (To infringe a patent claim, each and every element of the claim must be practiced by the infringer). Paragraph 75 of the Complaint is no better: the comparison there is so generic that one cannot even tell which defendant's product is being used, much less whether it actually corresponds to any Defendants' listing. *Id.*, ¶75. These are symbolic illustrations, not defendant-specific proof.

Plaintiffs' TRO papers are even more deficient. Rather than cure the gaps in the Complaint, the TRO motion simply recycles the same generalized rhetoric about "Infringing Products" and "Defendants" in the aggregate, without a single claim-by-claim, product-by-product showing for Defendants. Plaintiffs do not provide a claim chart for the Defendants. They do not walk through the asserted utility claim, limitation by limitation, against any accused product sold by these Defendants. Instead, they attempt to paper over that omission by relying on a declaration from their own employee, Ms. Lessing. But an internal, self-serving employee declaration cannot substitute for the rigorous, element-by-element analysis that Rule 65 and this Court's Omnibus Order require.

Nor do Plaintiffs' exhibits supply what the declaration lacks. Exhibit 3 to the Lessing Declaration is described as containing "side-by-side comparisons," but in reality it consists of blurred screen captures and order confirmations that do not clearly show what the Defendants' products actually look like, let alone how they allegedly map onto each claim element. Dkt. 22-4. There are no true side-by-side images where the Court can see both the asserted patent and the specific accused product of Defendants. For the utility patent in particular, Plaintiffs go one step further and simply rely on the same skeletal chart from the Complaint, without any additional

11

explanation or technical support. That is not a "clear showing" of likely infringement; it is an invitation to take Plaintiffs' word for it.

In short, Plaintiffs have offered, at most, a handful of generic illustrations and a conclusory employee declaration, none of which ties the Asserted Patents to the actual products sold by Defendants or demonstrates that those products satisfy every limitation of any asserted claim. That falls far short of "establish[ing] entitlement to relief with regard to each Defendant" as this Court expressly requires. On this record, Plaintiffs have not carried their burden to show a substantial likelihood of success on the merits as to the Defendants, and the TRO should be dissolved as to them.

### D. Plaintiffs Are Not Entitled to An Asset Restraint under 35 U.S.C. § 284.

The Supreme Court has held that district courts lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages. *Grupo Mexicano de Dessarrolo v. Alliance Bond Fund*, 527 U.S. 308, 333 (1999). "A District Court can [also] order an asset freeze as part of [ ] injunctive relief only with respect to assets in which an equitable interest is claimed and established." *Textron Fin. Corp. v. Unique Marine, Inc*., No. 08-10082-CIV, 2008 WL 4716965, at *5 (S.D. Fla. Oct. 22, 2008) (citing *Grupo Mexicano*, 527 U.S. 308, 318-333).

Here, Plaintiffs requested the Court to restrain Defendants' assets pursuant to the 35 U.S.C. § 284. *See* Dkt. 22, p. 19. Plaintiffs argue that "[w]hen a complaint seeks relief authorized by statute, including monetary relief under the Patent Act (35 U.S.C. § 284), courts may exercise their equitable powers to restrain the transfer of assets pending adjudication…" *Id*. However, 35 U.S.C. § 284, allows only for an award of "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together

with interest and costs as fixed by the court." *Telebrands Corp. v. Guangzhou Alpaca Home Furnishing Co.*, No. 25-CV-3646 (JAV), 2025 WL 1591970, at *8 (S.D.N.Y. June 5, 2025). It is settled law since 1946 that the 35 U.S.C. § 284 only provides statutory damages, which are a remedy at law, not a remedy in equity. *Zorro Prods., Inc. v. Individuals*, No. 23-CV-5761, 2023 WL 8807254, at *4 (N.D. Ill. Dec. 20, 2023); *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 807 F.3d 1311, 1326 (Fed. Cir. 2015)(en banc), *rev'd on other grounds*, 137 S. Ct. 954 (2017) ("Finally, in the Patent Act of 1946, Congress eliminated accounting of profits as a remedy for patent infringement (except for design patents)"); *Robert Bosch.*, 719 F.3d at 1310 n.1 ("An infringer's profits are, of course, no longer an available remedy for the infringement of a utility patent."); *Apple, Inc. v. Samsung Elecs. Co.*, 926 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013) ("[I]nfringer's profits are not a permissible remedy for utility patent infringement.") Other Courts have also ruled that in utility patent infringement cases, the court has no authority to order the freeze of assets under Rule 65. *Telebrands Corp*, 2025 WL 1591970, at *7; *Zorro Prods*, 2023 WL 8807254, at *4.

Plaintiff relies on several non-binding cases that lack relevance and precedential value in the context of this patent dispute. For instance, *SEC v. ETS Payphones*, 408 F.3d 727, 731 (11th Cir. 2005), have no connection to patent law and are therefore inapplicable. In, *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 707 (5th Cir. 2007), plaintiff only asserted trademark infringement.

Further, Plaintiff relies on "sweeping statements about the practices of foreign corporations and [Defendants] in general [that] are unsupported by evidence and, more importantly, do not speak to the question of whether [Defendants], the specific [companies] whose liability for [infringement] is merely alleged, not established, is likely to dissipate assets." *Spin Master v.*

13

*Aciper*, No. 19-CV-6949 (VSB), 2020 WL 6482878, at *5 (S.D.N.Y. 2020); (rejecting "unsupported" allegations against Chinese companies in general, and noting plaintiff's failure to show that the defendant "is likely to dissipate assets" when it "retained counsel and appeared in this action"); *Awareness Ave. Jewelry v. The Partnerships, et al.*, No. 23-cv-2-TPB, 2023 WL 3568387 (M.D. Fla. May 19, 2023), at *2 (premise underlying basis for asset freeze rebutted after funds and sales data produced and defendants "appeared by counsel in this lawsuit to respond to the complaint"); *Middleton Mixology LLC v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 24 12287, 2025 WL 2693857, at *4 (N.D. Ill. Sept. 22, 2025) (finding no irreparable harm when plaintiff claims that because defendant is based in China that it is unlikely to have any assets in the United States without coloring its claims).

"Plaintiffs provide no legal authority for their argument that the harsh remedy of an asset freeze would be justified by the mere fact that a corporation is Chinese and uses a cross-border payment processing service." *Id*. Additionally, Defendant have "retained counsel and appeared in this action, and took prompt action" to rebut the infringement claims. *Id*. Plaintiff has pointed to "no conduct by [Defendants] that would suggest it intends to frustrate a potential judgment against it." *Id*. Plaintiffs' unfounded allegations regarding Defendants' operations amount to nothing more than boilerplate rhetoric routinely deployed in Schedule A cases—unsupported by fact and intended solely to manufacture a false narrative of irreparable harm. "Implementing Plaintiff's theory would chill the huge volume of business conducted by foreign corporations with customers and corporations in the United States." *Id*.

Under *Grupo Mexicano* and its progeny, a plaintiff seeking purely legal damages under § 284 has no equitable lien on a defendant's assets and no basis for a Rule 65 asset freeze. Therefore, Plaintiff is not entitled to an asset restraint.

## IV. CONCLUSION

For the reasons set forth above, the Defendants respectfully request that the Court dissolve the TRO.

### Local Rule 7.1(a)(3) Certification

In accordance with Local Rule 7.1(a)(3), Wei Wang, Esq. made reasonable efforts to confer with counsel for Plaintiffs by written correspondence on or about December 1, 2025, concerning this Motion and the TRO, and they advised that they opposed the Motion and the relief sought herein.

Respectfully submitted,

*/s/      Wei Wang*

Wei Wang, Esq.
GLACIER LAW LLP
41 Madison Avenue, Suite 2529
New York, NY 10010
wei.wang@glacier.law

*Counsel for Defendants and Third-Party Respondents Identified Above (Pro Hac Vice application forthcoming)*

Respectfully submitted,

*/s/      Mitchell Abood*
Mitchell Abood, Esq.
PECKAR & ABRAMSON, P.C.
One Southeast Third Avenue
Suite 2000
Miami, Florida 33131
PH: 305-358-2600
Florida Bar No. 1039192
mabood@pecklaw.com
*Counsel for Defendants and Third-Party Respondents Identified Above*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 1, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court for entry into the Court's CM/ECF case management system, which will serve a notice of electronic filing to all counsel of record, including the following:

/s/ *Mitchell Abood*
Mitchell Abood, Esq.
Florida Bar No. 1039192
*Counsel for Defendants and Third-Party Respondents Identified Above*