IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 25-cv-25323

**SharkNinja Operating LLC et al**

    Plaintiffs,

v.

**The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified on Schedule A**

    Defendants.

_____/

### DEFENDNTS' AND THIRD-PARTY RESPONDENTS' EXPEDITED MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND DENY PRELIMINARY INJUNCTION

Defendants IceSwirls, Tefoqu, Wongic, Dutepa, Auriswell (on Amazon), Auriswell (on Walmart), and Kelteroom (collectively the "Defendants"), and Third-Party Respondents[1] Grano Chef, oplace, POFABIK, BLIZZEE, NLNYA, and Nyzgax (collectively the "Third-Party Respondents") respectfully submit this Motion to Dissolve the Temporary Restraining Order ("TRO") and Deny Preliminary Injunction.

Pursuant to Local Rule 7.1(d), Defendants and Third-Party Respondents respectfully request an expedited ruling as soon as possible, but in any event no later than the scheduled December 5 hearing. In support of this motion, Defendants and Third-Party Respondents state as follows:

---

[1] "Third-Party Respondents" refers to entities whose companies and listings were not specifically identified in Schedule A (which merely identified "brands" and ASINs) but whose operations have been shut down due to the TRO in the above titled case.

**I.      INTRODUCTION**

On November 14, 2025, Plaintiffs SharkNinja Operating LLC and SharkNinja Sales Company ("Plaintiffs") commenced this action asserting claims of utility and design patent infringement relating to U.S. Patent No. 12,285,028 (the '028 Patent) and U.S. Patent No. D1,091,236 (the '236 Design Patent) (collectively, the "Asserted Patents"). [ECF No. 1]. On November 21, 2025, Plaintiffs obtained an ex parte Temporary Restraining Order ("TRO") that freezes Defendants' online storefronts and revenues and has effectively shut down their businesses. [ECF No. 26].

On December 1, 2025, the Court entered an Order Setting Hearing on Plaintiffs' Motion for Entry of Preliminary Injunction. [ECF No. 39]. That Order sets a telephonic hearing on December 5, 2025, and expressly authorizes "Defendants and/or any other affected persons to challenge the appropriateness of the Temporary Restraining Order and move to dissolve the same." *Id.* The Court further ordered that any response or opposition to the preliminary injunction motion be filed forty-eight (48) hours prior to the hearing. *Id.*

In light of this deadline and pursuant to Local Rule 7.1(d)(2), Defendants and Third-Party Respondents respectfully submit this Expedited Motion and request a ruling on or before December 5, 2025, the date of the hearing. Federal Rule of Civil Procedure 65(b)(4) provides that, "[o]n 2 days' notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order," and the Court must resolve such a motion "as promptly as justice requires." The December 5 hearing is the forum expressly designated by this Court to address challenges to the TRO and whether it should be dissolved. Expedited treatment is thus warranted.

Several similarly situated non-party sellers (the "Third-Party Respondents") join in this Motion as well. These sellers do not appear on Schedule A, are not named defendants in the

Complaint, and none of their storefronts, listings, brands, or ASINs appears anywhere in Plaintiffs' pleadings, TRO papers, or supporting declarations. Nonetheless, Amazon and other e-commerce platforms have invoked the TRO to restrain their storefronts and funds solely as a collateral consequence of this litigation. The Third-Party Respondents therefore seek the same relief as the appearing Defendants: dissolution of the TRO, or at minimum issue an order compelling Plaintiffs to clarify that the TRO does not extend to non-parties and directing the release of all restraints imposed upon their accounts.

Ex parte restraints freezing business operations and revenues are "extraordinary" measures and are permitted, if at all, only upon strict compliance with Rule 65(b) and a clear evidentiary showing on each element required for preliminary injunctive relief. Plaintiffs' TRO application did neither. The record presented to the Court contained no defendant-specific infringement allegations, no limitation-by-limitation analysis for the '028 Patent, no ordinary-observer analysis for the '236 Design Patent (**a collection tray design**, while the accused products are slushy machines), and no factual basis demonstrating irreparable harm or entitlement to equitable asset restraint under 35 U.S.C. § 284. The showing is particularly deficient as to the Third-Party Respondents, who and whose products are not identified anywhere in Plaintiffs' filings. The strategic timing of TRO application, right before Black Friday, also suggests abuse of the ex parte TRO mechanism.

Because Plaintiffs failed to satisfy the procedural and substantive standards governing ex parte preliminary injunctive relief, Defendants and Third-Party Respondents respectfully request that the TRO be dissolved (and clarified as not applicable to non-party sellers), PI denied, and that online platforms be directed to lift any restraints imposed under the TRO as to these movants.

**Defendants intend to separately file a regular (non-expedited) motion to dismiss on grounds including, without limitation, insufficient service of process under Rule 12(b)(5). By**

**filing this expedited motion to dissolve the temporary restraining order, Defendants do not waive, and expressly preserve, all defenses and objections, including all defenses available under Rule 12 and any other applicable rule or statute.**

## II. LEGAL STANDARD

The standard for a temporary restraining order is the same as for a preliminary injunction. *United States v. Metro. Dade County, Fla.*, 815 F. Supp. 1475, 1477 (S.D.Fla.1993) (Highsmith, J.). "To justify a preliminary injunction, the plaintiff must plainly establish four preconditions: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a showing that plaintiff will suffer irreparable injury if an injunction does not issue, (3) proof that the threatened injury to plaintiff outweighs any harm that might result to the defendants, and (4) a showing that the public interest will not be disserved by grant of a preliminary injunction." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant 'clearly carries the burden of persuasion' as to the four prerequisites. 'The burden of persuasion in all of the four requirements is at all times upon the plaintiff.'" *Id.* at 1285 (quoting *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) and *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)). "Because Wreal must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms its appeal." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). And "Wreal's unexplained five-month delay in seeking a preliminary injunction, by itself, fatally undermined any showing of irreparable injury." *Id.* at 1248–49.

"On 2 days' notice . . . or on shorter notice set by the court—the adverse party may appear

and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires." Fed. R. Civ. P. 65(b)(4).

## III. PLAINTIFF FAILED TO COMPLY WITH THE COURT'S OMNIBUS ORDER [ECF NO. 8]

### A. Plaintiff Failed to Justify Alternative Service

#### 1. Plaintiff Failed to Justify Why Defendants' Readily-Available, Platform-Verified Addresses Cannot Be Used For Service

On November 18, 2025, the Court ordered that, "A motion for alternate service will not be granted where a plaintiff does not provide evidence or affidavits to show what efforts Plaintiff has undertaken to determine whether the addresses it has on file for EACH Defendant are actually associated with EACH Defendant." [ECF No. 8 at 1(e)]. Plaintiff's Response [ECF No. 30-4] is inaccurate and seems to deliberately avoid the obvious: the addresses displayed on seller pages.

A plaintiff cannot close its eyes to the obvious to avoid the Hague Service Convention; the plaintiff must make reasonably diligent efforts to learn the defendant's mailing address. *See, e.g.*, *Advanced Access Content Sys. Licensing Admin., LLC v. Shen*, 2018 WL 4757939, at *4–5 (S.D.N.Y. Sept. 30, 2018); *Progressive Se. Ins. Co. v. J & P Transp.*, 2011 WL 2672565, at *3 (N.D. Ind. July 8, 2011) (citing *Opella v. Rullan*, 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011)). *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 822 (N.D. Ill. 2019). A generalized suspicion about an address's validity does not make it "unknown" under the Hague Service Convention. *Luxottica Grp. S.p.A.* at 823. Once a plaintiff learns of a defendant's purported mailing address, courts require specific proof of a "reasonable investigation" of the address's validity before finding that it is "unknown" under Article 1. *Advanced Access*, 2018 WL 4757939, at *5 (citations omitted); *see also Shenzhen*

*Ruobilin Network Tech., Ltd. v. SJG-Lesn*, 2016 WL 6988868, at *1 (W.D. Wis. Nov. 29, 2016). *Luxottica Grp. S.p.A.* at 823-24. By way of contrast, a Chinese address has been found to be unknown where the plaintiff hired an investigator in China to determine whether physical addresses associated with domain names were valid and found them to be not so. *Chanel, Inc. v. Song Xu*, 2010 WL 396357, at *1, *3 (W.D. Tenn. Jan. 27, 2010).

Every single Defendant and Third-Party Respondent the undersigned counsel represents in this case, whether they are Amazon sellers or Walmart sellers, displays their genuine, valid business address on their seller page, and these addresses can be used for service. *See* **Exhibit 1**, Publicly Displayed Addresses. However, Plaintiffs did not even attempted service on or reasonably verify the accuracy of these addresses.

Both Amazon and Walmart reliably verify the accuracy of such addresses.[2] For example, Amazon has a reliable address verification policy for business sellers. It requires sellers to provide official documents such as bank or credit card statements, certified bank letters, utility bills, rental agreements, tax identity documents, or business licenses. To ensure authenticity, these documents must: (1) Be issued within the last 180 days with clear dates, (2) Display details from a recognized financial institution (e.g., bank name, stamp, signature, or logo), and (3) Include the seller's name and address. This comprehensive process ensures that sellers' business addresses are verified through legitimate and traceable sources. *See* **Exhibit 2**, Amazon Address Verification Policy.

---

2  Amazon's Address Verification Policy is available at
https://sellercentral.amazon.com/help/hub/reference/external/G2CVLYZXQRXQAMAL?locale=en-US;
Walmart's address verification information can be found at
https://marketplacelearn.walmart.com/guides/Policies%20&%20standards/Account/Business-information-policy ("All third-party Marketplace sellers who have made $5,000 or more in gross revenue and have sold 200 or more new or unused consumer products on Walmart Marketplace, must certify their business information annually." "It may take seven to 10 business days for Walmart to verify your business information.")

Accordingly, Plaintiff fails to provide any satisfactory explanation for why Defendants' (and Third-Party Respondents') readily available, Platform-verified business addresses cannot be used for service of process.

### 2. Alternative Service of Process by Email and Web Publication is Improper and Insufficient on Defendants, Who are Chinese corporations

Defendants (and most of the Third Party Respondents) are Chinese corporations, and Plaintiff also alleges so in ECF No. 30-4. Thus, Plaintiff's email service fails to comply with Fed. R. Civ. P. 4(f)(3), because it is prohibited by international agreement. Precedents of many nationwide federal courts, such as *Luxottica Grp. SpA. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816 (N.D. Ill. 2019), *Smart Study Co., Ltd. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1397 (S.D.N.Y. 2022), *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 987 (N.D. Cal. 2020), has held that serving by email on litigants in China is prohibited by Hague Convention and thus improper under Rule 4(f)(3). This is also the case here.

Both the United States and China are signatories to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Convention"). **The Hague Convention has the force of federal law, and limits available methods of service under Fed. R. Civ. P. 4(f)(3).** *Water Splash Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) ("The Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies.") (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) (noting that "compliance with the Convention is mandatory in all cases to which it applies.")); *see also Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004); *Ackermann v. Levine*, 788 F.2d 830, 838

(2nd Cir. 1986). The Hague Convention applies where, as here, both the origination and destination states of the documents at issue are contracting states to the Convention.

The Hague Convention permits service only by the following means: via a central authority (Articles 2-7), diplomatic and consular agents (Articles 8-9), mail or through a judicial official of the State of destination if the destination State does not object (Article 10), methods allowed by other applicable international agreement (Article 11), and other means as allowed by the internal laws of the destination State (Article 19). *See Water Splash Inc.*, 137 S. Ct. at 1508 (reviewing permitted service methods). "The legal sufficiency of a formal delivery of documents must be measured against some standard. The Convention does not prescribe a standard, so we almost necessarily must refer to the internal law of the forum state." *Schlunk*, 486 U.S. at 700. **China formally objects to all methods of service identified under Article 10.**[3] Email is arguably a "postal channel" within the meaning of Article 10(a) of The Hague Convention, and more importantly, **China expressly objects service by email**. According to China's Ministry of Justice's website, China's Article 10 objection expressly includes service by email.[4] *See* **Exhibit 3**, China's Ministry of Justice's website; **Exhibit 4**, China's Ministry of Justice's website with Google Chrome browser translation.

The other parts of Hague Convention do not enable service by website publication and service by e-mail at this moment. These service methods are not permitted under Article 19, because China's internal laws prohibit serving process by e-mail without a defendant's consent and prohibit service by website publication unless a plaintiff has exhausted other means of service. *See* Art. 90 & Art. 95, Civil Procedural Law of the People's Republic of China (2023 Am.) ("P.R.C. Civil

---

[3] https://www.hcch.net/en/states/authorities/details3/?aid=243
[4] https://www.moj.gov.cn/pub/sfbgw/jgsz/jgszzsdw/zsdwsfxzjlzx/sfxzjlzxxwdt/202503/t20250324_51620 4.html

Procedure Law"). *See also Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019); *Smart Study Co., Ltd. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1397 (S.D.N.Y. 2022). Further, under Article 294 of the P.R.C. Civil Procedure Law, "no foreign [non-P.R.C.] agency or individual may serve documents . . . within the territory of the People's Republic of China without the consent of the in-charge authorities of the People's Republic of China." *Id.* at Art. 294 (emphasis added); R*ockefeller Tech. Investments (Asia) VII v. Changzhou Sinotype Tech. Co., Ltd.*, 233 Cal. Rptr. 3d 814, 826 (Ct. App. 2018) (quoting the same Article under its prerevision numbering [Article 261] with approval and taking judicial notice of the Article).

Because Plaintiffs' method of service is prohibited by the Hague Convention, it is insufficient under Fed. R. Civ. P. 4(f)(3) and 12(b)(5).

**B. Plaintiff's Infringement Accusations Are Group-Based, Not Defendant-Specific, and Fail the Court's Omnibus Order**

Plaintiff's generic infringement assertions are vaguely directed at all Schedule A defendants, not specific to the appearing Defendants. The motion repeatedly refers to "each Defendant," "each Infringing Product," and "Seventy-four of the products," without ever identifying which specific listings, features, or photographs correspond to Defendants' products.

This approach directly conflicts with the Court's Omnibus Order, which requires Schedule A plaintiffs to present individualized entitlement-to-relief showings to each defendant, rather than generic allegations applied to a group. [ECF No. 8 at 1(d)]. Yet, no defendant-specific claim analysis was presented in Plaintiff's TRO record.

**IV.   PLAINTIFF HAS NOT SHOWN A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**

Plaintiff has not made the required individualized showing that Defendants' products infringes either Asserted Patent. Although Plaintiff's Motion for TRO [ECF No. 22] asserts that it is "likely to succeed" on its infringement claims, the TRO papers contain no limitation-by-limitation analysis for the '028 Patent, no ordinary-observer comparison for the '236 Design Patent, and no defendant-specific evidentiary showing directed at Defendants' accused listing. At most, Plaintiff has cited the statutory presumption of validity and recited generalized infringement theories applied to over one hundred different sellers at once. That is insufficient to carry its burden.

**A. Claim 1 of the '028 Patent is likely invalid in light of prior art, including but not limited to EP3305090B1**

Here, Claim 1 of the '028 patent is likely invalid as obvious under 35 U.S.C. § 103 over, including but not limited to, European Patent No. EP3305090B1 (the "EP '090 Patent"), which predates the '028 Patent's filing date. **Exhibit 5,** EP3305090B1. As shown in the attached claim chart (Exhibit 3), every element of '028 Claim 1 is disclosed by or an obvious variant of the EP '090 teachings, per the *Graham* factors. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). *See* **Exhibit 6,** Claim 1 Analysis.

The EP '090 Patent, granted April 8, 2020, discloses a machine for liquid or semi-liquid products like granitas, with a processing container featuring an asymmetric, radially protruding longitudinal portion (2A) for recirculation to promote uniform slush flow and prevent accumulation. (EP '090 Spec. [0021]-[0025], [0028]; Figs. 1-2, 9-10). This addresses slush stagnation in frozen beverage machines, teaching asymmetry for flow optimization.

The '028 Patent, issued April 29, 2025, claims a mixing vessel with an asymmetric wall portion (side baffle) to redirect slush from sides to center. Exhibit 3 maps these elements to the EP '090: the vessel chamber aligns with container (2)/chamber (3); asymmetry and flow promotion

match portion (2A)'s recirculation zone; the side baffle is an obvious inward adaptation of (2A)'s outward channel. Differences are minor design choices for compact vessels. A person of ordinary skill (mechanical engineer in food processing) would modify the EP '090's asymmetry for inward baffles to center flow in shorter units, motivated by uniform slush processing. (EP '090 Spec. [0023]-[0025]). No secondary indicia rebut obviousness. Thus '028 Patent Claim 1 is likely invalid.

### B. The Presumption of Validity Does Not Establish Likelihood of Infringement

Plaintiff relies heavily on cases such as *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190 (Fed. Cir. 2017), and *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372 (Fed. Cir. 2009), for the proposition that the Asserted Patents are presumed valid and therefore "likely" to withstand challenge. **But the presumption of validity under 35 U.S.C. § 282 does not substitute for evidence of infringement, nor does it establish likelihood of success on the merits.** The Federal Circuit is clear that to prove a likelihood of success on the merits, a patentee must prove that success in establishing infringement is "more likely than not." *Trebro Mfg., Inc. v. FireFly Equip.*, LLC, 748 F.3d 1159, 1166 (Fed. Cir. 2014). (Citing *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525–26 (Fed.Cir.2012). Plaintiff's validity-only arguments simply do not satisfy the substantive requirement that it make a prima facie infringement showing as to this Defendant's product. None appears in the TRO record.

### C. Plaintiff Submitted No Limitation-by-Limitation Infringement Analysis for the '028 Utility Patent

For the '028 Patent, Plaintiff's motion does not present a claim chart, element mapping, or any structured comparison showing that Defendants' products practices every limitation of any asserted claim. Instead, Plaintiff asserts in conclusory fashion that "Seventy-four of the products" infringe "at least Claim 1" because they "include the claimed asymmetric wall portion and side

baffle." [ECF No. 22 at 10-11]. But Plaintiff provides no chart, no annotated photographs, no construction of claim terms, and no analysis tying the alleged structural elements to Defendant's accused listing.

Federal Circuit law requires that infringement be proven on a limitation-by-limitation basis. See *Trebro Mfg., Inc.*, 748 F.3d at 1166. As the Federal Circuit has repeatedly held, "to prove an accused product literally infringes the patent in suit, the product must contain each and every limitation of the asserted claim(s)." *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1348 (Fed. Cir. 2013). Without an element-by-element comparison demonstrating that Defendants' accused products meets all limitations of at least one asserted claim, Plaintiff cannot establish likely infringement and therefore cannot satisfy this prong of the TRO standard.

**D. Plaintiff Did Not Conduct the Ordinary-Observer Analysis Required for the '236 Design Patent, Nor Provide Defendant-Specific Visual Comparison**

Plaintiff cites *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008), to recite the ordinary-observer standard for design infringement, and asserts that "side-by-side comparisons in Exhibit 3" show the accused products to be substantially similar. But the TRO record contains no ordinary-observer analysis directed at Defendants' products specifically. There are no side-by-side depictions of Defendants' listings versus the '236 Design Patent drawings, no discussion of overall visual impression, and no identification of ornamental features distinguishing the patented design from the prior art.

"Substantial similarity" under *Egyptian Goddess* is not established by attorney argument, screenshots of similar-looking products, or conclusory declarations. The Federal Circuit requires a comparison between the patented design and the accused product, focusing on the design as a whole. *Egyptian Goddess*, 543 F.3d at 675. Plaintiff did not perform that analysis for this Defendant.

**E. The Valid Scope of the '236 Design Patent, If Any, Is Too Narrow to Cover the Accused Products Because Its Features Are Primarily Functional**

"Invalidity due to functionality is an affirmative defense to design patent infringement." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). A design that is essential to the use of the article, or dictated by its function, **cannot** be the subject of a design patent. *Id.*

Collection trays are ubiquitous in the food and beverage industry, including in ice cream machines and coffee machines. For example, Chinese Patent CN219047235U discloses a similar collection tray configuration. *See* **Exhibit 7**, Chinese Patent CN219047235U. Moreover, many features of a collection tray—such as its size relative to the machine footprint, depth, the presence and arrangement of drainage holes, and alignment structures that allow it to slide in and out—are primarily functional.

Accordingly, to the extent the '236 Design Patent's claimed design is functional, any valid scope is necessarily narrow. The infringement analysis must therefore be confined to whatever truly ornamental aspects, if any, remain—and the patentee must show that those limited ornamental features are substantially the same as those of the accused products.

**V.     PLAINTIFF HAS NOT SHOWN IRREPARABLE HARM**

Plaintiff has also failed to establish irreparable harm, independently requiring dissolution of the TRO as applied to this Defendant. To obtain injunctive relief, Plaintiff must demonstrate that it is likely to suffer an injury "that cannot be undone through monetary remedies." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Speculative assertions and conclusory allegations are insufficient. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiff's showing here falls far short of that standard.

**A. Plaintiff Alleges Only Compensable Monetary Harms Under 35 U.S.C. § 284**

Plaintiff's TRO motion identifies injuries such as brand-equity depletion, loss of market share, price erosion, and lost sales. [ECF No. 22 at 11]. These are classic economic harms and are fully compensable under 35 U.S.C. § 284. Courts consistently hold that such monetary injuries, even if significant, cannot constitute irreparable harm. See *Siegel*, 234 F.3d at 1176. Plaintiff's own characterizations of its alleged harm confirm that it seeks the very type of damages Congress addressed through § 284. That alone defeats the irreparable-harm prong.

**B. Plaintiff Failed to Establish the Required "Causal Nexus" Linking the Asserted Patents to Its Alleged Injuries**

The Federal Circuit requires proof that the patented features themselves, not simply the accused product category, **drive consumer demand and cause the alleged harm**. *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 641 (Fed. Cir. 2015). Plaintiff has presented no evidence demonstrating that any ornamental feature of the '236 Design Patent or structural element of the '028 Patent **is what causes consumers to purchase** Defendant's product, or that any alleged market effects are attributable to this Defendant specifically. No survey data, consumer-research analysis, or market-demand evidence is offered. It is also worth noting that even '236 Design Patent's name, "**Collection tray** for a drink maker," suggests lack of irreparable harm. **No consumer is likely to buy a machine for the design of an unnoticeable collection tray.**

Without this required causal nexus, irreparable harm cannot be found.

**C. Plaintiff's Reliance on "Consumer Confidence," "Brand Equity," and Goodwill is Misplaced in a Patent Case**

Plaintiff repeatedly invokes alleged injury to its "consumer confidence," "brand equity," and "innovator" status. [ECF No. 22 at 8–12]. But these are trademark-themed theories that do not satisfy patent irreparable-harm standards. Patents protect utility claims and ornamental design

features, not reputation, branding, or quality control. Even if Plaintiffs could show erosion of goodwill (they cannot), such harm is not cognizable for purposes of patent-based injunctive relief.

The TRO record likewise consists only of generalized statements that infringing products "capture sales," "deplete brand equity," and "erode recognition." [ECF No. 22 at 11–13; Lessing Decl. ¶¶ 24–30.] None of these assertions identify Defendants' products, link Defendants' listings to any specific marketplace harm, or show that any injury is imminent and incapable of compensation through monetary relief.

### D. Plaintiff's Showing Does Not Satisfy the Omnibus Order's Requirement of Defendant-Specific Evidence

The Omnibus Order requires Schedule "A" plaintiffs to present individualized evidence of entitlement to TRO relief to <u>each</u> defendant. Plaintiff's irreparable-harm showing ignores that requirement. It does not tie any alleged loss of market share, brand equity, or consumer perception to the accused product sold by Defendants. Instead, Plaintiff urges the Court to infer irreparable harm from the sheer number of sellers listed on Schedule A and generic allegations about the online marketplace. That approach is incompatible with both Federal Circuit precedent and the Court's directive.

## VI. THE TRO'S ASSET RESTRAINT IS UNAVAILABLE IN PATENT CASES

Even apart from Plaintiff's failure to show likelihood of success or irreparable harm, the TRO's prejudgment asset restraint cannot stand because it is legally unavailable in a patent action seeking only monetary relief.

Patent infringement remedies are governed by 35 U.S.C. § 284, which authorizes the recovery of damages if infringement is proven: lost profits, reasonable royalty, or price-erosion damages. § 284 provides a legal remedy, not an equitable one, and nowhere authorizes the

extraordinary restraint of assets in anticipation of a potential damages judgment. When Congress has supplied a comprehensive statutory remedy at law, federal courts may not fashion equitable measures to secure payment of that future monetary award.

The Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), confirms that principle. There, the Court held that a district court lacks equitable authority to freeze a defendant's assets when the only relief sought is a money judgment. *Id.* at 333. Because Plaintiff seeks legal damages under § 284—not equitable restitution, disgorgement, or any claim to a specific pool of assets—the Court's equitable powers do not extend to restraining Defendant's funds pending adjudication. Other courts have applied *Grupo Mexicano* to reject prejudgment asset freezes in patent cases. See, e.g., *ABC Prods. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Attached Schedule A*, No. 23 C 4131, 2024 WL 1549784, at *6 (N.D. Ill. Jan. 9, 2024). There, the court expressly distinguished trademark cases from utility-patent actions, noting that an asset freeze may be permissible in the trademark context because 15 U.S.C. § 1117 authorizes equitable relief, including an accounting of profits, but that no similar authority exists under the Patent Act. *Id.* By contrast, in a utility-patent case, the sole monetary remedy afforded by Congress is set forth in 35 U.S.C. § 284, which provides only legal damages. *Id.*

Likewise, in *Telebrands Corp. v. Guangzhou Alpaca Home Furnishing Co.*, No. 25-CV-3646 (JAV), 2025 WL 1591970, at *8 (S.D.N.Y. June 5, 2025), the court held that 35 U.S.C. § 284 "allows only for an award of damages adequate to compensate for the infringement, but in no event less than a reasonable royalty," as well as interest and costs. Because § 284 limits a prevailing patentee to legal damages rather than equitable disgorgement or restitution, the court concluded that

prejudgment asset restraints are not available in utility-patent cases governed by that statutory scheme.

Plaintiff's TRO motion relies on speculative concerns that defendants are foreign-based and may move funds offshore. But generalized fears about collectability do not expand a court's equitable authority beyond the bounds set by Congress or the Supreme Court. See *Grupo Mexicano*, 527 U.S. at 333. Nor has Plaintiff attempted to show that it possesses an equitable interest in Defendant's assets—such as a constructive trust, lien, or claim to specific funds—that might make asset restraint permissible. Without such an equitable predicate, prejudgment restraint is impermissible.

In short, Plaintiff's asserted harms are fully compensable by damages under § 284, and Plaintiff seeks no monetary recovery beyond that statutory remedy. Under *Grupo Mexicano* and the growing consensus of district-court decisions applying it in patent cases, the TRO's asset freeze is not legally available and must be dissolved as applied to Defendant.

## VII.   "SCHEDULE A" MASS TRO HARMS PUBLIC INTEREST BY FEE EVASION

The Eleventh Circuit requires courts to consider whether an injunction would disserve the public interest. *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam). **That factor carries particular weight where, as here, the Court (as well as other federal courts) has been operating under significant funding constraints.** As reflected in **Exhibits 8 and 9**, federal judiciary funding shortfalls have been a growing concern since at least May of this year and have worsened during the federal funding lapse weeks ago.

**Mass misjoinder and filing-fee evasion directly burden the judiciary.** Under 28 U.S.C. § 1914(a), a plaintiff must pay the statutory filing fee to "institute any civil action." Here, Plaintiff has grouped approximately sixty unrelated defendants into a single "Schedule A" case while

paying only a single $405 filing fee. The defendants are not alleged to be part of a common enterprise and, in fact, are independent businesses. **As the images in Schedule A demonstrate, many defendants sell different products.** Even where some defendants offer the same accused product sourced from the same supplier and even using the same trademark—such as "Auriswell" on Amazon and "Auriswell" on Walmart—**they are separate entities indirectly competing on different platforms, not alter egos of one another, much like different Marriott-branded hotels operated by separate LLCs.**

Congress has already recognized the public-interest harms of abusive mass joinder in intellectual property litigation. In patent cases, 35 U.S.C. § 299 sharply restricts joinder of accused infringers to circumstances where (1) the right to relief arises from the same transaction or occurrence (or series of transactions or occurrences) involving the same accused product or process, **AND** (2) common questions of fact will arise as to all defendants. 35 U.S.C. § 299(a)(1)–(2). **Allegations that multiple parties have infringed the same patent, standing alone, are expressly insufficient for joinder.** *Id.* § 299(b). **The intent of § 299 was to curtail precisely this sort of joinder abuse and to increase litigation costs borne by patent owners who would otherwise sue large numbers of unconnected defendants in a single case.** *See* David O. Taylor, Patent Misjoinder, 88 N.Y.U. L. Rev. 652, 682 (2013) (explaining that the AIA "makes it more difficult to join accused infringers in patent infringement cases and therefore increases costs for patent owners"); *see also* Oakley, Inc. v. Partnerships & Unincorporated Ass'ns Identified on Schedule "A", No. 21 C 536, 2021 WL 308882, at *1 (N.D. Ill. Jan. 30, 2021) (noting that "[t]he AIA sought to put a stop" to the prior practice of suing multiple unrelated infringers together).

**By suing roughly sixty defendants together while paying a single $405 fee, Plaintiff deprives the judiciary of tens of thousands of dollars in filing fees that Congress intended to**

**help offset the costs of administering civil litigation—costs that are especially acute during a funding shortfall.** Scholarly commentary has documented that "Schedule A" practices of this kind have deprived the federal courts of hundreds of millions of dollars in filing fees while simultaneously clogging dockets with complex, multi-defendant proceedings. *See* **Exhibit 10**, Eric Goldman, A SAD New Category of Abusive Intellectual Property Litigation, 123 COLUM. L. REV. F. 185 (2023).

The Court's inherent authority to manage its docket and prevent abuse strongly disfavors maintaining extraordinary ex parte relief obtained through fee-evasive mass joinder and procedural shortcuts. In light of the public-interest harms to the judiciary's limited resources, the Court should dissolve the TRO and even dismiss the case.

## VIII.   REQUESTED RELIEF

For the foregoing reasons, Defendants and Third-Party Respondents respectfully request that the Court:

1. Dissolve the Temporary Restraining Order and deny entry of Preliminary Injunction as to Defendants and Third-Party Respondents;

2. Clarify that the TRO does not apply to the Third-Party Respondents;

3. Direct Plaintiffs to promptly notify online platforms to lift any restraints imposed on Defendants' and Third-Party Respondents' storefronts and/or funds, with the undersigned counsel copied on such communication; and

4. Grant such other and further relief as the Court deems just and proper.

Dated: December 3, 2025

Respectfully submitted,

/s/Ziqi Yu

Ziqi Yu
Fla Bar ID #1044119
procollider@pm.me
5794 Bird Rd Unit 554
Miami, FL 33155
415-519-5274

Weilian Song
WI Bar ID # 1122841
XYZ Law Firm, LLP
2131 9th St NW, Unit 1-565,
Washington, D.C. 20001
E-mail: will@xyziplaw.com
Phone: (857) 869-1626

*Counsel for Defendants
IceSwirls, Tefoqu, Wongic, Dutepa,
Auriswell (on Amazon), Auriswell (on
Walmart), Kelteroom,
and Third-Party Respondents
Grano Chef, oplace, POFABIK,
BLIZZEE, NLNYA, Nyzgax*