UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-25323-RAR

SHARKNINJA OPERATING LLC, and

SHARKNINJA SALES COMPANY

      Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

      Defendants.

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Acting via their designated legal representatives, Defendants Gasbye, Fohere, VNN, PAMBEE, and WIE (collectively "Defendants") hereby respond in opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 37) ("PI Motion") and respectfully moves to incorporate by reference the arguments, authorities and request for relief set forth in the motions filed by Co-Defendants to dissolve the temporary restraining order and deny preliminary injunction (Dkt. Nos. 43 and 60). Defendants are similarly situated to the identified Co-Defendants with respect to the issues raised in their motions and the arguments presented therein apply with equal force to Defendant. As explained below, the PI Motion should be denied because Plaintiffs have failed to (1) establish personal jurisdiction over Defendants; and (2) show substantial likelihood of success on the merits. Plaintiffs' evidence does not prove, with substantial likelihood of success, infringement of the patents in suit. Moreover, the design patent is likely to be invalid due to functionality, among other things.

1

## I.     PROCEDURAL HISTORY

Plaintiffs initiated this action by filing their Complaint ("Complaint" or "Compl.") on November 14, 2025, asserting claims of patent infringement against, among others, Defendants, relating to Plaintiffs' U.S. Patents Nos. 12,285,028 (the "'028 Patent" or the "Utility Patent") and D1,091,236 (the "'236 Design Patent" or the "Design Patent"). *See* Compl. It is significant that the Complaint includes only generalized accusations against all defendants without any particularized factual assertions or specific statements directed to Defendants.

On November 18, 2025, Plaintiffs filed their *Ex Parte* Motion for Entry of Temporary Restraining Order ("Motion for TRO") (Dkt. No. 15), which was denied by this Court (Dkt. No. 20). Subsequently, Plaintiffs filed a Renewed Motion for TRO (Dkt. No. 22) on November 20, which was granted by this Court (Dkt. No. 26) the next day. On November 28, Plaintiffs filed their Motion for Preliminary Injunction ("PI Motion"), asking the Court to convert the TRO into a Preliminary Injunction. Dkt. No. 37.

## II.     STATEMENT OF RELEVANT FACTS

Defendant Gasbye, is owned by Shenzhen Dianzilai Technology Co., Ltd., organized and existing under the laws of People's Republic of China, located at Suite 6501-2(1), 65th Floor, West Tower, Galaxy WORLD Twin Towers No. 8 Yaxing Road, Longgang District, Shenzhen, Guangdong Province, People's Republic of China. Its Accused Product is Amazon ASIN B0F54QXHGX. *See* Dkt. No. 21-1 at 39.

Defendant Fohere is owned by Shenzhen Fuduosi Trade Co., Ltd., organized and existing under the laws of People's Republic of China, located at Unit 200, Building 1, No. 2 Haiwan Road, Nanshan District, Shenzhen, Guangdong Province, People's Republic of China. Its Accused Products are Walmart SKUs 13237064625 and 13720319876, and Amazon ASINs B0F1CX9BDK

and B0F1CXXM1G. *See id.* at 26, 33 & 48. Though not asserted as infringing products in this case, Fohere also has two products (ASINs B0FR9C7RPY and B0FSQHLWG4) likely affected by the TRO.

Defendant VNN is owned by Shanghai Dayou Technology Co., Ltd., organized and existing under the laws of People's Republic of China, located at Room 201, Area A, 2388 Hutai Road, Baoshan District, Shanghai, People's Republic of China. Its Accused Product is Amazon ASIN B0F8TYD6L6. *See id.* at 62.

Defendant PAMBEE is owned by Shenzhen Jikejiyuan Innovative Technology Co., Ltd., organized and existing under the laws of People's Republic of China, located at Room 103, 1st Floor, Building 14, Yunli Smart Park, 6 Changfa Middle Road, Longgang District, Shenzhen, Guangdong Province, People's Republic of China. Its Accused Product is Amazon ASIN B0F3CMMQP3. *See id.* at 61.

Defendant WIE is owned by Ovan (Hong Kong) Technology Limited, organized and existing under the laws of Hong Kong SAR, located at 19H Maxgrand Plaza, NO.3 Tai Yau, Hong Kong SAR. Its Accused Product is Amazon ASIN B0FFGR6DG9. *See id.* at 40.

Defendants' accused products are collectively referred to as "Accused Products" herein. As background information, none of the Defendants maintain any offices, employees, agents, bank accounts, or other physical presence in Florida or has had any manufacturing operations in the United States, including Florida.

### III.   LEGAL STANDARD

**A. Legal Standards of Preliminary Injunction**

A district court may grant a preliminary injunction only if the movant shows the following: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered

unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n, Inc.*, 2023 WL 3704912, at *3 (11th Cir. May 30, 2023) (citing *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Siegel*, 234 F.3d at 1176. A preliminary injunction is "an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018). A plaintiff is entitled to a preliminary injunction based on its patent infringement claim where it can show all four factors. *XYZ Corp. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 24-CV-22759-RAR, 2024 WL 4893439, at *2 (S.D. Fla. Sept. 11, 2024) (J. Ruiz) (citing *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F. 3d 1190, 1202 (Fed. Cir. 2017)). The burden is always on the movant to show that it is likely to succeed on the merits. *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1398 (Fed. Cir. 2022).

**B. Personal Jurisdiction Is a Threshold Matter in Determining a Motion for Preliminary Injunction**

Where a preliminary injunction has been requested this Court "must first determine whether it has personal jurisdiction over the Defendants." *Rexam Airspray, Inc. v. Arminak*, 471 F. Supp. 2d 1292, 1297 (S.D. Fla. 2007); *see also JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363, 1364 (S.D. Fla. 1999); *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F. Supp. 2d 1325, 1327 (S.D. Fla. 2001) (Court first considered issue of personal jurisdiction before considering the merits of Plaintiff's Preliminary Injunction Motion.).

**C. Legal Standards of Personal Jurisdiction**

In a seminal case involving patent infringement disputes, the Federal Circuit held that the

jurisdictional inquiry is "intimately involved with the substance of the patent laws," and therefore conferring "no special deference to regional circuit law" and applying its own precedent that is necessary to promote judicial efficiency, uniformity, and consistency in the enforcement of patent rights. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–65 (Fed. Cir. 1994), *cert. dismissed,* 512 U.S. 1273 (1994). The Federal Circuit has long upheld that principle. *See, e.g., Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995) (reviewing personal jurisdiction for out-of-state defendant *de novo*); *accord Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002); *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008); *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009); *see also Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) (holding that Federal Circuit law applies to the patent claim and circuit law applies to the state law claims). Even if non-patent claims are presented, if the question of infringement is critical to liability determination, Federal Circuit law still governs personal jurisdiction to those non-patent claims. *See Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006) (holding that Eleventh Circuit law does not apply to personal jurisdiction for state tort claims because they are sufficiently intertwined with enforcement of patent rights).

This Court follows Federal Circuit law, rather than the law of the Eleventh Circuit, in adjudicating the issue of personal jurisdiction in patent cases. *See Vivant Pharms., LLC v. Clinical Formula, LLC*, No. 10-21537-Civ-COOKE/B, 2011 U.S. Dist. LEXIS 37343, at *7 (S.D. Fla. Mar. 31, 2011) (citing *Elecs. for Imaging, Inc. v. Coyle*). Under Federal Circuit law, "[d]etermining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics v. Oxford Gene Technology*, 566 F.3d at 1017.

Florida's long-arm statute provides specific jurisdiction for "any cause of action arising from … [c]omitting a tortious act within [Florida]." FLA. STAT. § 48.193(1)(a)(2). If Florida's long-arm statute is satisfied, a three-part federal due process analysis follows: "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). Personal jurisdiction can be "general" or "specific." Specific personal jurisdiction is limited to claims that "arise out of or relate to" the defendant's contacts with the forum. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).

## IV.  ARGUMENT

### A.  Plaintiffs Have Failed to Make a *Prima Facie* Showing of Personal Jurisdiction.

The Court should deny the PI Motion for Plaintiffs' failure to establish personal jurisdiction over Defendants. Where a preliminary injunction has been requested, as a threshold matter, this Court "must first determine whether it has personal jurisdiction over the Defendants." *Rexam Airspray v. Arminak*, 471 F. Supp. 2d at 1297. Plaintiffs have the burden of establishing a *prima facie* case of personal jurisdiction. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1309 (Fed. Cir. 2012); *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

Plaintiffs fail to make a *prima facie* showing of personal jurisdiction over Defendants. The only evidence provided by Plaintiffs is a set of screenshots showing that the Accused Products *can* be sold to Florida. Lessing Decl. ¶ 19. However, Federal Circuit law has consistently and unambiguously held that evidence showing online hypothetical purchases alone cannot establish jurisdiction over an out-of-state defendant. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378 (Fed. Cir. 2017). Plaintiffs' argument is based on case law that does not apply to patent

infringement actions. *See, e.g., Coyle*, 340 F.3d at 1348. Moreover, Plaintiffs have failed to prove that the Florida long-arm jurisdiction statute is satisfied here. FLA. STAT. § 48.193(1)(a)(2). It follows that Plaintiffs' PI Motion must be denied for failure to establish personal jurisdiction.

1.    **Plaintiffs Have Failed to Prove Actual Sale of Accused Products to Florida, Which is Required under Federal Circuit Law to Establish Personal Jurisdiction.**

The only jurisdictional evidence provided by Plaintiffs is a Declaration of Plaintiffs' employee and a set of screenshots containing the Accused Products. PI Motion, at 8; Lessing Decl. ¶¶ 16–19. The Lessing Declaration does not allege that any of the Accused Products has been sold to Florida; it only alleges that Plaintiffs have "proof of offers for sale accessible to consumers in the Southern District of Florida that *can* be shipped to the Southern District of Florida." Lessing Decl. ¶ 19 (emphasis added). Relying on Lessing Declaration, Plaintiffs argued that this Court has "personal jurisdiction over websites offering for sale and selling infringing merchandise that is offered for sale or sold without authorization to Florida residents over the internet." PI Motion, at 8 (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013)).

Here, Plaintiffs' reliance on *Louis Vuitton Malletier, S.A. v. Mosseri* is misplaced. It is well-established that "Federal Circuit law governs personal jurisdiction in patent infringement actions." *Vivant Pharms., LLC v. Clinical Formula, LLC*, No. 10-21537-Civ-COOKE/B, 2011 U.S. Dist. LEXIS 37343, at *7 (S.D. Fla. Mar. 31, 2011) (citing *Coyle*, 340 F.3d at 1348); *Akro*, 45 F.3d at 1543. This is because "the jurisdictional issue is intimately involved with the substance of the patent laws." *Autogenomics*, 566 F.3d at 1016 (cleaned up).

Federal Circuit law unambiguously rejects Plaintiffs' theory that personal jurisdiction over an out-of-state online store can be established by a hypothetical purchase showing an in-state resident *could* purchase from defendant's website. *NexLearn*, 859 F.3d at 1378. Without evidence of actual sale to the forum state, Defendant's website is "conceptually no different than operating

an out-of-state store. That a store would accept payment from a hypothetical out-of-state resident and ships its product there does not create a substantial connection for an infringement claim between the store and the hypothetical resident's forum state." *Id.* at 1379. Here, Plaintiffs' only basis of personal jurisdiction is screenshots showing each Defendant's online store "offers for sale accessible to consumers in the Southern District of Florida that *can* be shipped to the Southern District of Florida." Lessing Decl. ¶ 19. The Federal Circuit has consistently and unambiguously held these contacts insufficient to establish jurisdiction. *NexLearn*, 859 F.3d at 1378 ("The existence of [Defendant's] website, without more, is insufficient to show that Defendant has minimum contacts with [forum state.]"). *See also Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281–82 (Fed. Cir. 2005) (Absent evidence that "any District residents have ever actually used [Defendant] website to transact business," Plaintiffs' allegations were insufficient to show specific jurisdiction existed.); *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010) (holding "this court cannot determine that Abbyy Software purposefully availed itself of the privilege of conducting activities in California by some affirmative act or conduct, and that Nuance's claims arise out of those activities," although Abbyy Software maintained a website that ''promotes the sale of [the infringing] products in California''); *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (not relying on defendant's website as a contact for specific jurisdiction and specifying in the general jurisdiction context, "maintenance of a website is also insufficient to give rise to general jurisdiction over the defendants in the State of Washington, as the website is not directed at customers in Washington and does not appear to have generated any sales in Washington").

To establish personal jurisdiction over Defendants, Plaintiffs must show "evidence that [Defendants] purposefully availed themselves of [Florida] and that [Plaintiff's] claim arises out of

or relates to those contacts." *NexLearn*, 859 F.3d at 1378. Plaintiffs have failed to do so. The PI Motion should be therefore denied.

**2.    Florida's Long-Arm Statute Is Not Satisfied Here.**

Assuming *arguendo* that Plaintiffs were able to satisfy federal due process, it cannot satisfy Florida's long-arm statute. Florida's long-arm statute provides specific jurisdiction for "any cause of action arising from … [c]ommitting a tortious act within [Florida]." FLA. STAT. § 48.193(1)(a)(2). If a defendant operates a website accessible to consumers in Florida, "unrebutted allegations of 'multiple sales into Florida' through a defendant's website are sufficient to support a finding that the defendant's acts 'cause[d] injury within Florida' in satisfaction of the long-arm statute's specific personal jurisdiction requirements." *Royal Enamel Ltd. v. JD E-Com. Am. Ltd.*, No. 2024 WL 5074976, at *3 (S.D. Fla. Dec. 11, 2024).

Here, the Complaint does not include even a scintilla of evidence on whether actual sales by Defendants to this Forum ever occurred. *See* PI Motion, at 8; Lessing Decl. ¶¶ 16–19. Instead, the Complaint includes only barebones, conclusory, and inaccurate allegations that fail Plaintiffs' "initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *See United Tech. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009).

In *Licciardello*, the Eleventh Circuit made a statement that "in this case the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida." *Licciardello*, 544 F.3d at 1283. However, such a statement cannot be taken out of context. As recently summarized in *PeopleShare, LLC v. Vogler*, 601 F. Supp. 3d 1276 (S.D. Fla. 2022), which discusses *Licciardello*, this Court noted that "the plaintiff [of *Licciardello*] as [*sic*] the owner of the trademark resided in Florida." *PeopleShare,* 601 F. Supp. 3d at 1282. "*Licciardello* does not support the conclusion that a plaintiff sustains an injury in Florida regardless of where the plaintiff

is located simply because a website can be accessed in Florida" because "such a broad holding would subject every company or individual that has a website anywhere in the world, and whose website be accessed in Florida, to suit in Florida." *Id.* This Court expressly acknowledged that "accessibility was sufficient in *Licciardello* because the plaintiff was located in Florida and therefore sustained an injury in Florida." *Id.* at 1283.

Here the Complaint expressly stated that both Plaintiffs were incorporated in Delaware and have principal places of business in Massachusetts. Compl. at ¶¶ 16–17. Therefore, Plaintiffs' own absence from Florida prevents it from establishing jurisdiction under Florida's long-arm statute.

**B.  Plaintiffs Fail to Show Substantial Likelihood of Success on the Merits**

To show likelihood of success on the merits, a patentee must show "(1) it will likely prove infringement and (2) its infringement claim will likely withstand challenges to the validity and enforceability of the patents." *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001) (cleaned up). "[W]hether performed at the preliminary injunction stage or at some later stage in the course of a particular case, infringement and validity analyses must be performed on a claim-by-claim basis." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (cleaned up).

A patent infringement determination generally involves a two-step analysis. In the first step, any disputes over the meaning of the patent claims must be resolved by the court; then, a comparison is made to the accused product to determine whether it falls within the scope of the patent claims. *Optikam Tech Inc. v. Am. Bright Signs, Inc.*, No. 23-CV-23597-RAR, 2024 WL 5263795, at *1 (S.D. Fla. June 13, 2024) (J. Ruiz) (citing *Grober v. Mako Prod., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012)). However, a district court has no obligation to definitively construe claims at the preliminary injunction stage. *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th

1369, 1375 (Fed. Cir. 2024) (citing *Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996)). An assessment of the likelihood of infringement at the preliminary injunction stage, like a determination of patent infringement at a later stage in litigation, "requires a determination that every claim limitation or its equivalent be found in the accused device." *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) (citation omitted).

In the context of a patent infringement suit, "[a] patent holder seeking a preliminary injunction bears the burden of establishing a likelihood of success on the merits with respect to the patent's validity." *Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1351 (Fed. Cir. 2007) (citing *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1351 (Fed. Cir. 2000)). Absent an invalidity defense, "the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) (citations omitted). But if the accused infringer presents a substantial question of validity, "i.e., asserts an invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." *Entegris*, 490 F.3d at 1351 (quoting *Genentech, Inc. v. Novo Nordisk*, 108 F.3d 1361, 1364 (Fed. Cir. 1997)). "The burden on the accused infringer to show a substantial question of invalidity at [the preliminary injunction] stage is lower than what is required to prove invalidity at trial." *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1006 (Fed. Cir. 2009).

As explained below, Plaintiffs have also failed to show substantial likelihood of success on the merits, and the PI Motion should be denied. *Genentech*, 108 F.3d at 1364 (holding that if an alleged infringer raises a substantial question concerning validity, enforceability, or infringement (i.e., asserts a defense that [the patentee] cannot show "lacks substantial merit"), the preliminary injunction should not issue) (cleaned up).

1.      **Plaintiffs Have Failed to Establish Entitlement to Relief with respect to Each Defendant.**

The Court's Omnibus Order (Dkt. No. 8) was explicit and unambiguous: "Any motion …
for entry of preliminary injunction must … establish entitlement to relief with regard to **EACH**
Defendant." Dkt. No. 8 at 2 (emphasis original). Plaintiffs have failed to heed this instruction.
Rather than presenting product-by-product evidence demonstrating infringement of the Utility
Patent and the Design Patent ("Asserted Patents") by the Accused Products, Plaintiffs simply slap
one or two blurred "exemplary images" for each accused product (*see* Dkt. No. 21-1 at 26, 33, 39,
40, 48, 61, & 62, reproduced below), then call the job done and ask the Court to conclude
infringement for both Asserted Patents based on such inadequate evidence. No entitlement to any
injunctive relief can be established by doing so.

For the Utility Patent, paragraph 69 of the Complaint presents a skeletal chart containing
three small images and a solitary label reading "side baffle." Compl. ¶69. *See* Ex. 1, attached
hereto. The PI Motion also centered Plaintiffs' infringement allegations on the "side baffle." PI
Motion at 5–6 & 12. However, neither the Complaint nor the PI Motion addresses the remaining
limitations of claim 1 or identifies which specific structures in the accused product allegedly satisfy
those requirements. *See Oakley,* 316 F.3d at 1339 (likelihood of success analysis mandates "every
claim limitation or its equivalent" to be found in the accused device).

Specifically, neither the Complaint nor the PI Motion provides any factual support to the
infringement allegation of the claimed feature that "the side baffle further configured to promote
slush flow away from the left side or the right side of the vessel chamber and back toward a center
of the vessel chamber." '028 Patent, Claim 1. These functional features cannot be ascertained by
static photos. An expert opinion would be needed to opine on the features after observing the
operation of the Accused Products, while the Complaint and the PI Motion offered none. To the

contrary, Plaintiffs conclusively stated that the images in the Schedule A (Dkt. No. 21-1) "demonstrate" the above claimed features. PI Motion at 6. However, "attorney arguments are neither facts nor evidence." *Optikam Tech*, 2025 WL 2840613, at *5.

Plaintiffs' infringement analysis for the Design Patent is not better. Similarly, para. 75 of the Complaint presents a chart featuring source-unknown, logo-free images. Compl. ¶75. The PI Motion conclusively stated that "every Infringing Product includes a collection tray that infringes the design claimed in the '236 Design Patent." PI Motion at 6. However, neither the Complaint nor the PI Motion offered any fact to link those logo-free images to the Accused Products.

Those deficiencies are not a surprise. Plaintiffs declare under penalty of perjury that the action they took to conclude infringement of the Asserted Patents is "through a visual inspection of the products listed in the Internet Stores." Lessing Decl. ¶ 18. Nothing more is done: no element-by-element analysis (either literal or under the doctrine of equivalents), no expert opinion, not even a single purchase of the Accused Products to investigate whether they include the allegedly infringing tray. Plaintiffs just throw a handful of pictures into the papers then rush to the court.

Clearly, Plaintiffs provide only generic diagrams and conclusory statements, none of which provide sufficient evidence to establish entitlement to relief as required by the Omnibus Order. For this reason alone, Plaintiffs fail to demonstrate a substantial likelihood of success on the merits.

**2.    The '236 Design Patent is Invalid for Being Primarily Functional**

A design that is "primarily functional" does not qualify for design patent protection under 35 U.S.C. § 171. *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010); *see also M.P.E.P.* 1504.01(c)(I) ("An ornamental feature or design has been defined as one which was created for the purpose of ornamenting and cannot be the result or merely a by-product of functional or mechanical considerations.") (cleaned up).

In assessing whether a design is dictated by function, courts consider whether the claimed design: (1) is necessary to use the claimed article for its intended purpose; (2) affects the cost or quality of the article; (3) has alternatives that could achieve the same function; (4) is praised through advertisements; (5) is in a concomitant utility patent as having performance or other utilitarian advantages; (6) results from manufacturing constraints. *See Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1322 (Fed. Cir. 2016); *see also Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1319 (Fed. Cir. 2019) (citing *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997)).

Here, the claimed design of the '236 Design Patent is primarily functional. The '236 Design Patent is a continuation of U.S. utility patent application No. 18/415,817 ("'817 App"), filed on Jan. 18, 2024. *See* Dkt. No. 1-2, front page. The main priority support for the '236 Design Patent is Figures 5A–5B in the '817 App, which are reproduced in Ex. 2 with annotations. *See* Ex. 2, attached hereto.

The collection tray 220 in Figs. 5A–5B can be inserted into and removed from the housing 102 of the frozen drink maker 100. '817 App, ¶¶ [0053]–[0054]; Fig. 5C (tray inserted, reproduced in Ex. 2 with annotations); Fig. 5D (tray removed, reproduced in Ex. 2).

The collection tray 220, as a whole, is functional for "collecting liquid, including condensation falling from the evaporator 202, spills, and water poured into the housing 102 to clean the inside of the housing 102." '817 App, ¶ [0052]. It "allows the user to easily dispose of excess slush." Lessing Decl. ¶ 10. The tray's width contributes to "create the perfect clearance needed to sweep excess and sticky fluids away in a single horizontal motion." *Id.* The tray needs to "echo" the geometry of "the circular drum nests." *Id.* Overall, the tray is aimed to ensure the drink maker "remains compact, countertop-worthy, and easy to clean and maintain." *Id.* Indeed,

the semi-cylindrical shape of the tray is a desired function that Plaintiffs seek to protect in a utility patent application. *See* '817 App, Claim 4 ("The removeable collection tray of claim 3, wherein the shape is semi-cylindrical."). Clearly, the overall shape of the tray is selected for various functional reasons rather than ornamental ones.

Specifically, the shape of the surface 506 (as shown and annotated in red in Figs. 5A–5C, reproduced in Ex. 2) is functional rather than ornamental because the disclosure of the '817 App leaves no room for its alternative designs. For example, the specification of the '817 App states:

> [0052] …. Together with the handle 504, the walls 502a,*b,c* and the surface 506 may define a chamber 508 for collecting liquid, including condensation falling from the evaporator 202, spills, and water poured into the housing 102 to clean the inside of the housing 102. **A shape of the collection portion 502, including the evaporator-facing surface 506, may correspond to an outer shape of the evaporator 202**. For example, **the shape of the evaporator-facing surface 506 may be semi-cylindrical to correspond to the cylindrical shape of the evaporator 202**, as shown in FIG. 5A. However, the disclosure contemplates other suitable shapes, such as rectangular, of the collection portion 502…

> [0054] …. **A shape of the top surface 520 may be semi-cylindrical to correspond to the semi-cylindrical shape of the evaporator facing surface 506**…

> '817 App, Specification (emphases added).

That is, the shape of the surface 506 must be semi-cylindrical to fit for (*i.e.,* "correspond to") both the cylindrical evaporator 202 and the semi-cylindrical surface 520. Although the specification "contemplates" other "suitable" shapes (such as rectangular) for the surface 506 (*see* '817 App, ¶ [0052]), its disclosure is completely silent on how such a "suitable" shape could "correspond to" the cylindrical evaporator 202 or the semi-cylindrical surface 520. Such insufficient disclosure cannot lend any support for any alternative design of the surface 506.

Plaintiffs further touted that the "gentle curvature" of the surface 506 "create[s] the perfect clearance needed to sweep excess and sticky fluids away in a single horizontal motion." Lessing

Decl. ¶ 10. Further, the "lower curvature" of the surface 506 "provides the necessary tray volume, with the space on the side corners efficiently packaging the electronics." *Id.* Even if a rectangular shape of the surface 506 is deemed as an alternative design (which Defendants disagree), the rectangular surface 506 will leave a gap between the bottom of the tray and the semi-cylindrical surface 520. Such a design will reduce the "necessary tray volume," as well as increase the likelihood of liquid spills contaminating the inside of the housing 102. In such a case, the "utility" of the tray is "adversely affected." *See Auto. Body Parts*, 930 F.3d at 1319 (appropriate considerations for assessing whether the patented design as a whole was dictated by functionality includes "whether alternative designs would adversely affect the utility of the specified article").

Indeed, the '817 App discloses no alternative design for the shapes of the evaporator 202 and the surface 520 that both "correspond to" the shape of the surface 506. *See* Dkt. No. 1-2. Therefore, the shape of the surface 506 in the '236 Design Patent, as supported by the disclosure of the '817 App, has no alternative design that could achieve the same function. *See Sport Dimension*, 820 F.3d at 1322.

Further, the shape of the surface 510 of the handle 504 (shown and annotated in **green** in Figs. 5A–5C, reproduced in Ex. 2) is functional rather than ornamental because its utility is touted for "placing hand touchpoints ergonomically." Lessing Decl. ¶ 10. It is also a sought feature in a concomitant utility patent application. '817 App, Claim 8 ("The removeable collection tray of claim 1, wherein a user-facing surface of the handle is configured to be **flush with** a user interface of the housing when the collection chamber is fully inserted into the slot.") (emphasis added). Therefore, the shape of the surface 510 in the '236 Design Patent, as supported by the disclosure of the '817 App, is in a concomitant utility patent as having performance or other utilitarian advantages. *See Sport Dimension*, 820 F.3d at 1322.

Similarly, the walls 502 a,*b,c* (shown and annotated in blue in Figs. 5A–5B, reproduced and annotated in Ex. 2) are functional rather than ornamental because they form a chamber 508 with the surface 506 and thus are necessary to the claimed tray for its intended purpose (*i.e.*, collecting liquid, spills, and water). *See* '817 App, ¶ [0052]; Lessing Decl. ¶ 10. Also, the ribs 514 (as claimed in Fig. 5B) are also functional because they are "for adding structural integrity" between the surface 510 and the main body of the tray. '817 App, ¶ [0052].

Although the '817 App and the '236 Design Patent is silent on whether the claimed design affects the cost or quality of the article, is praised through advertisements, or results from manufacturing constraints, those considerations are at best neutral for the functionality analysis. Considered as a whole, the overall appearance of the claimed design of the '236 Design Patent is clearly dictated by function. *See Richardson*, 597 F.3d at 1293–94. For this reason alone, the '236 Design Patent is invalid, which dooms the substantial likelihood of success of Plaintiffs' claims.

**3.    The '236 Design Patent is Invalid for Being Concealed in Normal Use**

Besides functionality, the patentability of a design cannot be based on elements which are concealed in the normal use of the device to which the design is applied. *See Auto. Body Parts*, 930 F.3d at 1321 (citing *In re Webb*, 916 F.2d 1553, 1557–58 (Fed. Cir. 1990)); *see also M.P.E.P.* 1504.01(c)(III)(B) ("a design not visible in its normal and intended use as evidence that its appearance is not a matter of concern"). The "normal use" includes occasions of sale and display. *See In re Webb*, 916 F.2d at 1557 ("The likelihood that articles would be observed during occasions of display or sale could have a substantial influence on the design or ornamentality of the article.").

Here, the collection tray as claimed by the '236 Design Patent is concealed (except the surface 510) in its normal use where it is inserted into the housing 102 of the frozen drink maker 100. *See* '817 App, ¶ [0053]; Fig. 1 (reproduced with annotated surface 510 in Ex. 2); *see also*

Compl. at ¶¶ 22 & 37, reproduced in Ex. 3. The overall appearance of the claimed tray is almost completely inside the machine 100 and cannot be observed "during occasions of display or sale," thus bearing no "substantial influence on the design or ornamentality." In fact, the product images provided by Plaintiffs themselves clearly provide that the collection tray is invisible during sales and display. Compl., ¶¶ 22, 37 (figures reproduced in Ex. 3). For this reason alone, the '236 Design Patent is invalid, which also dooms the substantial likelihood of success of Plaintiffs' claims.

**4.    The '236 Design Patent Is Not Infringed Because the Accused Products Practice Prior Art.**

The ordinary observer test governs whether an accused product applies the design claimed in the asserted design patent. *See Egyptian Goddess v. Swisa, Inc.,* 543 F.3d 665, 670 (Fed. Cir. 2008). Under this test, the design owner must demonstrate that an ordinary observer would: (1) perceive substantial similarities between the design applied to the accused product and the claimed design; and (2) purchase the accused product believing it to be the article of manufacture claimed in the design patent. *Id.* The ordinary observer is not an expert in the claimed designs, but one of "ordinary acuteness" who is a "principal purchaser[]" of the underlying articles with the claimed designs. *See Ethicon Endo-Surgery, Inc. v. Covidien, Inc.,* 796 F.3d 1312, 1337 (Fed. Cir. 2015).

The ordinary observer test does not fixate on insignificant features that distinguish the claimed and accused designs, even if those features are novel. *Egyptian Goddess*, 543 F.3d at 677. Under the ordinary observer test, the similarities between the design applied to the accused product and the claimed design must not be well established in the prior art. *See Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895, 898–99 (Fed. Cir. 2020). Prior art is only relevant to the design patent infringement analysis if it relates to the same article of manufacture in the claimed design. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1379-80 (Fed. Cir. 2023), *cert. denied*, 144 S. Ct. 2563 (2024).

It should be noted that the scope of the '236 Design Patent is not fully supported by the '817 App. Figures 1–3 of the '236 Design Patent show surface shading that indicates the front-facing surface of the tray (*i.e.*, the surface 510 in Fig. 5A shown in Ex. 2) as a flat surface. *See, e.g.,* '236 Design Patent, Fig. 3 (reproduced in Ex. 4, attached hereto).

As comparison, Figures 1 & 5C of the '817 App clearly show that the surface 510 is a curved surface. *See* '817 App FIGs. 1 & 5C, *Ex. 2.* The shading in Figs. 1 & 3 of the '236 Design Patent adds impermissible new matter. Thus, the '236 Design Patent should not be entitled with the priority to the '817 App, and its priority date should be the same as its filing date, January 28, 2025.

With that said, even if assuming the priority date of the '236 Design Patent is January 28, 2024 (which Defendants dispute), at least two prior art publications show many identical or similar designs compared with the claimed design. The Chinese Patent No. CN114017963B discloses an ice-making machine. *See* Ex. 1 (original with machine translation). It was filed on November 26, 2021 and published on February 8, 2022. *See id.*, front page. Its publication date is more than one year earlier than the priority date of the '236 Design Patent, thus constituting a prior art under 35 U.S.C. 102. Specifically, it discloses a "water receiving box 5." *See* Ex. 5, attached hereto, Figure 4 and Paragraph 44 are reproduced therein.

The ice-making machine disclosed by this Chinese patent is in the same or analogous field as the claimed article of manufacture of the '236 Design Patent (*i.e.*, a "drink maker"). Specifically, the "water receiving box 5" discloses surfaces that are the same or similar to the surface 506, the surface 510, and the walls 502a and 502c as shown in the '817 App Fig. 5A (reproduced in Ex. 2). Thus, those surfaces as claimed in the '236 Design Patent falls into the scope of this prior art.

In addition, the Chinese Patent No. CN111854249B discloses an ice maker. *See* Ex. 2

(original with machine translation). It was filed on April 12, 2019 and published on October 30, 2020. *See id.*, front page. Its publication date is more than one year earlier than the priority date of the '236 Design Patent, thus constituting a prior art under 35 U.S.C. 102. Specifically, it discloses a "water receiving part 140." *See* Ex. 6, attached hereto (Figure 2 and Paragraph 22 are reproduced therein).

The ice maker disclosed by this Chinese patent is in the same or analogous field as the claimed article of manufacture of the '236 Design Patent (*i.e.*, a "drink maker"). Specifically, the "water receiving part 140" discloses a semi-cylindrical bottom wall 142 that is the same or similar to the surface 506 as shown in the '817 App Fig. 5A above. Thus, that surface as claimed in the '236 Design Patent falls into the scope of this prior art.

Even if the '236 Design Patent is valid (which Defendants dispute), the similarities between the design applied to the Accused Products and the claimed design are well established in the Chinese Patent Nos. CN114017963B and CN111854249B. Plaintiffs failed to plead any fact, in the Complaint or the PI Motion, to support that the ordinary observer would perceive substantial similarities between the design applied to each of the Accused Products and the claimed design after taking out the features disclosed by the prior art from the claimed design. Even if they plead those required facts, the Accused Products at worst merely practice the prior art to the '236 Design Patent. Thus, Plaintiffs fail to show substantial likelihood of success of direct infringement of the '236 Design Patent by the accused product. For similar reasons as stated above, Plaintiffs also fail to show substantial likelihood of success of indirect infringement of the '236 Design Patent by the accused product.

### V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion for Entry

of Preliminary Injunction be denied.

December 3, 2025

Respectfully submitted.

By: /s/Adrienne Love
Adrienne C. Love (Fla. Bar No. 85956)
**STEARNS WEAVER MILLER**
**WEISSLER ALHADEFF &**
**SITTERSON, P.A.**
106 East College Avenue, Suite 700
Tallahassee, FL 32301
Telephone:  (850) 329-4847
E-mail:  alove@stearnsweaver.com

J. Benjamin Bai (*pro hac vice forthcoming*)
Texas Bar No. 24001675
**King & Wood Mallesons LLP**
500 Fifth Avenue, 50th Floor
New York NY 10110
Telephone: (212) 319-4755
E-mail: benjamin.bai@cn.kwm.com

Haolu Feng (*pro hac vice forthcoming*)
D.C. Bar No. 90001026
**King & Wood Mallesons**
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031 China
Telephone: (206) 499-2956
Email: harry.feng@cn.kwm.com

Yang Guo (*pro hac vice forthcoming*)
New York Bar No. 5897251
**King & Wood Mallesons**
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031 China
Telephone: (628) 999-0922
Email: guoyang5@cn.kwm.com

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on December 3, 2025, a true and correct copy of the foregoing was electronically filed using CM/ECF, which serves electronic notice on all counsel of record and registered CM/ECF users.

By: <u>/s/ AdrienneLove          </u>
Adrienne Love
