IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 25-cv-25323-RAR

| | |
|---|---|
| SHARKNINJA OPERATING LLC, and SHARKNINJA SALES COMPANY,<br><br>　　　　Plaintiff,<br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>　　　　Defendants. | **Honorable Rodolfo A. Ruiz II**<br><br>**HEARING DATE:**　December 5, 2025<br>**HEARING TIME:**　1:30 PM EST |

**DEFENDANTS' MOTION TO DISSOLVE *EX PARTE* TRO AND OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION**

Defendants Shenzhen Fengkai E-Commerce Co., Ltd., d/b/a 11C-Z59, Building A1, Zhujiang Plaza, No. 9009 Longxiang Avenue, Shangjing Community, Longcheng Street, Longgang District, Shenzhen, China. and Hong Kong Huayun Economic & Trade Co., Ltd., d/b/a 17th Floor, Far East Finance Centre, No. 16 Harcourt Road, Hong Kong (hereinafter "Defendants") respectfully move to dissolve the Temporary Restraining Order ("TRO") and oppose Plaintiffs' motion for a preliminary injunction.

## I.　INTRODUCTION

On November 14, 2025, Plaintiffs, Sharkninja Operating LLC, and Sharkninja Sales Company (hereinafter "Plaintiffs") initiated this litigation against multiple defendants listed in Schedule "A" for patent infringement of the U.S. Patent No. 12,285,028 (hereinafter "'028 Patent") and U.S. Patent No. D1,091,236 (hereinafter "'236 Patent" or "'236 Design Patent," collectively with the '028 Patent as "Asserted Patents"). Dkt. 1.

On November 20, 2025, Plaintiffs filed a Schedule "A" identifying dozens of accused online product listings, including Defendants' "Inoviva" product listings, as alleged infringing items. On November 21, 2025, the Court granted Plaintiffs' ex parte motion for a TRO, which froze Defendants' associated online storefronts and payment accounts. Plaintiffs then filed a motion on November 28, 2025 seeking to convert the TRO into a preliminary injunction. A hearing on the preliminary injunction is scheduled for December 5, 2025.

Plaintiffs have not met the stringent requirements for extraordinary injunctive relief set forth in Rule 65(b) and cannot satisfy any of the four factors for a preliminary injunction under the controlling precedent. Plaintiffs' likelihood of success on the merits is nil. The Asserted Patents are likely unenforceable due to Plaintiffs' inequitable conduct in concealing the true inventors when prosecuting the patents before United States Patent and Trademark Office (USPTO). In addition, Plaintiffs have made no concrete showing of irreparable harm, and both the balance of equities and public interest strongly favor dissolving the TRO and denying motion for the preliminary injunction. Defendants therefore request the Court to dissolve the TRO and deny the motion for entry of preliminary injunction.

## II.   STATEMENT OF FACTS

Defendants are two entities jointly operating under the seller identity "Inoviva" on e-commerce marketplaces. Declaration of Xia Yi (Purchasing Manager at Shenzhen Fengkai E-Commerce Co., Ltd.) filed concurrently herewith ("Xia Yi Decl") and Declaration of Chen Jingge (Design Department Manager at Hong Kong Huayun Economic & Trade Co., Ltd.) filed concurrently herewith ("Chen Jingge Decl"), (collectively, "Declarations") ¶4.

The '028 Patent, with Application No. 18/816,489, was filed on August 27, 2024 by SharkNinja Operating LLC (hereinafter "SharkNinja"), which is a continuation of application No. 18/423,299, which is a continuation-in-part of application No. 18/415,817, filed on January 18,

2

MOTION TO DISSOLVE *EX PARTE* TRO AND OPPOSITION TO               CASE NO. 25-cv-25323-RAR
PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION

2024. (Dkt. 22-2). In the Application No. 18/816,489, SharkNinja represented to the USPTO that the inventorship being Michael Lerman, Macrae Benziger, Alexander Mularski, and Vipul Mone (filed concurrently herewith "Exhibit 1").

The '236 Patent, with Application No. 29/987,972, was filed on January 28, 2025 by SharkNinja, which is a continuation of application No. 18/415,817, filed on January 18, 2024. (Dkt. 22-3). In the Application No. 29/987,972, SharkNinja represented to the USPTO that the inventorship being Michael Lerman, Macrae Benziger, Alexander Mularski, Ryan Michienzi and Vipul Mone (filed concurrently herewith "Exhibit 2").

Guangdong Weili Electrical Appliance Co., LTD. ("Weili") was a supplier/manufacturer for SharkNinja since approximately 2023. Declarations ¶5.

SharkNinja entrusted Weili in approximately July 2023 to develop a new slushie machine. *Id.* ¶6.

By September 11, 2023, Weili's team had created a slushie machine design which covers some, if not all, significant parts of the subject matter claimed in both '028 Patent and '236 Patent. *Id*. ¶7

On January 20, 2025, Weili applied to Nanyue Notary Office, Guangzhou City, Guangdong Province, China, for notarization of preservation of evidence. *Id*. ¶9. The Notary Office issued the Notarization (filed concurrently herewith "Exhibit 3") under the Notarization Law of the People's Republic of China and the Rules of Notarization Procedure.

On page 45, the Notarization shows that a document named with fs300_p1.asm has the last modified date on September 11, 2023:



Page 45 of the Notarization (annotation added)

On page 47, the contents of fs300_p1.asm shows the slushie machine having a side baffle configured to extend laterally along the left side or the right side of the vessel chamber, the side baffle further configured to promote slush flow away from the left side or the right side of the vessel chamber and back toward a center of the vessel chamber, which is similar to the design of '028 Patent.

4

MOTION TO DISSOLVE *EX PARTE* TRO AND OPPOSITION TO                CASE NO. 25-cv-25323-RAR
PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION



Page 47 of the Notarization (annotation added)

On page 49 of the Notarization, the contents of fs300_p1.asm shows the collection tray similar to the design of '236 Patent.



Page 49 of the Notarization (annotation added)

Weili disclosed this slushie machine to SharkNinja prior to January 18, 2024. Declarations ¶8. SharkNinja then claimed to have invented the concept of this slushie machine or collection tray when it filed applications for '028 Patent and '236 Patent.

5

MOTION TO DISSOLVE *EX PARTE* TRO AND OPPOSITION TO   CASE NO. 25-cv-25323-RAR
PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION

### III. LEGAL STANDARD

A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

In this Circuit, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' " as to each of the four prerequisites. *Id*. (citing *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998)).

When injunctive relief is sought *ex parte*, Federal Rule of Civil Procedure 65(b)(1) imposes additional mandatory safeguards. A court may issue a TRO without notice to the adverse party only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

### IV. ARGUMENT

#### A. The *Ex Parte* TRO Should Be Dissolved for Failure to Comply with Rule 65(b)(1)(A)

"The requirements of Rule 65(b)(1) are not mere technicalities but establish minimum due process. Thus, [t]o obtain ex parte relief, a party must strictly comply with these requirements." *Dragados USA, Inc. v. Oldcastle Infrastructure, Inc.*, No. 20-CV-20601, 2020 WL 733037, at *2 (S.D. Fla. Feb. 13, 2020)

6

MOTION TO DISSOLVE *EX PARTE* TRO AND OPPOSITION TO   CASE NO. 25-cv-25323-RAR
PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION

Rule 65(b)(1)(A) requires the moving party to set forth specific facts that clearly show a risk of immediate and irreparable injury, loss, or damage that will result before the adverse party can be heard in opposition. (*Pike v. City of Fort Pierce*, No. 25-cv-14267-McCabe, (S.D. Fla. Oct. 7, 2025))

Here, Plaintiffs' Motion for TRO offered only generalized assertions that Defendants might hide assets or evidence if alerted – the sort of boilerplate rationale often invoked in "Schedule A" cases – but provided no particularized facts showing an imminent risk of irreparable harm before Defendants could be heard ("[A]bsent a temporary restraining order without notice, the Defendants can and likely will move any assets from U.S.-based bank accounts and take other steps to evade enforcement, such as redirecting traffic to other online storefronts they control." Dkt. 20). Indeed, other court has rejected the notion that the mere fact a defendant is foreign or uses overseas payment processors justifies dispensing with notice or freezing assets (*Eicher Motors Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 794 F. Supp. 3d 543 (N.D. Ill. 2025), "Schedule A plaintiffs attempt to justify their requests for ex parte TRO relief by suggesting that defendants' alleged counterfeiting is inherently "deceitful and secretive," such that foreign Schedule A defendants are likely to dispose of assets or evidence and are thus primed to violate court orders if they knew they were subject to suit…But that approach cannot be squared with Rule 65(b)'s specificity requirement, because it asks courts to assume what plaintiffs are required to allege as to each defendant…Our system defaults to the principles of transparency and notice, and plaintiffs must justify the extraordinary departure from that rule with specifics.")

Thus, in light of Plaintiffs' failure to comply with the statutory requirements of the Rule 65(b)(1)(A), the TRO should be dissolved.

    **B.**  **The *Ex Parte* TRO Should Be Dissolved for Failure to Comply with Rule 65(b)(1)(B)**

7

MOTION TO DISSOLVE *EX PARTE* TRO AND OPPOSITION TO  CASE NO. 25-cv-25323-RAR
PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION

Rule 65(b) also has a second requirement: certification. Rule 65(b) requires that "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed R. Civ. P. 65(b)(1)(B).

Plaintiff's "failure to provide the information required under Rule 65(b)(1)(B) is fatal to its request for [a temporary restraining order] without notice." *See Dragados USA, Inc. v. Oldcastle Infrastructure, Inc.*, No. 20-CV-20601, 2020 WL 733037 (S.D. Fla. Feb. 13, 2020).

"The normal reason for proceeding without notice is that the opposing side is unable to be found or the identity of the opposing side is unknown. In some limited circumstances, proceeding without notice is also justified upon a showing that notice would lead to the destruction of evidence." *Glob. HTM Promotional Grp., Inc. v. Angel Music Grp., LLC*, No. 06-20441-CIV, 2006 WL 8432722, at *1 (S.D. Fla. Mar. 1, 2006) (citing *First Tech. Safey Sys. V. Depinet,* 11 F.3d 641, 650 (6th Cir.1993)).

Here, Plaintiffs have not adequately certified in writing their efforts to give notice to Defendants in their Motion for TRO, Dkt. 22. This, in itself, warrants denial of their motion under Federal Rule of Civil Procedure 65(b). (*see Evans v. Stubhub, Inc.,* No. 0:25-CV-61708-AUGUSTIN-BIRCH, (S.D. Fla. Aug. 29, 2025) "The Court recommends that the TRO Motion be denied because Plaintiff has not included the certification required under Rule 65(b)(1)(B).")

Thus, at the outset, the TRO should be dissolved because Plaintiffs did not satisfy Rule 65(b)(1)(B)'s requirement of a written certification of why notice should not be given to these Defendants.

8

MOTION TO DISSOLVE *EX PARTE* TRO AND OPPOSITION TO   CASE NO. 25-cv-25323-RAR
PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION

    **C.**  **Plaintiff's Motion for Preliminary Injunction Should Be Denied.**

     **1.**  **Plaintiffs Have Not Demonstrated a Substantial Likelihood of Success on the Merits**

The first and most important factor – likelihood of success on the merits – weighs heavily against an injunction. Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

At the preliminary injunction stage, a movant must show that, in light of the presumptions and burdens that will inhere at trial on the merits, his infringement claim will likely withstand the challenges to the validity and enforceability of the asserted patent. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001).

    **(a)**  **Incorrect inventorship renders '028 and '236 Patents unenforceable**

Here, both '028 Patent and '236 Patent are from the same family of application No. 18/415,817, filed on January 18, 2024. For '028 Patent, the contributions of conception and reduction to practice of the invention described in '028 Patent made by employees of Weili are significant when measured against the invention at least because the "side baffle" feature is amended into the claim 1 in response to the Non-Final rejection and is considered as a patentable feature by the Examiner in the Notice of Allowance issued on December 2, 2024. For '236 Patent, the employees of Weili also made some significant contributions of conception and reduction to practice of the invention described in '236 Patent as to the shape of the collection tray.

Weili disclosed this slushie machine to SharkNinja prior to January 18, 2024. Declarations ¶8. SharkNinja then claimed to have invented the concept of this slushie machine when it filed applications for '028 Patent and '236 Patent. (Exhibit 1 and Exhibit 2). SharkNinja's statement was made with deceptive intent as it is unlikely for SharkNinja to have believed the individuals it

9

MOTION TO DISSOLVE *EX PARTE* TRO AND OPPOSITION TO  CASE NO. 25-cv-25323-RAR
PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION

represented to USPTO to represent the correct inventorship of the subject matter claimed in the applications, when SharkNinja knew that some employees of Weili invented key features claimed in the applications prior to January 18, 2024.

Plaintiffs' false claims of inventorship were material misrepresentations, because the Asserted Patents would not have issued to Plaintiffs or at least not solely to Plaintiffs but for the false representations of inventorship.

### (b) Potential prior commercial sale may invalidate both '028 and '236 Patents under 35 U.S.C. § 102

Because Weili invented the inventions described in '028 and '236 Patents at least back in September 11, 2023, before the earliest priority date January 18, 2024 of the '028 and '236 Patents. With further discovery, Weili's prior commercial sale may invalidate both '028 and '236 Patents under 35 U.S.C. § 102.

Therefore, the Plaintiffs' infringement claim will not withstand the challenges to the enforceability of the Asserted Patents as the patents are tainted by Plaintiffs' inequitable conduct and the potential prior sale invalidity. At a minimum, the questionable enforceability and invalidity of the Asserted Patents defeat any present likelihood of Plaintiffs' success on the merits (*see Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 339, 119 S.C.t. 1961, 1978, 144 L. Ed. 2d 319 (1999), "Plaintiffs with questionable claims would not meet the likelihood of success criterion.").

Accordingly, this factor decisively favors Defendants.

### 2. Plaintiffs Have Not Shown Irreparable Harm Absent an Injunction

Plaintiffs have likewise failed to carry their burden on the second factor – irreparable harm. To justify an injunction, Plaintiffs must do more than allege infringement; they must present proof that, without preliminary relief, they are likely to suffer injury that is actual and imminent, not

remote or speculative, and that cannot be remedied by monetary damages. "A party seeking a preliminary injunction must establish that it is likely to suffer irreparable harm without an injunction." *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022). "The mere possibility or speculation of harm is insufficient." *Id.* "As we have emphasized on many occasions, the asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore, 234 F.3d* 1163, 1176 (11th Cir. 2000)) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville,* 896 F.2d 1283 (11th Cir. 1990)).

Here, in their TRO and preliminary injunction motion, Plaintiffs rely on generic assertions that Defendants' sales of "knockoff" slush makers will cause lost market share, lost profits, and damage to customer goodwill for SharkNinja (Dkt. 37). But Plaintiffs offer no concrete evidence to substantiate these claims. They have not provided sales data or consumer surveys showing any actual erosion of SharkNinja's sales or reputation attributable to the Inoviva units sold. Instead, Plaintiffs rest on conclusory statements that "Defendants' ongoing sale of Infringing Products is causing SharkNinja brand equity depletion, loss of market share, and loss of exclusivity in the very market it created". (Dkt. 37). Such statements are the kind of "mere speculation" that courts deem insufficient.

By statute, a prevailing utility patent owner can recover remedy under 35 U.S.C. § 284 and a prevailing design patent owner can recover either remedy under 35 U.S.C. § 284 or under 35 U.S.C. § 289. Given the available remedy under 35 U.S.C. § 284, utility patent generally does not satisfy irreparable harm. *Enpat, Inc. v. Budnic, 773 F. Supp. 2d* 1311, 1317 (M.D. Fla. 2011) (rejecting a request for permanent injunction because plaintiff cannot show monetary damages are inadequate.) Thus, '028 Patent does not support an injunctive relief.

The '236 Design patent is directed to "collection tray" for a drink maker. The collection tray amounts to about 1% of the overall cost of the accused slushie machine. Defendants have

11

estimated the profit from selling the accused slushie machine is about four hundred eighty thousand dollars ($480,000). Therefore, the potential profit from selling the collection tray described in the '236 Design patent is about five thousand dollars ($5,000.00). Defendants will voluntarily put the bond in the amount of five thousand dollars ($5,000.00), which is calculated as a reasonable share of the total profit of the Accused Products. In the unlikely event that the Court finds the Asserted Patents are enforceable, Plaintiff can be adequately compensated by damages.

Accordingly, this factor decisively favors Defendants.

### 3.     The Balance of Hardships and Public Interest Favor Defendants

The balance of hardships strongly favors dissolving the TRO and denying further injunctive relief. On Plaintiffs' side of the scales, the only potential harm in not issuing an injunction is that SharkNinja might face a few more weeks or months of limited competition from Defendants' product, which can later be remedied by damages if Plaintiffs ultimately prevail on the merits. Plaintiffs' SLUSHi has been on the market for a while and they have not shown that a continuation of lawful competition will cause anything beyond incremental economic loss. By contrast, the harm to Defendants from a wrongful or prolonged injunction is devastating and irreversible. The TRO has already shut down Defendants' business operations by freezing their seller accounts and funds during one of the most important holiday seasons. Each day under the injunction chokes off revenue, drives away customers, and could lead to permanent loss of distribution channels. Thus, the injunction is strangling Defendants' entire enterprise. This far outweighs any marginal harm Plaintiffs allege.

Finally, the public interest does not favor a preliminary injunction in this case. Generally, the public has an interest in the enforcement of legitimate patent rights, but it also has a countervailing interest in ensuring that monopolies are not wrongfully extended to patent holders who have not earned them, such as by failing to name true inventors. See *Therasense, Inc. v. Becton*

12

MOTION TO DISSOLVE *EX PARTE* TRO AND OPPOSITION TO                    CASE NO. 25-cv-25323-RAR
PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION

*Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) ("The principles set down by the Court in *Keystone, Hazel Atlas*, and *Precision Instrument* can be summarized as follows: (1) the public has a special interest in seeing that patent monopolies "spring from backgrounds free from fraud or other inequitable conduct"; (2) as a corollary to that public interest, patent applicants "have an uncompromising duty to report to [the Patent Office] all facts concerning possible fraud or inequitableness underlying the applications"; (3) all facts relevant to such matters must be submitted to the Patent Office, "which can then pass upon the sufficiency of the evidence"; (4) the intentional failure to disclose to the Patent Office that a patent application is tainted by fraud is sufficient cause to justify not enforcing the patent; and (5) the misconduct in question need not constitute actionable fraud; it is sufficient if the conduct constitutes a willful act that violates standards of equitable conduct in dealing with the Patent Office.").

Here, given the serious questions about SharkNinja's candor before the PTO, the public interest leans against using the Court's equitable power to enforce these patents at this stage. The public is not served by injunctions that enforce patents likely obtained by inequitable conduct.

## V.     CONCLUSION

For the reasons set forth above, the Defendants respectfully request that the Court dissolve the TRO and deny the Motion for entry of preliminary injunction.

DATED: December 3, 2025

Respectfully submitted,

By: */s/ Emily M. Heim*
Emily M. Heim (FL Bar No. 1015867**)**
733 5th Ave N, #3, St. Petersburg, FL 33701.
Telephone: (771) 777-8280
Email: emilymarieheim540@gmail.com

*Attorney for Defendants Shenzhen Fengkai E-Commerce Co., Ltd. and Hong Kong Huayun Economic & Trade Co., Ltd.*