UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-25323-RAR

SHARKNINJA OPERATING LLC, and
SHARKNINJA SALES COMPANY

    Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.

_____/

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXTEND TEMPORARY RESTRAINING ORDER

Acting via their designated legal representatives, Defendants Gasbye, Fohere, VNN, PAMBEE, and WIE (collectively "Third Subset of Defendants") hereby file this Response to Plaintiffs' Motion to Extend Temporary Restraining Order. (Dkt. No. 82). There is no good cause to extend the Temporary Restraining Order ("TRO") under Fed. R. Civ. P. 65(b). The Court should let the current TRO (Dkt. No. 26) issued on November 21, 2025, expire as scheduled on December 5, 2025. In the alternative, the Third Subset of Defendants respectfully request that any continued TRO be narrowly tailored in scope, as set forth herein.

### I.    PROCEDURAL HISTORY

Plaintiff initiated this action by filing its Complaint on November 14, 2025, asserting claims of patent infringement against 58 defendants and 110 products, relating to Plaintiff's U.S. Patents Nos. 12,285,028 and D1,091,236. (Dkt. No. 1). It is significant that the Complaint includes only generalized accusations against all defendants without any particularized factual assertions or specific statements directed to Third Subset of Defendants.

On November 18, 2025, Plaintiff filed its *Ex Parte* Motion for Entry of Temporary Restraining Order (Dkt. No. 15), which was denied by this Court (Dkt. No. 20). Subsequently, Plaintiff filed a Renewed Motion for TRO (Dkt. No. 22) on November 20, which was granted by this Court (Dkt. No. 26) the next day. On November 28, Plaintiffs filed Motion for Preliminary Injunction ("PI Motion"), asking the Court to convert the TRO into a Preliminary Injunction ("PI"). (Dkt. No. 37). This Court ordered and set a PI hearing on December 5, 2025. (Dkt. No. 39). The hearing was subsequently cancelled. (Dkt. No. 62).

As of December 3, 2025, six opposing motions have been filed on behalf of 22 named defendants and 9 third-party respondents. (Dkt. Nos. 43, 58, 60, 63, 70, 73). On December 4, 2025, Plaintiffs filed Plaintiffs' Motion to Extend Temporary Restraining Order. (Dkt. No. 82).

## II.  ARGUMENT

A TRO expires 14 days after issuance "…unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(1). For the following reasons, there is no good cause to extend the current TRO.

### A. Plaintiffs' Inadequate Investigation Is not a Good Cause for Extension of TRO.

The temporary restraining order should expire as scheduled because there is no justification for continued extraordinary relief. Having chosen to seek emergency injunctive relief based on cursory allegations, Plaintiffs cannot now claim they need additional time under the protection of a TRO.

Plaintiffs initiated this action with generic, boilerplate allegations that fail to differentiate among 58 separate defendants, each with distinct products, business operations, and potential defenses. This approach suggests that Plaintiffs conducted minimal, if any, individualized investigation into whether each defendant actually engaged in the alleged conduct. The Federal Rules require a reasonable inquiry into the factual and legal basis for claims before filing. Fed. R. Civ. P. 11(b)(3). Plaintiffs' decision to bypass this fundamental obligation in favor of mass litigation

tactics should not be rewarded with an extension of extraordinary relief.

The opposition from numerous defendants underscores the consequences of Plaintiffs' inadequate pre-filing diligence. Rather than targeting actual infringers through careful investigation, Plaintiffs appear to have relied on superficial criteria to sweep in as many defendants as possible, hoping that the burden of litigation would force settlements. Now faced with defendants willing and able to contest these allegations, granting an extension TRO will effectively award Plaintiffs with additional time to conduct the investigation they should have completed before seeking emergency relief.

The "underlying purpose" of a TRO is "preserving the status quo and preventing irreparable harm'' until it has an opportunity to rule on the merits. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). If Plaintiffs lacked sufficient evidence to support individualized allegations against each defendant at the time of filing, they should not have sought—and the Court should not extend—the extraordinary remedy of *ex parte* injunctive relief.

## B. Defendants Suffer Irreparable Harm if TRO Is Extended

The Court should allow the temporary restraining order to expire because its continuation inflicts severe and irreparable harm on Defendants during the most critical selling period of the year, while Plaintiffs face no corresponding urgency that justifies maintaining these extraordinary restraints.

The timing of the TRO's issuance on November 21—immediately before Black Friday and the holiday shopping season—could not be more devastating for online sellers. For most e-commerce businesses, Black Friday is the most important revenue-generating season, with many small and medium-sized sellers depending on holiday sales to sustain their operations throughout the year. The TRO's sweeping provisions, which delist products and freeze Defendants' funds, effectively shut down Defendants' businesses during this critical period. Each passing day

compounds this harm exponentially as defendants miss irreplaceable holiday sales opportunities while their competitors capture market share that may never be recovered. This is particularly inequitable given that Plaintiffs' bond amount is only $ 5,000 USD, (Dkt. No. 26 at 7), in contrast to the millions of dollars amount frozen from Defendants' account.

On the other hand, Plaintiff presents no competent evidence of irreparable harm of lost sales or market share.  A "generalized concern" of future frustration of collection efforts is inadequate to support a broad asset freeze. *Wang v. Partnerships and Unincorporated Associations Identified on Schedule A*, 2024 WL 3402460 at *3-4 (M.D. Fla. 2024).

**C.  Plaintiffs' Enforcement Scheme Undermines Judicial Efficiency**

Plaintiffs filed this action using the now-familiar Schedule A format, naming 58 defendants based on boilerplate allegations without any individualized investigation or particularized factual basis for each defendant. "But the efficiency of Schedule A depends upon the complaint applying broadly to each defendant." *Eicher Motors Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 794 F. Supp. 3d 543, 552 (N.D. Ill. 2025). Schedule A complaints, like this one, ordinarily are drafted at a high level of generality (bordering on boilerplate) and lack specifics as to each defendant or how the defendants relate to one another. *Id.* at 546. This scattershot approach presumes that the sheer volume of defendants and the burden of defending will force settlements regardless of merit. However, as the six opposing motions filed on behalf of 22 defendants suggest, the legal and factual issues underlining this case are highly complicated and individualized. *See, e.g.* Dkt. No. 43 (arguing Plaintiffs' TRO request lacks particularity under Rule 65); Dkt. No. 60 (raising issues of service of process); Dkt No. 63 (raising issues of personal jurisdiction and patentability); Dkt. No. 70 (raising issues of incorrect inventorship).

The cancellation of the preliminary injunction hearing and scheduling of a case management conference reflects the complexity created when numerous defendants mount substantive defenses to generic allegations. Extending the TRO would only perpetuate the inefficiencies created by

Plaintiffs' overreaching strategy, requiring the Court to manage what are essentially dozens of distinct disputes under the umbrella of a single case.

Defendants' motions reveal that Plaintiffs cast too wide a net, ensnaring legitimate businesses alongside any actual infringers. Judicial economy demands that Plaintiffs be required to prosecute their claims through normal litigation procedures, with particularized allegations and evidence against each defendant, rather than maintaining broad injunctive relief based on boilerplate assertions.

**D. In Any Event this Court Orders Extension of TRO, Each Defendant's Frozen Fund Shall Not Exceed Its Infringing Sale Revenue.**

Should the Court determine that some form of restraint remains necessary, equity demands that any asset freeze be limited to funds actually connected to the alleged infringement rather than defendants' entire business revenues. *CFTC v. E-Metal Merchants, Inc.,* 2006 WL 8432005 at *7 (S.D. Fla 2006) (asset restraints should not include any funds not reasonably related to the ultimate relief requested by Plaintiff); *Tang v. Individuals, etc.,* 2022 WL 1664116 at *3 (S.D. Fla. 2022) (plaintiff did not meet its burden for broad asset freeze in view of the speculative and generalized nature of alleged irreparable injury). The current TRO's unlimited freeze of all funds constitutes an impermissible penalty that exceeds any conceivable remedy Plaintiffs could obtain if successful on the merits.

The present asset freeze operates as a de facto shutdown of Defendants' entire businesses by restricting access to all funds, including revenues from non-accused products and services. This approach violates the principle equity which requires that injunctive relief should be "narrowly tailored to fit specific legal violations" and "should not impose unnecessary burdens on lawful activity." *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994). Even assuming Plaintiffs could prove infringement, they would only be entitled to damages or profits attributable to the specific accused products—not Defendants' entire revenue streams.

5

The proper measure for any asset restraint in a case involving alleged infringement is the revenue attributable to the accused products, not the Defendants' total assets. Implementing a limited freeze based on accused product revenues is both practical and precedented. *See, e.g. Enlai Zhu v. P'ships Unincorporated Ass'ns Identified on Schedule "A"*, No. 25-cv-22251, ECF No. 55, at 7 (ordering "[t]he asset restraint should be limited to the Restricted Funds representing infringing sales for the following 70 Defendants listed in ECF No. 36"). This framework protects Plaintiffs' interests in securing potential recovery while preventing the irreparable harm to defendants' lawful operations.

### III.  CONCLUSION

For these reasons, the Court should allow the temporary restraining order to expire as scheduled. Alternatively, if the Court extends any form of TRO, it should modify the asset freeze provisions to limit the restricted funds for each defendant to revenues actually derived from alleged infringing sales.

| | |
|---|---|
| December 4, 2025 | Respectfully submitted.<br><br>By: /s/ Adrienne Love/<br>Adrienne C. Love (Fla. Bar No. 85956)<br>**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**<br>106 East College Avenue, Suite 700<br>Tallahassee, FL 32301<br>Telephone: (850) 329-4847<br>E-mail:  alove@stearnsweaver.com<br><br>J. Benjamin Bai (*pro hac vice*)<br>Texas Bar No. 24001675<br>**King & Wood Mallesons LLP**<br>500 Fifth Avenue, 50th Floor<br>New York NY 10110<br>Telephone: (212) 319-4755<br>E-mail: benjamin.bai@cn.kwm.com<br><br>Haolu Feng (*pro hac vice*)<br>D.C. Bar No. 90001026<br>**King & Wood Mallesons**<br>17th Floor, One ICC, Shanghai ICC<br>999 Middle Huai Hai Road, Xuhui District<br>Shanghai 200031 China<br>Telephone: (206) 499-2956<br>Email: harry.feng@cn.kwm.com<br><br>Yang Guo (*pro hac vice*)<br>New York Bar No. 5897251<br>**King & Wood Mallesons**<br>17th Floor, One ICC, Shanghai ICC<br>999 Middle Huai Hai Road, Xuhui District<br>Shanghai 200031 China<br>Telephone: (628) 999-0922<br>Email: guoyang5@cn.kwm.com<br><br>*Attorneys for Defendants* |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 4, 2025, a true and correct copy of the foregoing was electronically filed using CM/ECF, which serves electronic notice on all counsel of record and registered CM/ECF users.

By: /s/Adrienne Love<br>
Adrienne Love