UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 1:25-cv-25323-RAR

SHARKNINJA OPERATING LLC, et al.,

Plaintiffs,
v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,
Defendants.
_____/

### XU DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants IceSwirls, Tefoqu, Wongic, Dutepa, Auriswell (on Amazon), Auriswell (on Walmart), and Kelteroom (collectively, "Defendants"), by and through undersigned counsel, respectfully oppose Plaintiffs' Motion for Preliminary Injunction [ECF No. 037, as supplemented by ECF Nos. 119, 119-1, and 119-2]. Plaintiffs allege that IceSwirls, Tefoqu, Wongic, and Dutepa infringe U.S. Patent No. 12,285,028 (the "'028 Patent," titled "Mixing Vessel Baffles for a Drink Maker", filed August 27, 2024 and issued April 29, 2025), and that Auriswell (on Amazon), Auriswell (on Walmart), and Kelteroom infringe the '028 Patent and U.S. Design Patent No. D1,091,236 (the "'236 Patent," titled "Collection Tray for a Drink Maker", filed January 28, 2025 and issued September 2, 2025), through the sale of the accused products identified in the Complaint.

In addition, undersigned counsel also appears on behalf of certain third-party respondents whose storefronts were swept into the TRO-related restraints despite not being named as defendants - Grano Chef, Oplace, POFABIK, BLIZZEE, NLNYA, and Nyzgax (the "Third-Party Respondents") - and likewise opposes any preliminary injunctive relief as to them. Because

1

Plaintiffs' PI submissions [ECF Nos. 37, 119, 119-1, and 119-2] do not present any infringement analysis directed to the Third-Party Respondents, Plaintiffs necessarily fail to carry their PI burden as to those entities on this record. Accordingly, the arguments below focus on the named Defendants. In support, Defendants state as follows:

## INTRODUCTION

Plaintiffs seek the extraordinary remedy of a preliminary injunction against a subset of Schedule A defendants based on the '028 Patent and the '236 Patent.

As to the '028 Patent, Plaintiffs cannot demonstrate a likelihood of success on the merits because the scope and application of the key claim term "asymmetric wall portion" are materially disputed on this preliminary record. Plaintiffs' own filing at ECF No. 119 reflects inconsistent descriptions of that limitation on page 6 and page 8, underscoring a claim-scope ambiguity that precludes a PI-stage finding of a likelihood of success on the merits. ECF No. 119. In addition, a prior art reference raises a substantial question regarding the validity of the asserted claim(s) of the '028 Patent under 35 U.S.C. § 103.

As to the '236 Patent, Plaintiffs likewise cannot demonstrate a likelihood of success on the merits. The asserted design is substantially dictated by utilitarian considerations and therefore lacks protectable ornamental scope; the relevant prior art discloses the design features Plaintiffs rely upon; and, when the asserted design is viewed as a whole in light of that prior art, the accused products present materially different overall visual impressions. For these independent reasons, Plaintiffs fail to meet their preliminary-injunction burden with respect to the '236 Patent.

Copies of the storefront pages of Defendants and Third-Party Respondents are attached as Exhibit A and Exhibit B, respectively.

In addition, Plaintiffs have not shown irreparable harm, and the balance of equities and public interest do not support extraordinary relief on this limited record.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy" that is never awarded as of right.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs must establish: (1) a likelihood of success on the merits; (2) irreparable harm absent an injunction; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Id*. at 20.

## ARGUMENT

### I. PLAINTIFFS CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS

#### A. Plaintiffs cannot show a likelihood of success on the '028 Patent

1. A PI on a utility patent requires a PI-sufficient element-by-element showing under a proper construction.

Utility-patent infringement requires an element-by-element showing that the accused product meets each and every limitation of at least one asserted claim as properly construed. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Here, although ECF No. 119-1 quotes Claim 1 and presents annotated product images, it largely asks the Court to infer satisfaction of each limitation from arrows, labels and pictures, without providing a clear written explanation of how the Accused Products meet the claim language. ECF No. 119-1. On this preliminary record - where claim scope and application are disputed - such a largely visual presentation does not reliably establish likely success on the merits.

2. The key limitation "asymmetric wall portion" is indefinite or, at minimum, claim-scope ambiguous, defeating PI-level likelihood of success.

Claim 1 of the '028 Patent recites "at least one asymmetric wall portion located at at least one position near a front portion or a top portion of the vessel chamber." ECF No. 1-1. The term "asymmetric wall portion" [ECF No. 1-1] is overly vague. A person of ordinary skill in the art (POSA) would not understand what portion of the vessel chamber is encompassed by an "asymmetric wall portion" [ECF No. 1-1] described only by a general location, nor relative to what reference the alleged "asymmetry" is to be assessed.

Because the meaning of "asymmetric wall portion" is indefinite, the further limitation that "the at least one asymmetric wall portion comprises a side baffle" [ECF No. 1-1] is likewise indefinite. The specification of the '028 patent does not provide any explanation or definitional

3

guidance for the term "asymmetric wall portion" [ECF No. 1-1].

Plaintiffs' own submissions confirm this ambiguity. In the ECF No. 119 filing, on page 6, Plaintiffs interpret "asymmetric wall portion" as "the asymmetric wall portion (i.e., is one wall different than the other)", and on page 8, Plaintiffs further interpret "asymmetric wall portion" as "The asymmetry of the vessel is clear - the left side is not the same as the right side." ECF No. 119. These two formulations are not the same: the former treats asymmetry as a property of an individual wall portion, while the latter treats asymmetry as a property of the vessel as a whole.

Whether viewed from the claim language itself or from Plaintiffs' own inconsistent interpretations, the scope of "asymmetric wall portion" is indefinite. At a minimum, this unresolved claim-scope dispute precludes a PI-level finding that Plaintiffs are likely to succeed on the merits of their '028 Patent infringement theory.

3. Even apart from the ambiguity of Claim 1, Plaintiffs cannot show PI-level likelihood of success on the '028 Patent because, on this preliminary record, a prior art reference creates, at minimum, a substantial question as to validity. Defendants' Prior Art 1 Analysis Chart (Table 1) identifies EP3305090B1 ("Prior Art 1", attached as Exhibit C) and maps it against the limitations of Claim 1 of the '028 Patent, showing that the alleged inventive features Plaintiffs rely upon are disclosed or rendered obvious by the prior art. At minimum, this creates a substantial question as to whether Claim 1 would have been obvious to a person of ordinary skill, which precludes a finding of PI-level likely success.

EP3305090B1, titled "Machine for making liquid or semi-liquid products", was filed on October 3, 2017 and published on April 8, 2020, constituting prior art. Its IPC classification includes A23G9/04, which relates to "a machine for making liquid or semi-liquid products". This demonstrates that EP3305090B1 and the '028 Patent in question belong to the same technical field.

Table 1: Prior Art 1 Analysis Chart

| Claim 1 of the '028 Patent | Prior Art 1: EP3305090B1 Specification | Conclusion |
| --- | --- | --- |

| | | |
|---|---|---|
| A mixing vessel for a frozen drink maker, the mixing vessel comprising: | [0001] This invention relates to a machine for making liquid or semi-liquid products.<br>[0021] According to another aspect, the first processing container 2 for processing a basic liquid or semi-liquid product comprises a radially protruding longitudinal portion 2A defining a zone (between the front section and the rear section of the machine) for recirculating the basic liquid or semi-liquid product when the rotary stirrer 5 is set in rotation. | Disclosed |
| a vessel chamber configured to receive a drink product to be processed; | [0019] The machine 1 for making liquid or semi-liquid products comprises:<br>- a first processing container 2 for processing a basic liquid or semi-liquid product and defining a processing chamber 3 (or batch freezing chamber 3);<br>- a cooling cylinder 20 mounted inside the first container 2;<br>- a rotary stirrer 5 mounted inside the chamber 3 (that is, inside the first processing container 2) and outside the cooling cylinder 20; | Disclosed |

| | | |
|---|---|---|
| the vessel chamber comprising a front, a rear, a right side, a left side, a top, and a bottom, | [0021] According to another aspect, the first processing container 2 for processing a basic liquid or semi-liquid product comprises a radially protruding longitudinal portion 2A defining a zone (between the front section and the rear section of the machine) for recirculating the basic liquid or semi-liquid product when the rotary stirrer 5 is set in rotation. | Disclosed<br><br>While Prior Art 1 does not explicitly label "front, rear, right side, left side, top, and bottom", its longitudinally extended container naturally includes these orientations, as evidenced by the main axis from rear to front (with dispensing at the front) and a substantially cylindrical form with top/bottom implications in a horizontal setup. A POSA, familiar with elongated processing chambers in frozen drink machines, would readily interpret Prior Art 1's design to include these standard directional features, motivated by practical assembly and flow direction needs (e.g., preventing front accumulation [0025]). This nominal labeling difference does not support a finding of likely validity, making the element obvious and bolstering an invalidation argument by demonstrating routine engineering application of prior |

| | | art geometry. |
|---|---|---|
| the vessel chamber comprising at least one asymmetric wall portion proximate to at least one of the front or the top of the vessel chamber, and the at least one asymmetric wall portion configured to promote slush flow within the vessel chamber; | <br>**Figure 1: Vessel-like Container of Prior Art 1 (View A)**<br>**Exhibit C p. 11**<br>[0025] This recirculating action allows optimum, uniform processing of the product, preventing the product<br>from accumulating in the front zone (which would result<br>in non-uniform temperature).<br>[0028] According to another aspect, the first processing container 2 has, in transverse cross section, a first portion 2B which is substantially circular and a second<br>portion 2A, connected thereto, which is irregular in shape<br>(that is, the aforementioned radially protruding, longitudinal portion 2A) and which defines an external extension of the first portion 2B. | Disclosed<br><br>Grammatically, "asymmetric wall portion" indicates that "asymmetric" modifies the wall portion; in context, this is reasonably understood as a wall portion containing a side baffle. In ECF No. 119, the Plaintiffs demonstrate "asymmetric wall portion" as "meaning a wall that differs from other walls". Figures 2 and 3 show that the inwardly recessed wall portion differs from the other wall portions it connects to. At minimum, Prior Art 1 raises a substantial question as to whether it discloses "at least one asymmetric wall portion". Prior Art 1 has already disclosed a second portion 2A that promotes uniform product treatment and prevents product accumulation. Therefore, the function of the second portion 2A disclosed in Prior Art 1 is substantially the same as "promote slush flow within the vessel chamber". |

| | | |
|---|---|---|
| | | **Figure 3: Vessel-like Container of Prior Art 1 (View C)** Exhibit C p. 10 |
| wherein the at least one asymmetric wall portion comprises a side baffle configured to extend laterally along the left side or the right side of the vessel chamber, | **Figure 2: Vessel-like Container of Prior Art 1 (View B)** Exhibit C p. 11 | Disclosed<br><br>Prior Art 1 discloses a second portion 2A, In Figure 2 and Figure 3, which can be seen that the inwardly recessed part of its side wall also extends laterally to the left or right side. |
| the side baffle further configured to promote slush flow away from the left side or the right side of the vessel chamber and back toward a center of the vessel chamber. | [0024] In effect, the longitudinal portion 2A defines a compartment within which the product can move (longitudinally, that is, along the axis of the rotary stirrer 5, from the front section to the rear section) under the pushing | Disclosed<br><br>Since the second portion 2A disclosed in Prior Art 1 extends from the edge region toward the center of the accommodation chamber, it would redirect the slush from the edge region back |

| | action of the rotary stirrer 5.<br><br>[0025] This recirculating action allows optimum, uniform processing of the product, preventing the product<br><br>from accumulating in the front zone (which would result<br><br>in non-uniform temperature). | to the center of the accommodation chamber to achieve uniform distribution. Therefore, the function of the second portion 2A disclosed in Prior Art 1 is consistent with promoting the backflow of slush to the center of the vessel chamber, which should be viewed as a "side baffle". |

The prior art discloses all of the technical features of Claim 1 of the '028 Patent. Accordingly, Claim 1 lacks novelty and fails to satisfy 35 U.S.C. § 102. Even if minor differences were found, Claim 1 would nevertheless have been obvious over the prior art and therefore fails to satisfy 35 U.S.C. § 103.

4. Plaintiffs' infringement theory as to the '028 Patent is further deficient because it relies exclusively on static images to purportedly establish a claim element that is inherently dynamic.

On page 6 of Plaintiffs' Motion for Entry of Preliminary Injunction [ECF No. 37], Plaintiffs seek to establish infringement based on the alleged flow of slush by using static images. The asserted "flow" or directional movement of slush material within the vessel chamber describes a process that occurs during operation, not a static structural condition observable from still photographs. Plaintiffs' submissions consist solely of isolated images and visual depictions that, by their nature, cannot demonstrate how any material actually flows, returns, or circulates during use. Where infringement depends on an asserted operational behavior rather than a fixed structure, static images are insufficient to carry Plaintiffs' PI-stage burden. On this record, Plaintiffs have not presented evidence capable of showing that the accused products perform the claimed flushing behavior, further precluding a finding of likely infringement.

**B. Plaintiffs cannot show likelihood of success on the '236 Patent**

**(asserted only against Auriswell (on Amazon), Auriswell (on Walmart), and Kelteroom)**

1. The governing test for design patent infringement is the overall visual impression to an ordinary observer in light of the prior art, not a feature-by-feature approach.

Design-patent infringement is determined by whether, in light of the prior art, an ordinary observer would view the accused design as substantially the same overall as the patented design - such that the observer would be deceived into purchasing one supposing it to be the other. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677–78 (Fed. Cir. 2008) (en banc).

Under *Egyptian Goddess*, the analysis centers on the overall visual impression conveyed by the designs, rather than on a feature-by-feature comparison divorced from the design as a whole. *Id.* at 677.

2. The design of the '236 patent constitutes a functional design; therefore, the design forming the basis of plaintiffs' rights should be invalid.

A design patent protects ornamental, not functional, aspects of a product. Where functional considerations constrain a design, similarities attributable to those constraints do not meaningfully inform the infringement inquiry. See *Egyptian Goddess*, 543 F.3d at 680.

The design of the '236 patent constitutes a utilitarian functional design. Its overall shape is constrained by the practical functions of the tray itself, is essential to the practical use of the product, and provides utilitarian advantages.

(1) According to *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29–30 (2001), where a design's utilitarian features are claimed and disclosed in a utility patent, that patent constitutes strong evidence that the features are functional, and courts need not consider alternative designs. As discussed below, Plaintiffs' utility patent discloses the utilitarian advantages of the claimed design. Accordingly, the asserted design is functional and not entitled to appearance-based protection, and Plaintiffs cannot establish design-patent infringement.

The priority parent application identified in the priority chain of the '236 Patent is U.S. Utility Patent Application US2025/0234886 A1 (Application No. 18/415,817, attached as Exhibit D), and its related family application WO2025170600A1 likewise involves the same tray design. Based on the disclosures in their specifications, those applications demonstrate that the tray

design possesses utilitarian functionality.

Specifically, the specification of US20250234886A1 discloses as follows:

"[0005] The disclosure describes a removeable collection tray that may be disposed within the unit underneath the vessel/evaporator. The tray may be configured to collect condensation dripping off the vessel or spills resulting from filling the vessel."

"[0007] In some implementations, a removeable collection tray for a frozen drink maker includes a collection chamber for receiving liquid, and a handle. The collection chamber is configured to be removably inserted into a slot in a housing of the frozen drink maker adjacent an evaporator. In some implementations, the collection chamber includes an evaporator-facing surface. The evaporator-facing surface has a shape corresponding to an outer surface of the evaporator. In some implementations, the shape is semi-cylindrical. In some implementations, a user-facing surface of the handle is flush with a user interface of the housing when the collection chamber is fully inserted into the slot. In some implementations, an underside of the handle has one or more ribs for adding structural integrity between the handle and the collection chamber."

"[0022] There is also a need for the ability to reduce the size of the drip tray by allowing the user to collect the condensation near the mixing vessel, improving the aesthetic appearance and overall footprint of the frozen drink maker."

As can be seen from these disclosures, the design of the '236 patent is dictated by utilitarian considerations associated with the use of the product - whether from the perspective of its basic functional role, its required conformity with the shape of the evaporator, or its contribution to improving the overall footprint of the product. The asserted design therefore constitutes a functional design.



Figure 4: Outside View of Plaintiffs'    Figure 5: Accused Product of Auriswell

Drink Maker                              ECF No. 119-1 p.37

ECF No. 1-2 p.2



Figure 6: Accused Product of Kelteroom

ECF No. 119-1 p.40

    As observed in both Plaintiffs' product and Defendants' Accused Products, the "tray" protected by the design of the asserted patent is assembled beneath the evaporator and serves the functions of supporting the evaporator and collecting condensation droplets. Given these functions, the claimed tray design necessarily must correspond to and enclose the lower edge of the evaporator. Accordingly, configuring the claimed tray design as an axially elongated, open-top trough is dictated by its utilitarian function. Likewise, configuring the upper edge of the claimed tray design as an arcuate surface corresponding to the lower edge of the container

1

housing is also dictated by its utilitarian function. Further, configuring the overall claimed tray design in an arcuate shape with upwardly curved ends is likewise based on utilitarian considerations of saving internal space and reducing the overall size of the product.

(2) Plaintiffs promote their own SLUSHi drink maker product on their Amazon storefronts as having the advantage of being "easy to clean", and Plaintiffs further attribute this advantage to the tray design in Paragraph 35 of the Complaint [ECF No.1], alleging that "The '236 Design Patent contributes to the sales of SLUSHi as the collection tray as claimed aids a user in cleaning and maintaining the SLUSHi unit, which contributes to the SLUSHi's innovative user-friendly and home-use applications". ECF No. 1. This allegation further underscores that the features Plaintiffs emphasize are closely tied to functional advantages rather than purely ornamental design choices.



**Figure 7: Amazon Storefront of Plaintiffs' SLUShi product**

https://www.amazon.com/Ninja-FS301-Professional-RapidChill-Technology/dp/B0D2LZYQ2M (attached as Exhibit E)



FIG. 1

35. The '236 Design Patent contributes to the sales of SLUSHi as the collection tray as claimed aids a user in cleaning and maintaining the SLUSHi unit, which contributes to the SLUSHi's innovative user-friendly and home-use applications.

**Figure 8: Paragraph 35 of the Complaint [ECF No. 1].**

(3) The number of alternative designs for the asserted design is limited. As described in subsection (1) above, the shape of the claimed tray design is constrained by the shape corresponding to the outer surface of the evaporator and by its functions. In order for competitors to achieve the basic functions and maintain compatibility with the overall device, the design space for the shape of the claimed tray design is limited, and differentiation can only be achieved through minor variations in design details.

Accordingly, because the asserted design in the '236 Patent is substantially dictated by utilitarian considerations, Plaintiffs cannot show a likelihood of success on the merits of design-patent infringement at the preliminary-injunction stage.

3. In light of the prior art, the protectable scope of the asserted design is narrow.

The prior art further limits the scope of the asserted design in the '236 Patent. Defendants identify prior design disclosures showing tray-like structures with arcuate grooves or panels for supporting a cylindrical vessel, demonstrating that certain arcuate aspects of the overall tray concept were already known before the application date. These disclosures include, for example, CN219047235U ("Prior Art 2", Chinese original attached as Exhibit F, English translation attached as Exhibit G, titled "Ice Cream Maker and Refrigerator," filed November 23, 2022 and published May 23, 2023) which depicts a tray-like bottom housing configured to support a cylindrical vessel.

When the asserted design is viewed against this prior art, its protectable scope is confined to

specific panel-contour details, including:

(1) the panel's width-to-height ratio; and

(2) a crescent-like panel shape formed by upper and lower non-concentric arcuate edges.

Under *Egyptian Goddess*, Plaintiffs therefore must show that the Accused Products appropriate these particular distinguishing ornamental features, as perceived by an ordinary observer familiar with the prior art - not merely that the products share general, function-driven tray characteristics.

Table 2 Prior Art 2 & Accused Products Comparison Chart

| The '236 Patent | Prior Art 2 CN219047235U | Accused Products (Auriswell (on Amazon), Auriswell (on Walmart), and Kelteroom) |
|---|---|---|
| Figure 9: Tray Asserted in the '236 Patent (View A) ECF No. 119-2, p. 2 | Figure 10: Tray-like Bottom Housing in Prior Art 2 CN219047235U, p. 19 | Figure 11: Tray of Accused Products (View A) ECF No. 119-2, p. 2 |
| Figure 12: Tray Asserted | | |

| | | |
|---|---|---|
| in the '236 Patent (View B)<br><br>ECF No. 119-2, p. 3 | See Figure 10 | **Figure 13: Tray of Accused Products (View B)**<br><br>ECF No. 119-2, p. 3 |
| **Figure 14: Tray Asserted in the '236 Patent (View C)**<br><br>ECF No. 119-2, p.3 | See Figure 10 | **Figure 15: Tray of Accused Products (View C)**<br><br>ECF No. 119-2, p. 3 |

4. The designs of Accused Products create a different overall visual impression.

As can be seen in Table 2 When the accused designs are considered as a whole, and in light of the prior art, they create a materially different overall visual impression from the asserted design.

In particular:

The Accused Products' panel exhibits a pronounced rearwardly concave curved surface in its central portion (Figure 13), whereas the asserted design's central portion shows only a slight concavity that is not readily observable (Figure 12).

The Accused Products' upper and lower arcuate edges are concentric (Figure 15), forming an annular shape, while the asserted design's upper and lower edges are non-concentric (Figure 14) and form a crescent-like shape.

The Accused Products differ materially in panel width-to-height ratio and appear noticeably thinner compared to the asserted design (Figure 15 and Figure 14).

The panel contour is a prominent, readily observable exterior feature and plays a substantial role in shaping the overall visual impression. Viewed in combination, these differences are

sufficient that an ordinary observer, familiar with the prior art, would recognize the distinctions and would not be deceived into believing the accused designs are the same as the asserted design.

By contrast, with respect to the arcuate trough-shaped tray, it is located inside the machine during product sale and is generally not observable by ordinary consumers at the time of purchase, and thus has only a minimal impact on the overall visual impression.

In view of the prior designs, the points of patentability of the asserted design lie in the outer contour and specific shape of the panel. These features likewise constitute the primary points of distinction between the asserted design and the Accused Products and therefore account for a greater proportion of the overall visual impact.

5. Plaintiffs therefore fail to meet their PI burden on the '236 patent

Because the asserted design is substantially constrained by functional considerations, because the prior art - including Prior Art 2 - significantly narrows the scope of protectable ornamentation, and because the Accused Products create a different overall visual impression with respect to the panel features that drive appearance, Plaintiffs cannot demonstrate a likelihood of success on the merits of design-patent infringement at the preliminary-injunction stage as to Auriswell (on Amazon), Auriswell (on Walmart), or Kelteroom.

**II. The Accused Tray is Not a Prominent Article of Commerce to Ordinary Purchasers**

Plaintiffs' only asserted design patent - the '236 Patent - is directed to an internal collection tray. Yet Plaintiffs seek preliminary injunctive relief against the sale of complete frozen-drink machines. In ordinary product listings and at the point of purchase, the tray is typically not visible or emphasized, whereas the exterior-facing panel features that drive the machine's overall appearance are readily observable - and materially different in the Accused Products. Accordingly, Plaintiffs cannot satisfy the ordinary-observer standard on this record. See *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670, 677–78 (Fed. Cir. 2008) (en banc).

**III. Plaintiffs Have Not Demonstrated Irreparable Harm**

Even if Plaintiffs could establish some likelihood of success - which they have not - they

1

must also demonstrate that irreparable harm is likely absent preliminary relief. Plaintiffs have not made such a showing here.

The alleged harm relates to a low-cost, replaceable component for which monetary relief would be available if liability were ultimately established. Plaintiffs have not demonstrated that any asserted injury cannot be remedied through damages, nor have they shown a non-speculative threat to goodwill or reputation attributable to the accused conduct on this limited record.

**IV. The Balance of Equities and the Public Interest Do Not Support Preliminary Relief**

The balance of equities does not favor the extraordinary remedy of a preliminary injunction. Enjoining the sale of the Accused Products at this early stage—on a disputed and undeveloped record—would impose immediate and disproportionate consequences without a corresponding showing of necessity.

The public interest likewise weighs against preliminary relief. Competition in consumer appliances and their functional internal features benefits consumers and the marketplace, and that interest is not outweighed here by a speculative or insufficiently supported claim of design-patent infringement. Denial of preliminary relief is therefore consistent with equitable principles and the public interest.

## CONCLUSION

For the foregoing reasons, Defendants IceSwirls, Tefoqu, Wongic, Dutepa, Auriswell (on Amazon), Auriswell (on Walmart), and Kelteroom respectfully request that the Court DENY Plaintiffs' Motion for Preliminary Injunction (ECF No. 37), as supplemented, as to these Defendants, and grant such other and further relief as the Court deems just and proper. The Third-Party Respondents - Grano Chef, Oplace, POFABIK, BLIZZEE, NLNYA, and Nyzgax - likewise respectfully request that the Court deny any preliminary injunctive relief as to them.

Dated: December 17, 2025

/s/Chengchen Xu
Chengchen Xu (*pro hac vice*)
NY Attorney Registration # 6277362

1

cc.xu.iplaw@hotmail.com
418 Broadway #8555
Albany, NY, 12207
858-280-5570

/s/Ziqi Yu
Ziqi Yu
Fla Bar ID #1044119
procollider@pm.me
5794 Bird Rd Unit 554
Miami, FL 33155
415-519-5274

*Counsel for Defendants
IceSwirls, Tefoqu, Wongic, Dutepa,
Auriswell (on Amazon), Auriswell
(on Walmart), Kelteroom,
and Third-Party Respondents
Grano Chef, oplace, POFABIK,
BLIZZEE, NLNYA, Nyzgax*

1