**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 25-cv-25323-RAR**

| | |
|---|---|
| SHARKNINJA OPERATING LLC, and SHARKNINJA SALES COMPANY, | |
| Plaintiff, | **Honorable Rodolfo A. Ruiz II** <br> **Magistrate Lauren F. Louis** |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | **HEARING DATE:  December 19, 2025** <br> **HEARING TIME:   9:00 AM EST** |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR ENTRY OF PRELIMINARY INJUNCTION**

Defendants Shenzhen Fengkai E-Commerce Co., Ltd., and Hong Kong Huayun Economic & Trade Co., Ltd., (hereinafter "Defendants"), by and through their undersigned attorneys, oppose Plaintiffs' motion for a preliminary injunction.

**I.      INTRODUCTION AND PROCEDURAL HISTORY**

Defendants are two entities jointly operating under the seller identity "Inoviva" on e-commerce marketplaces.

On November 14, 2025, Plaintiffs, Sharkninja Operating LLC, and Sharkninja Sales Company (hereinafter "Plaintiffs" or "SharkNinja") initiated this litigation against multiple defendants listed in Schedule "A" for infringement of U.S. Patent No. 12,285,028 (hereinafter "the '028 Patent") and U.S. Patent No. D1,091,236 (hereinafter "the '236 Patent" or "the '236 Design Patent"; the '236 Patent" and the '028 Patent collectively "the Asserted Patents"). Dkt. 1. On November 20, 2025, Plaintiffs filed a Schedule "A" identifying dozens of accused online product listings, including Defendants' "Inoviva" product listings, as alleged infringing items. On November 21, 2025, the Court granted Plaintiffs' ex parte motion for a TRO, which froze Defendants' associated online storefronts and payment accounts.

Plaintiffs then moved for a preliminary injunction ("PI") on November 28, 2025. The Court initially set a PI hearing for December 5, 2025 (Dkt. 39). In the interim, numerous defendants began appearing through counsel to contest Plaintiffs' allegations. In light of the many pending defense motions and other issues, the Court vacated the preliminary injunction hearing. (Order, Dkt. 62). Instead, on December 5, 2025, the Court dissolved the TRO because the Court was no longer convinced that Plaintiffs will suffer irreparable harm if the Temporary Restraining Order was not extended and Plaintiffs failed to satisfy their burden of demonstrating good cause for such an extension (Dkt. 101).

On December 15, the Court issued a scheduling order to set a first evidentiary hearing on Plaintiffs' Motion for Preliminary Injunction, including Defendants (Dkt. 128).

Defendants respectfully request that the Court deny Plaintiffs' motion for preliminary injunction as Plaintiffs have not met any of the four factors for a preliminary injunction. Plaintiffs' likelihood of success on the merits is essentially nil. Plaintiffs have not established a likelihood of success on the merits as to Defendants because there is insufficient evidence establishing that Defendants were properly joined in this action under 35 U.S.C. § 299(a). Moreover, the Asserted Patents are likely unenforceable and invalid due to Plaintiffs' inequitable conduct in concealing the true inventors when prosecuting the patents before United States Patent and Trademark Office (USPTO) and to a prior sale of the claimed invention, respectively. In addition, Plaintiffs have made no concrete showing of irreparable harm, and both the balance of equities and the public interest strongly favor denying motion for the preliminary injunction. Defendants therefore request the Court deny the motion for entry of preliminary injunction.

## II    LEGAL STANDARD

A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

In this Circuit, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' " as to each of the four prerequisites. *Id.* (citing *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998)).

When joining defendants in a single action, the Federal Rules of Civil Procedure provide that:

> Persons may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). And, for patent infringement cases, the relevant statute provides:

> (a) Joinder of Accused Infringers. — With respect to any civil action arising under any Act of Congress relating to patents, other than an action or trial in which an act of infringement under section 271(e)(2) has been pled, parties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if—
> (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and
> (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a)

Joinder in patent cases is governed by 35 U.S.C. § 299, which is a more stringent standard than traditional joinder under Fed. R. Civ. P. 20 and makes joinder in patent cases more difficult. *Dongguan Saienchuangke Tech. Co. v. Individuals,*, No. 24-60865-CIV, 2024 U.S. Dist. LEXIS 242531, 2024 WL 5508127, at *4 (S.D. Fla. Dec. 17, 2024).

## III   ARGUMENT

### A. Plaintiffs Have Not Demonstrated a Substantial Likelihood of Success on the Merits.

The first and most important factor – likelihood of success on the merits – weighs heavily against an injunction. Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

At the preliminary injunction stage, a movant must show that, in light of the presumptions and burdens that will inhere at trial on the merits, his infringement claim will likely withstand the challenges to the validity and enforceability of the asserted patent. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001).

**1. SharkNinja has not established a likelihood of success on the merits as to Defendants because there is insufficient evidence establishing that Defendants were properly joined in this action under 35 U.S.C. 299(a).**

"[T]he mere fact that infringement of the same claims of the same patent is alleged does not support joinder, even though the claims would raise common questions of claim construction and patent invalidity." *In re EMC Corp.*, 677 F.3d 1351, 1357 (Fed. Cir. 2012). In patent cases, a plaintiff cannot satisfy Rule 20's requirements by alleging that multiple defendants have infringed the same patent. *Omega, SA v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Schedule "A"*, 650 F. Supp. 3d 1349, 1352 (S.D. Fla. 2023). Furthermore, when analyzing the propriety of joinder in patent cases, "[i]n adopting the majority construction of Rule 20 by passage of the AIA, Congress recognized, simply alleging that Defendants manufacture or sell similar products does not support joinder under Rule 20." *Atlas IP, LLC v. Medtronic, Inc.*, No. 13-23309-CIV-ALTONAGA, 2014 U.S. Dist. LEXIS 48802 at 4 (S.D. Fla. Mar. 17, 2014).

Joinder in patent cases is governed by 35 U.S.C. § 299, which is a more stringent standard. *See, e.g. Dongguan Saienchuangke Tech. Co. v. Individuals,*, No. 24-60865-CIV, 2024 U.S. Dist. LEXIS 242531, 2024 WL 5508127, at *4 (S.D. Fla. Dec. 17, 2024) ("Notably, § 299(a)'s joinder provision, which requires that the transaction or occurrence relate to making, using, or selling the same accused product or process, is more stringent than Rule 20."); *Atlas IP*, 2014 LEXIS 48802, at *4 ("Section 299's language makes joinder in patent cases more difficult than traditional joinder under Rule 20."); *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 939 (Fed. Cir. 2013) (observing that the American Invents Act ("AIA") "adds a requirement that the transaction or occurrence must relate to making, using, or selling of the same accused product or process.").

Here, the allegations in the Complaint merely assert that: (i) defendants (including Defendants) all infringed Plaintiffs' patents ("Each Defendant targets the United States, including Florida, and has offered to sell and, on information and belief, has sold and continues to sell, products that infringe SharkNinja's intellectual property…" Dkt. 1 ¶ 40); (ii) that there are some **similarities** among the alleged infringing products (*Id*. ¶ 54, emphasis added); (iii) that the similarities between allegedly infringing products suggest that those products were manufactured by and come from a common source and that Defendants are interrelated; (*Id*. ¶ 55); and (iv) that the defendants use common tactics to evade enforcement efforts (*Id*. ¶ 57).

Such broad, conclusory allegations as these, however, have been repeatedly rejected by the Federal Circuit and this Court as they fail to satisfy the standard under Fed. R. Civ. P. 20 or the

more stringent standard of § 299. *See In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012) ("the sameness of the accused products is not enough to establish that claims of infringement arise from the 'same transaction.'"); s*ee also Carlson Pet Prods., Inc. v. Individuals*, No. 1:25-cv-21998-WPD, 2025 U.S. Dist. LEXIS 198768 (S.D. Fla. Aug. 19, 2025) (holding that joinder was improper under 35 U.S.C. § 299 where the complaint alleged only that multiple defendants infringed the same patent through similar conduct, sold similar products on the same online platform during the same timeframe, and in some instances were interrelated. Such allegations did not satisfy § 299's requirement that claims arise from the same transaction or occurrence involving the same accused product.); *see also, Dongguan Saienchuangke Tech. Co. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A,"*, No. 24-60865-CIV-DAMIAN/Valle, 2024 U.S. Dist. LEXIS 242531 at *13 (S.D. Fla. Dec. 17, 2024) ("The Complaint states that Defendants use similar or identical product images or descriptions…that Defendants employ similar tactics, such as creating new Amazon store fronts and online accounts to mitigate potential liability…The problem with the Complaint's allegations of connectivity in this regard is that these allegations are broad, conclusory allegations that do not establish a sufficient commonality among the allegedly Infringing Products and the Defendants to permit joinder."); *Omega v. Individuals, Bus. Entities, & Unincorporated Ass'ns Identified*, 650 F. Supp. 3d 1349, 1352 (S.D. Fla. 2023) (concluding the plaintiffs had asserted "broad, conclusory allegations of connectivity" in alleging that defendants concurrently employed and benefitted from "substantially similar advertising and marketing strategies" based upon the defendants' infringements of the plaintiffs' mark).

Many courts in the Northern District of Illinois, where similar "Schedule A" cases are commonly filed, have rejected theories of joinder similar to those advanced by SharkNinja, *see e.g.*, *Xie v. The Entities and Individuals Identified in Annex A*, 24-cv-09791, 2024 U.S. Dist. LEXIS 174474 (rejecting argument that defendants receive the infringing products from the same manufacturer, use the same advertising and images, offer for sale the same infringing products, and have other shared commonalities, such as price, payment accounts, grammar, title, and descriptions); *Toyota Motor Sales, U.S.A., Inc. v. P'ships and Unincorporated Ass'ns Identified on Schedule A*, 24-cv-9401, ECF No. 27 at 3 (N.D. Ill. Nov. 18, 2024) ("[I]t's not enough to suggest that sometimes there are things that link some of the defendants together."); *Bailie v. Partnerships & Unincorporated Associations Identified on Schedule A*, 734 F. Supp. 3d 798, 802–04 (N.D. Ill. 2024) (Gottschall, J.) (conclusory allegations without specific facts are not sufficient to satisfy

Rule 20(a)(2)'s requirements for joinder). Also, Judge John F. Kness recently raised significant concerns about joinder in Schedule A cases. *Eicher Motors Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 794 F. Supp. 3d 543 (N.D. Ill. 2025) ("the mass joinder of multiple defendants is unjustified under the procedural rules and should not continue.")

Some courts in the Western District of Pennsylvania have also rejected joinder of defendants in cases like these for the same reasoning. *See, e.g.*, *Glitch Prods. Pty v. Baiheshangmao*, No. 2:25-CV-00727-CCW, 2025 U.S. Dist. LEXIS 131608 (W.D. Pa. July 1, 2025) (denying plaintiff's request for preliminary injunctive relief because the plaintiff fails to established a likelihood of success on the merits as to the 135 defendants other than BaiHeShangMao because the evidence before the Court does not establish the propriety of joining all of those defendants). In *Glitch*, the court held that plaintiff's generalized allegations that defendants' e-commerce stores and accused products shared similarities in website design, advertising text and images, pricing, payment methods, grammatical errors, marketing tactics, and purported indicia of a common manufacturing source, failed to establish that the defendants were logically connected or that the claims arose out of the same transaction or occurrence as required by Rule 20(a)(2). *Id*. at **7-9.

SharkNinja's allegations here are no better and provide no more detail than those struck down by the courts. Defendants are not related to the other defendants named in this case and operate different shops on Amazon selling different products. SharkNinja provides no actual link between the facts underlying Defendants' alleged infringement the alleged infringement by the remaining defendants except conclusive allegations that courts have repeatedly rejected.

Additionally, SharkNinja's policy argument in its motion for preliminary injunction that "[s]ingle defendant enforcement…is impractical, ineffective" (Dkt. 37 at page 14) has also been rejected by this Court ("the Court strongly disagrees with Plaintiffs' assertion that joining these Defendants will 'serve[] the important interests of convenience and judicial economy, leading to a just, speedy, and inexpensive resolution for all parties and this Court,' and that '[j]oinder has not created any unnecessary delay, nor has it prejudiced any party.'" *Carlson Pet Prods., Inc. v. Individuals*, No. 1:25-cv-21998-WPD, 2025 U.S. Dist. LEXIS 198768 at *6 (S.D. Fla. Aug. 19, 2025))

SharkNinja cited only one case – *Bose Corp. v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A,"* 334 F.R.D. 511 (N.D. Ill. Feb. 19, 2020) – to support its joinder argument (Dkt. 37 at page 14). But many courts – including this Court – have refused to adopt the

reasoning of *Bose* court. *See e.g., Fender Musical Instruments Corp. v. Individuals*, No. 25-60385-CIV-SINGHAL, 2025 U.S. Dist. LEXIS 199868 (S.D. Fla. June 17, 2025) ("But as this Court sees it, the *Bose Corp.* court misapplied the definition of 'occurrence' as used in Rule 20(b)(2)."); *see also Zaful Hong Kong Ltd. v. The Individuals, Corporations, Ltd. Liab. Companies, Partnerships, & Unincorporated Ass'n Identified on Schedule A*, 2025 U.S. Dist. LEXIS 5156, 2025 WL 71797 *4 (N.D. Ill. 2025) (Perry, J.) (declining to accept the *Bose* Court's reasoning and definition of occurrence). As one court stated, "after reading *Bose Corp.*, this Court is not convinced that joinder of these Defendants under a 'swarm' theory of harm to Plaintiff constitutes the '*same* occurrence' or 'occurrences' contemplated by Rule 20(a)(2)(A). Instead, the Court agrees with the D.C. Circuit that '[s]imply committing the same type of violation in the same way does not link defendants together for the purposes of joinder.' *AF Holdings, LLC v. Doe 1-1058*, 752 F.3d 990, 998, 410 U.S. App. D.C. 41 (D.C. Cir. 2014). (citation and internal quotation marks omitted)." *Tushbaby, Inc. v. Corps., Ltd. Liab. Co.*, No. 1:24-cv-22281, 2024 U.S. Dist. LEXIS 141649 (S.D. Fla. Aug. 8, 2024).

Thus, SharkNinja has not established a likelihood of success on the merits as to Defendants because SharkNinja's allegations fail to establish the propriety of joining Defendants in this case under 35 U.S.C. § 299.

### 2.  Incorrect inventorship renders the '028 Patent and the '236 Patent invalid and unenforceable.

Inequitable conduct is a judicially-created equitable defense to a claim of patent infringement. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). When a court determines that inequitable conduct has occurred as to any claim, the entire patent is rendered unenforceable. Id. at 1287; *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 877 (Fed. Cir. 1988). Inequitable conduct generally requires a showing of (1) a specific intent to deceive the Patent Office and (2) "but-for materiality," meaning that the patent would not have issued but for the misrepresentation or omission. *Therasense*, 649 F.3d at 1287; *see also Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 830 (Fed. Cir. 2010) (affirming finding of inequitable conduct when named inventor "withheld highly material information when he concealed the most critical information: he was not the inventor he claimed to be").

7

> **(a) By concealing one or more inventors when submitting inventorship information to USPTO, SharkNinja had a specific intent to deceive the Patent Office.**

Under the intent prong of the standard two-part test, a party can prove intent to deceive the Patent Office based on direct evidence or on circumstantial evidence "with the collection of inferences permitting a confident judgment that deceit has occurred." *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007) (internal quotation marks omitted); *see also Merck & Co., Inc. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989) ("Intent need not, and rarely can, be proven by direct evidence.").

Here, when Application No. 18/816,489, the application that matured into the '028 Patent, was filed, SharkNinja represented to the Patent Office that the inventors were Michael Lerman, Macrae Benziger, Alexander Mularski, and Vipul Mone ("'028 Patent Inventors") in the ADS (filed concurrently herewith "Exhibit 1"). However, when Application No. 29/987,972, the application that matured into the '236 Patent, was filed, SharkNinja represented to the USPTO that the inventors were Michael Lerman, Macrae Benziger, Alexander Mularski, Ryan Michienzi and Vipul Mone ("'236 Patent Inventors") in the ADS (filed concurrently herewith "Exhibit 2") .

Guangdong Weili/Welly Electrical Appliance Co., LTD. ("Weili" or "Welly") was a supplier/manufacturer for SharkNinja at least since approximately 2023. (Declaration of Xia Yi (Purchasing Manager at Shenzhen Fengkai E-Commerce Co., Ltd.) filed concurrently herewith ("Xia Yi Decl") and Declaration of Chen Jingge (Design Department Manager at Hong Kong Huayun Economic & Trade Co., Ltd.) filed concurrently herewith ("Chen Jingge Decl"), (collectively, "Declarations") ¶5). SharkNinja entrusted Weili in approximately July 2023 to develop a new slushie machine. *Id.* ¶6. By September 11, 2023, Weili's team had created a slushie machine design which covers some, if not all, significant parts of the subject matter claimed in both the '028 Patent and the '236 Patent. *Id*. ¶7. Weili disclosed this slushie machine to SharkNinja prior to January 18, 2024. Declarations ¶8. SharkNinja then falsely claimed to have invented the concept of this slushie machine when it filed applications for the '028 Patent and the '236 Patent.

> **(i) Weili's employees made significant contributions to conception and reduction to practice of the inventions claimed in the'028 Patent and the '236 Patent and should have been named as joint inventors.**

On January 20, 2025, Weili applied to Nanyue Notary Office, Guangzhou City, Guangdong Province, China, for notarization of preservation of evidence. *Id*. ¶9. The Notary Office issued the

Notarization (filed concurrently herewith "Exhibit 4") under the Notarization Law of the People's Republic of China and the Rules of Notarization Procedure.

According to the email exchanges between SharkNinja and Weili, they began cooperation on the Slushi project on July 04, 2023 (filed concurrently herewith "Exhibit 3" at "RE: kick off meeting Slushi meeting 7/4"). The parties exchanged files like "**FS300** Kick off at Weili_23" slides. *Id.* (emphasis added). On July 12, 2023, Weili and SharkNinja started on CAD design (Exhibit 3 "P0 CAD design collaborating"). Weili explicitly stated that "Weili would like **assistance with in the design process**" *Id.* (emphasis added). On September 11, 2023, Weili created "**fs300_p1.asm**" (Exhibit 4, page 45) (emphasis added). Page 45 of Exhibit 4 shows that a document named with fs300_p1.asm has the last modified date on September 11, 2023:



Page 45 of Exhibit 4 (annotation added)

Weili subsequently developed multiple versions of fs300 including: fs300_p1.5 with the last modified date on October 07, 2023, *Id.* at pages 60-66; fs300_p2 with the last modified date on October 26, 2023, *Id.* at pages 88-92; fs300_p2.5 with the last modified date on November 21, 2023. *Id.* at pages 122-127.

Both the '028 Patent and the '236 Patent are continuations of Application No. 18/415,817 ("'817 App") filed on January 18, 2024, which involves a drink maker to make drink product such as slushi ('817 App ¶ 0023). As to the '028 Patent, the slushi machines developed by Weili are striking similar to the invention described therein (even with the logo of "Ninja"). For example:



FIG. 1 of '028 Patent

Page 89 of Exhibit 4



FIG. 2 of '028 Patent



Page 112 of Exhibit 4

The contributions developed by employees of Weili are significant when measured against the '028 invention at least because the "side baffle" feature that was added to claim 1 by amendment in response to the Non-Final rejection and was considered a distinguishing feature by the Examiner in the Notice of Allowance issued on December 2, 2024 (filed concurrently herewith "Exhibit 5", "The following limitations, when considered in context, make claims 1 and 8 inventive: wherein the at least one asymmetric wall portion comprises a side baffle configured to extend laterally along the left side or the right side of the vessel chamber, the side baffle further configured to promote slush flow away from the left side or the right side of the vessel chamber

and back toward a center of the vessel chamber."). The side baffle is denoted as component 105 in FIG. 5A of '028 Patent ("[a]s shown in FIGS. 5A, 5B, and 6A-6B, the mixing vessel 104 includes a side baffle 105 extending laterally along a sidewall 150 of the vessel chamber." '028 Patent, column 12, lines 61-64), which is striking similar to the side baffle shown in Weili's design.

 

FIG. 5A of '028 Patent (annotation added)          Page 47 of Exhibit 4 (annotation added)

As to the '236 Design Patent, the Examiner in the Notice of Allowance noted that "[a]ll the material from 18/415,817 that is essential to the claimed design is included in this application. Any material in 18/415,817 that is not present in this application forms no part of the claimed design." (filed concurrently herewith "Exhibit 6" at "Examiner's Amendment/Comment"). The main priority support for the '236 Design Patent is Figures 5A–5B in the '817 App. FIG. 5A-5B is the perspective view of the collection tray 220 shown in FIG. 2 ("FIGS. 5A and 5B show perspective views of the collection tray 220 according to an illustrative implementation of the disclosure." '817 App, ¶ [0052].) FIG 2 and FIG. 5A are reproduced below:



FIG. 2 of '817 App                    FIG. 5A of '817 App

The employees of Weili also made significant contributions of conception and reduction to practice of the design of the collection tray. As shown below, the design of the collection tray 220 in FIG. 2 of '817 App is strikingly similar to Weili's designs:



Page 66 of Exhibit 4                    Page 92 of Exhibit 4

Therefore, Weili's employees should have been named as the joint, if not sole, inventors on the '028 Patent and the '236 Patent. *See Vapor Point LLC v. Moorhead*, 832 F.3d 1343, 1348-49 (Fed. Cir. 2016) ("All inventors, even those who contribute to only one claim or one aspect of one claim of a patent, must be listed on that patent."); *Hoop v. Hoop*, 279 F.3d 1004, 1007 (Fed.

Cir. 2002) ("[w]e apply the same standard of inventorship to design patents that we require for utility patents."). And, once a design is conceived, slight differences in appearance from the original do not amount to a new and separate design conception. *Id*.; *see also Falana v. Kent State Univ.*, 669 F.3d 1349, 1357 (Fed. Cir. 2012). ("People may be joint inventors even though they do not physically work on the invention together or at the same time, and even though each does not make the same type or amount of contribution.").

### (ii) SharkNinja intended to deceive the Patent Office when it concealed Weili's employees from the inventorship information.

SharkNinja claimed to have invented the concept of this slushie machine when it filed applications for the '028 Patent and the '236 Patent (Exhibit 1, Exhibit 2). SharkNinja's statement was made with deceptive intent as SharkNinja cannot reasonably have believed the individuals it identified as inventors to the USPTO actually invented the claimed subject matter when SharkNinja knew that employees of Weili invented key features claimed in the applications prior to January 18, 2024.

Additionally, SharkNinja's employee Tooraj Salarzadeh (with email address Tooraj.Salarzadeh@sharkninja.com) asked Weili's senior sales manager for the assignment of patents to take action against the "copy cat" (Exhibit 3). It is impossible that SharkNinja didn't know that Weili's employees had made significant contributions to the conception and reduction to practice of the inventions claimed in the '028 Patent and the '236 Patent. Nevertheless, SharkNinja concealed the true inventorship so that SharkNinja could act alone against the "copy cat" instead of having to name Weili as, at the very least, a co-plaintiff and complicating the case.

Thus, the single most reasonable inference able to be drawn from SharkNinja's concealment of Weili's employees from inventorship information is that SharkNinja intended to deceive the Patent Office. ("[T]he inference [of intent to deceive] … must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).

### (b) The '028 Patent and the '236 Patents would not have issued but for SharkNinja's concealment of the true inventors.

False claims of inventorship are highly material to patentability. *See Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 830 (Fed. Cir. 2010) ("[The] district court did not clearly err in finding that [the alleged inventor] withheld highly material information when he 'concealed the most critical information: he was not the inventor he claimed to be.'"); *Auxilium*

*Pharm., Inc. v. Watson Labs., Inc.*, Civil Action No. 12-3084 (JLL), 2013 U.S. Dist. LEXIS 142462 (D.N.J. Oct. 2, 2013) ("the Court finds that Watson's allegations regarding inequitable conduct satisfy but-for materiality because the omission of the co-inventor could have led the examiner not to issue the patent."); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000) ("As a critical requirement for obtaining a patent, inventorship is material.").

Plaintiffs' false claims of inventorship were material misrepresentations in this case because the Asserted Patents would not have issued to Plaintiffs alone but for the false representations of inventorship.

Additionally, each of the '028 Patent Inventors signed and filed with the Patent Office a declaration (filed concurrently herewith "Exhibit 7"). In that declaration, each inventor declared that s/he "believe that I am the original inventor or an original joint inventor of a claimed invention in the application" and "acknowledge the duty to disclose information which is material to patentability…" *Id*. The same is true for each of the '236 Patent Inventors (filed concurrently herewith "Exhibit 8").

But the declarations of the '028 Patent Inventors and the '236 Patent Inventors are plainly false. The record clearly shows that it is impossible for either the '028 Patent Inventors or the '236 Patent Inventors to believe that they are the *original joint inventor* when it is plain that the inventive feature of the claimed invention was conceived and reduced to practice by Weili employees.

Thus, the '028 Patent Inventors and the '236 Patent Inventors submitted an indisputably false declaration to the USPTO. Such conduct is *per se* material, particularly where it pertains to inventorship. *See Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290 (Fed. Cir. 2012) ("a false affidavit or declaration is per se material."); *Therasense*, 649 F.3d at 1293 (materiality satisfied with "affirmative act[s] of egregious misconduct" such as "the filing of an unmistakably false affidavit"); *see also Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 830 (Fed. Cir. 2010) (affirming finding of inequitable conduct when named inventor "withheld highly material information when he concealed the most critical information: he was not the inventor he claimed to be").

SharkNinja made a material misrepresentation when it failed to correctly identify the real inventors to USPTO and the '028 Patent Inventors and the '236 Patent Inventors submitted sworn declarations falsely attesting that each was an original joint inventor. SharkNinja did so despite

knowing that some employees from Weili had contributed significantly to the conception and reduction to practice of the inventions claimed in the '028 Patent and the '236 Patent. They did so because they wanted to take action against the "copy cat" without involving Weili. This is exactly the type of "egregious misconduct" contemplated by *Therasense*, and both the '028 Patent and the '236 Patent are unenforceable as a result.

### 3. Potential prior commercial sale may invalidate both the '028 Patent and the '236 Patents under 35 U.S.C. § 102.

There is ample evidence that employees of Weili invented slushi machines, like those claimed in the'028 Patent and the '236 Patent at least as early as September 11, 2023, which is before the earliest priority date January 18, 2024 of the '028 Patent and the '236 Patent.

The current record further shows that Weili developed slush machines and signed agreements with a European customer on November 08, 2022 (Exhibit 3, "Subject: Re: Fw:re.: Slush Ice Contract" and "Subject: Fw: Fw:re.: Slush Ice Contract"). With further discovery, Weili's prior commercial sale may invalidate both the '028 Patent and the '236 Patent under 35 U.S.C. § 102.

### 4. Conclusion on Likelihood of Success

Therefore, Plaintiffs' infringement claim will not withstand the challenges to the invalidity and enforceability of the Asserted Patents as they are tainted by Plaintiffs' inequitable conduct and by the potential prior sale invalidity. At a minimum, the questionable enforceability and invalidity of the Asserted Patents should defeat any present likelihood of Plaintiffs' success on the merits. *See Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 339, 119 S.C.t. 1961, 1978, 144 L. Ed. 2d 319 (1999) ("Plaintiffs with questionable claims would not meet the likelihood of success criterion."). Accordingly, this factor decisively favors Defendants.

### B. Plaintiffs Have Not Shown Irreparable Harm Absent an Injunction

Plaintiffs have likewise failed to carry their burden on the second factor – irreparable harm. To justify an injunction, Plaintiffs must do more than allege infringement; they must present proof that, without preliminary relief, they are likely to suffer injury that is actual and imminent, not remote or speculative, and that cannot be remedied by monetary damages. "A party seeking a preliminary injunction must establish that it is likely to suffer irreparable harm without an injunction." *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022). "The mere possibility or speculation of harm is insufficient." *Id.* "As we have emphasized on many occasions, the asserted irreparable injury must be neither remote nor speculative, but

actual and imminent." *Siegel v. LePore, 234 F.3d* 1163, 1176 (11th Cir. 2000)) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville,* 896 F.2d 1283 (11th Cir. 1990)).

Here, in their preliminary injunction motion, Plaintiffs rely on generic assertions that Defendants' sales of "knockoff" slush makers will cause lost market share, lost profits, and damage to customer goodwill for SharkNinja (Dkt. 37). But Plaintiffs offer no concrete evidence to substantiate these claims. They have not provided sales data or consumer surveys showing any actual erosion of SharkNinja's sales or reputation attributable to the Inoviva units sold. Instead, Plaintiffs rest on conclusory statements that "Defendants' ongoing sale of Infringing Products is causing SharkNinja brand equity depletion, loss of market share, and loss of exclusivity in the very market it created". (Dkt. 37). Such statements are the kind of "mere speculation" that courts deem insufficient.

By statute, a prevailing utility patent owner can recover remedy under 35 U.S.C. § 284 and a prevailing design patent owner can recover either remedy under 35 U.S.C. § 284 or under 35 U.S.C. § 289. Given the available remedy under 35 U.S.C. § 284, a utility patent generally does not satisfy irreparable harm. *Enpat, Inc. v. Budnic, 773 F. Supp. 2d* 1311, 1317 (M.D. Fla. 2011) (rejecting a request for permanent injunction because plaintiff cannot show monetary damages are inadequate.) Thus, alleged infringement of the '028 Patent does not support an injunctive relief.

The '236 Design patent is directed to a "collection tray" for a drink maker. The collection tray amounts to about 1% of the overall cost of the accused slushie machine. Defendants have estimated the profit from selling the accused slushie machine is about four hundred eighty thousand dollars ($480,000). Therefore, the potential profit from selling the collection tray described in the '236 Design patent is about five thousand dollars ($5,000.00). Defendants will voluntarily put up a bond in the amount of five thousand dollars ($5,000.00), which is calculated as a reasonable share of the total profit of the Accused Products. In the unlikely event that the Court finds the Asserted Patents are valid and enforceable, Plaintiff can be adequately compensated by damages.

Accordingly, this factor decisively favors Defendants.

### C. The Balance of Hardships and Public Interest Favor Defendants

The balance of hardships strongly favors denying preliminary injunctive relief. On Plaintiffs' side of the scales, the only potential harm in not issuing an injunction is that SharkNinja might face a few more months of limited competition from Defendants' product, which can later

be remedied by damages if Plaintiffs ultimately prevail on the merits. Plaintiffs' SLUSHi has been on the market for a while and they have not shown that a continuation of lawful competition will cause anything beyond incremental economic loss.

In marked contrast, the harm to Defendants from a wrongful or prolonged injunction is devastating and irreversible. The TRO already significantly harmed Defendants' business operations by freezing their seller accounts and funds during one of the most important holiday seasons. A further injunction will choke off revenue and drive away customers, and could lead to permanent loss of distribution channels. Thus, any injunction will strangle Defendants' entire enterprise. This far outweighs any marginal harm Plaintiffs allege.

Finally, the public interest does not favor a preliminary injunction in this case. Generally, the public has an interest in the enforcement of legitimate patent rights, but it also has a countervailing interest in ensuring that monopolies are not wrongfully extended to patent holders who have not earned them, such as by failing to name true inventors. *See Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) ("The principles set down by the Court in *Keystone, Hazel Atlas*, and *Precision Instrument* can be summarized as follows: (1) the public has a special interest in seeing that patent monopolies 'spring from backgrounds free from fraud or other inequitable conduct'; (2) as a corollary to that public interest, patent applicants 'have an uncompromising duty to report to [the Patent Office] all facts concerning possible fraud or inequitableness underlying the applications'; (3) all facts relevant to such matters must be submitted to the Patent Office, 'which can then pass upon the sufficiency of the evidence'; (4) the intentional failure to disclose to the Patent Office that a patent application is tainted by fraud is sufficient cause to justify not enforcing the patent; and (5) the misconduct in question need not constitute actionable fraud; it is sufficient if the conduct constitutes a willful act that violates standards of equitable conduct in dealing with the Patent Office.").

Here, given the serious questions about SharkNinja's candor before the PTO, the public interest leans against using the Court's equitable power to enforce these patents at this stage. The public is not and will not be served by injunctions that enforce patents likely obtained by inequitable conduct.

## IV.   CONCLUSION

For the reasons set forth above, the Defendants respectfully request that the Court deny the Motion for entry of preliminary injunction.

DATED: December 17, 2025

Respectfully submitted,

By: /s/ Emily M. Heim
Emily M. Heim (FL Bar No. 1015867)
**VANGUARD CREST P.C.**
1500 K Street NW, Suite 228
Washington, D.C., 20006
Email: eheim@vcip.us
Main: (771) 777-8280
Direct: (771) 777-8286


By: */s/ Donald R. McPhail*
Donald R. McPhail (DC Bar No. 444508)
**VANGUARD CREST P.C.**
1500 K Street NW, Suite 228
Washington, D.C., 20006
Email: dmcphail@vcip.us
Main: (771) 777-8280
Direct: (771) 777-8285

By: */s/ Ude Lu*
Ude Lu (DC Bar No. 1708256)
**PV IP**
6701 Democracy Blvd, Suite 300
Bethesda MD 20817.
Telephone: (301) 709-7703Email
Email: ulu@pvipus.com


*Attorney for Defendant Shenzhen Fengkai E-Commerce Co., Ltd. and Hong Kong Huayun Economic & Trade Co., Ltd.*